1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  PAUL T. HAMMERNESS
   Supervising Deputy Attorney General
3  JENNIFER C. ADDAMS, State Bar No. 209355
   Deputy Attorney General
4   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
5   Telephone:    (415) 703-5382
    Facsimile:    (415) 703-5480
6   Email:  Jennifer.Addams@doj.ca.gov

7  Attorneys for Defendant Jahangir Sadeghi, M.D.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RANDALL SCOTT CASH,** | Case No. C 07-6252-JF (PR) |
| Plaintiff, | |
| v. | Hearing Date:<br>No Hearing By Order Of The Court |
| **DR. JAHANGIR SADEGHI,** | |
| Defendant. | |

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

Judge: The Honorable Jeremy Fogel

**TABLE OF CONTENTS**

                                                        **Page**

PRELIMINARY STATEMENT     3

ARGUMENT     6

    I.     STANDARD OF REVIEW     6

        A.     Summary Judgment     6

        B.     Deliberate Indifference     6

        C.     Medical Malpractice; Physician-Patient Differences Of Opinion     7

    II.     DEFENDANT HAS NOT VIOLATED PLAINTIFF'S EIGHTH AMENDMENT RIGHTS BY HIS RESPONSE TO PLAINTIFF'S NEED FOR MEDICAL TREATMENT     7

        A.     Plaintiff's Condition Was Not A Medical Emergency, And He Received Adequate Medical Care For His Condition     7

        B.     Plaintiff Received Appropriate Surgery     9

CONCLUSION     10

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ............................................................................................ 6

Celotex Corp. v. Cattrett,
    477 U.S. 317 (1986) ......................................................................................... 6, 9

*Estelle v. Gamble*
    429 U.S. 97 (1976) ........................................................................................ 6, 7, 9

*Farmer v. Brennan*
    511 U.S. 825 (1994) ......................................................................................... 7, 9

*Franklin v. Oregon*
    662 F.2d 1337 (9th Cir. 1981) ...................................................................... 7, 8, 10

*Frost v. Agnos*
    152 F.3d 1124 (9th Cir. 1998) ............................................................................ 7

*Hallett v. Morgan*
    296 F.3d 732 (9th Cir. 2002) .............................................................................. 8

*Hunt v. Dental Department*
    865 F.2d 198 (9th Cir. 1989) .............................................................................. 9

*Mayfield v. Craven*
    433 F.2d 873 (9th Cir. 1970) .............................................................................. 8

*McGuckin v. Smith*
    974 F.2d 1050 (9th Cir. 1992) ....................................................................... 6, 10

*Sanchez v. Vild*
    891 F.2d 240 (9th Cir. 1989) .............................................................................. 7

*Shapley v. Nevada Board of State Prison Commissioners*
    766 F.2d 404 (9th Cir. 1985) ............................................................................ 10

*Toguchi v. Chung*
    391 F.3d 1051 (9th Cir. 2004) ......................................................................... 7-9

*Toussaint v. McCarthy*
    801 F.2d 1080 (9th Cir. 1986) .......................................................................... 10

*Wilson v. Seiter*
    501 U.S. 294 (1991) ............................................................................................ 7

*WMX Technologies, Inc. v. Miller*
    104 F.3d 1133 (9th Cir. 1997) ....................................................................... 6, 10

## TABLE OF AUTHORITIES (continued)

**Page**

**Statutes**

Federal Rules of Civil Procedure
    Rule 56(c) .................................................................................................... 6

    Rule 56(e) .................................................................................................... 6

**Other Authorities**

California Code of Regulations
    Title 15, Section 3354 ................................................................................. 7

EDMUND G. BROWN JR.
Attorney General of the State of California
PAUL T. HAMMERNESS
Supervising Deputy Attorney General
JENNIFER C. ADDAMS, State Bar No. 209355
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:     (415) 703-5382
 Facsimile:      (415) 703-5480
 Email:  Jennifer.Addams@doj.ca.gov

Attorneys for Defendant Jahangir Sadeghi, M.D.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RANDALL SCOTT CASH,**<br><br>                                              Plaintiff,<br><br>     v.<br><br>**DR. JAHANGIR SADEGHI,**<br><br>                                              Defendant. | Case No. C 07-6252-JF(PR)<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Hearing Date:<br>No Hearing By Order Of The Court<br><br>The Honorable Jeremy Fogel |

**NOTICE IS HEREBY GIVEN** that Defendant J. Sadeghi, M.D., will and hereby does move the above-entitled Court to enter, pursuant to Federal Rules of Civil Procedure, Rule 56, a judgment in his favor dismissing the action on the grounds that there is no genuine issue of material fact and that Defendant is entitled to dismissal of the complaint, or in the alternative, summary adjudication of the issues.

///
///
///
///
///
///

Notice of Motion and Motion for Summary Judgment; Points and Authorities               *Cash v. Sadeghi*
                                                        1                              C 07-6252-JF (PR)

## MOTION FOR SUMMARY JUDGMENT

Defendant moves the above-entitled Court to enter, pursuant to Rule 56, Federal Rules of Civil Procedure, for judgment in his favor, dismissing the above-entitled action on the grounds that there is no genuine issue as to any material fact and that Defendant is entitled to judgment as a matter of law.

This motion is brought upon this notice of motion and motion, the memorandum of points and authorities and declarations in support hereof; the pleadings, files, and records on file in this action; such further written and oral documentation as may be requested by the court; and matters of which the court may take judicial notice.

**WHEREFORE**, Defendant prays that the motion for summary judgment be granted, and that Defendant be awarded such other and further relief as the Court deems proper.

Dated:    August 6, 2008.

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

PAUL T. HAMMERNESS
Supervising Deputy Attorney General

*/s/ Jennifer C. Addams*

JENNIFER C. ADDAMS
Deputy Attorney General

Attorneys for Defendant Jahangir Sadeghi, M.D.

# MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiff, Randall S. Cash, is an inmate at California State Prison, San Quentin, and has been lawfully confined therein since October 20, 1992.[1] Mr. Cash underwent elective eye surgeries to remove cataracts and improve his vision in May and August of 2006. In late August, 2006, plaintiff was fighting and injured his healing eyes. He then underwent emergency surgeries to correct the new trauma to his eyes. The First Amended Complaint alleges, in essence, that J. Sadeghi, M.D., provided medical care to him that was inadequate to the point of deliberate indifference. Plaintiff makes many claims about the care given to him by Dr. Sadeghi. (Plaintiff's Complaint, ¶ 1, 5:12-15.) He claims that as a result of the elective surgery, his vision was worsened and he had a multitude of problems. (Plaintiff's Complaint, ¶ 2, 5:18-21.) Plaintiff claims he followed up with Dr. Sadeghi who told him his eye was healing, however, he claims that his vision was degrading. (Plaintiff's Complaint, ¶ 2, 5:22-24.)

The medical records, however, show that plaintiff's eyes were severely damaged before he went to Dr. Sadeghi for the elective surgery. (Declaration of J. Sadeghi, M.D. in Support of Motion for Summary Judgment ("Sadeghi Declaration") ¶ 8; Medical Records, pp. 34, 39, 80.) In fact, the surgery was made extremely difficult due to prior trauma to his eyes. (*Id.*) The medical records also show that plaintiff re-injured his eyes in a fight after the successful surgeries.

On May 3, 2006, Mr. Cash underwent elective cataract and implant placement surgery to his right eye. Due to prior trauma to plaintiff's eyes, Dr. Sadeghi was required to perform surgery with a capsular ring in order to hold the lens in place while performing the surgery. During surgery to the right eye, the capsular ring fell into plaintiff's eye. Dr. Sadeghi told plaintiff about this and told him it was perfectly safe to leave it in and monitor his eyes. Further

---

1. The Superior Court in Alameda County sentenced the plaintiff to State Prison in October 1992 for one count of First Degree Murder (Pen. Code, § 187) and one count of Attempted Murder, Second Degree (Pen. Code, § 187). On November 17, 2005, the Superior Court upheld the conviction and overturned the Death Penalty sentence to Life Without the Possibility of Parole.

surgery was risky, whereas leaving the lens in his eye was not. (Sadeghi Declaration, ¶ 17.) Plaintiff agreed to this and, medically, it was a sound decision within the standards of care in this community. (Sadeghi Declaration, ¶ 17, 20.) Plaintiff healed well, and vision in his right eye improved. (Sadeghi Declaration, ¶10; Medical Records, pp. 64, 65.)

On August 9, 2006, Plaintiff underwent elective cataract surgery and lens implantation in his left eye. After this elective surgery, plaintiff had very good vision in both of his eyes. He healed well and told Dr. Sadeghi that he was seeing well and was pleased with the surgery. (Sadeghi Declaration, ¶ 10; Medical Records, pp. 59, 87.) Plaintiff had no complaints and had good vision from May 3, 2006, through August 31, 2006. (Sadeghi Declaration, ¶ 10.)

Shortly after the surgery to his left eye, however, plaintiff either got "bumped in [his] left eye" by his cell mate or was fighting. As a result, he sustained a new trauma to his eyes. (Plaintiff's Complaint, ¶ 3, 5:25-27; Medical Records, p. 56.) Plaintiff was examined by Dr. Sadeghi who found that the trauma caused an open wound on plaintiff's left eye. (Sadeghi Declaration, ¶ 11.) On September 1, 2006, Dr. Sadeghi performed emergency surgery to close the open wound caused by the trauma. (Plaintiff's Complaint, ¶ 3, 5:27-28; Medical Records, pp. 56, 86; Sadeghi Declaration, ¶ 11.)

On September 7, 2006, plaintiff saw Dr. Sadeghi again, and this time he complained that he could not see well with his right eye. Upon examination, Dr. Sadeghi found that the retina in the right eye had become detached due to the recent trauma. (Plaintiff's Complaint, ¶ 4, 6:5-12; Sadeghi Declaration, ¶ 12; Medical Records, p. 60.) On September 11, 2006, Dr. Sadeghi sent plaintiff to the retinal specialist who successfully re-attached his retina and also removed the capsular ring that had been previously left in the eye. (Medical Records, pp. 12, 14, 60; Sadeghi Declaration, ¶ 13.) Plaintiff healed well after these surgeries. (Sadeghi Declaration, ¶ 14.)

On September 25, 2006, plaintiff consulted with Dr. Jumper in San Francisco. (Plaintiff's Complaint, ¶ 5, 6:13-14; Medical Records, p. 78.)

Despite the care given him, plaintiff contends that he still has double-vision in his right eye and blurred vision in both eyes. (Plaintiff's Complaint, ¶ 10, 7:6-8.) He never complained to Dr. Sadeghi about any double vision, however. (Sadeghi Declaration, ¶ 15.) He claims that

1  Dr. Sadeghi refuses to do anything further to correct his eyesight. (Plaintiff's Complaint, ¶¶ 14,
2  15.) This is because plaintiff's eyesight is stable and there is no further surgery or treatment
3  needed. (Sadeghi Declaration, ¶¶ 14, 16, 17.)
4      Upon evaluation of the medical records, it is clear that plaintiff had a long history of
5  blindness and eye problems. (Medical Records, p. 34.) He stated he had been "legally blind" all
6  of his life. (Medical Records, pp. 39, 80; Sadeghi Declaration, ¶ 17.) This elective surgery was
7  successful in improving plaintiff's eyesight. (Declaration, of J. Sadeghi, ¶ 17.) The emergency
8  surgery performed by Dr. Sadeghi and the retinal specialist after plaintiff re-injured his eyes was
9  the proper mode of treatment.
10     As to the medical care he received at San Quentin, plaintiff was seen a total of 40 times in
11 13 months. (Sadeghi Declaration, ¶ 16; Medical Records, pp. 5-49.) He was seen in the eye
12 clinic 28 times and had three surgeries. (Medical Records, pp. 84-88.) Surgery of this kind is
13 not considered a medical emergency; it is elective surgery. (Sadeghi Declaration, ¶ 18.) When
14 an emergency arose after plaintiff sustained a trauma to his newly healing eyes, plaintiff was
15 immediately given medical care. (Sadeghi Declaration, ¶ 18.) He was given strong pain
16 medications and antibiotics before and after the surgeries. (Sadeghi Declaration, ¶ 19; Medical
17 Records, pp. 2, 11, 13.) Plaintiff was seen by doctors outside of the prison system when he
18 requested it. (Medical Records, pp. 72-79.) The pro se plaintiff's First Amended Complaint
19 does not allege the existence of a competent medical opinion in support of his assertion of
20 inadequate medical care or deliberate indifference. In contrast, the expert medical opinion of
21 Dr. Sadeghi (who is a defendant and one of many treating physicians) is that there was no
22 deliberate indifference and that plaintiff received medical care that meets the standard of care in
23 the community. (Sadeghi Declaration, ¶¶ 21, 22, 23.) Dr. Sadeghi's review of medical records
24 verifies that plaintiff was treated extensively with medication, supplies, surgery and outside
25 consultation. (Sadeghi Declaration, ¶¶ 21, 22, 23.)
26 ///
27 ///
28 ///

# ARGUMENT

## I. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is proper where the pleadings and declarations show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett,* 477 U.S. 317, 323 (1986).

Where the moving party would have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party would have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp., supra*, 477 U. S. at 323.

### B. Deliberate Indifference

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A "serious medical need" exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing *Estelle*, 429 U.S. at 104), overruled in part on other grounds by *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A prison official is "deliberately indifferent" if he knows that a prisoner faces a substantial risk of

1  serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v.*
2  *Brennan*, 511 U.S. 825, 837 (1994).

### C. Medical Malpractice; Physician-Patient Differences Of Opinion

Negligence is not enough for liability under the Eighth Amendment. *Farmer,* at 835-36, n. 4. An "official's failure to alleviate a significant risk that he should have perceived but did not, ... cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Instead, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)). Prison officials violate their constitutional obligation only by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a Section 1983 claim. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is generally insufficient to establish deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

## II. DEFENDANT HAS NOT VIOLATED PLAINTIFF'S EIGHTH AMENDMENT RIGHTS BY HIS RESPONSE TO PLAINTIFF'S NEED FOR MEDICAL TREATMENT

### A. Plaintiff's Condition Was Not A Medical Emergency, And He Received Adequate Medical Care For His Condition

Surgery for cataracts and lens implantation, such as plaintiff underwent, was not an emergency. (Sadeghi Declaration, ¶ 18.) Plaintiff, an inmate of no demonstrable medical expertise, is not authorized to diagnose illness or to prescribe treatment for himself. Title 15, Cal. Code Regs., section 3354. The physicians that examined plaintiff did not find that the original surgery on plaintiff's eyes was an emergency. When an emergency did arise, after plaintiff sustained trauma after the successful surgery, Dr. Sadeghi immediately performed further surgery to close an open wound. (Sadeghi Declaration, ¶¶ 11, 18.) When it became clear

that the trauma caused his retina to detach, Dr. Sadeghi immediately referred him to a retinal specialist who reattached the torn retina. (Sadeghi Declaration, ¶¶ 12, 13, 18.) A difference in medical opinion between a prisoner-patient and the prison doctors as to what treatment is indicated does not give rise to a Section 1983 claim. *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970); *Franklin, supra,* 662 F.2d, 1337, 1344.

In a case where a plaintiff was suffering from a painful condition that prevented him from normal activities such as standing or walking, it would be cruel and unusual punishment to fail to provide any medical treatment. Here, however, plaintiff had a stable medical condition. He had lived with deteriorating eyesight for many years and, in fact, had many accommodations for his disability of being "legally blind." (Sadeghi Declaration, ¶ 17; Medical Records, pp. 30, 80.) Cataract surgery and lens implant surgery are elective treatments that can sometimes provide a clearing of the vision and better eyesight. (Sadeghi Declaration, ¶ 10.) There are no guarantees that this surgery will be successful and, in fact, plaintiff was informed of this fact prior to the surgery. (Sadeghi Declaration, ¶ 6.) Plaintiff was also given clear information regarding the possible side effects from the surgery and also the dangers involved in elective surgery of this kind. (Sadeghi Declaration, ¶ 6.) Pre-operative and post-operative information was provided to plaintiff and pain medication was prescribed. (Sadeghi Declaration, ¶ 7.) The facts do not support plaintiff's claims that any of his medical needs were ignored or that the defendant was deliberately indifferent to his medical needs.

Plaintiff claims that Dr. Sadeghi denied treatment when he requested it. (Complaint, ¶¶ 14, 15 7:20-8:5.) The medical records show, however, that when plaintiff requested medical attention, he received it. When an emergency arose, he immediately received treatment.

Even if plaintiff's allegations had shown medical malpractice or negligence, that would be insufficient to show a violation of the Eighth Amendment. See *Toguchi*, 391 F.3d, at 1060-61; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Medical negligence, even if it were established here by expert medical opinion, is not the same as the constitutional tort of deliberate indifference. Only deliberate indifference is actionable under Section 1983 in the prison context. Plaintiff has set forth no evidence whatsoever showing a genuine issue for trial as to the

1  treatment decisions that defendants made being medically unacceptable under the circumstances
2  facing the defendants, or that defendants made them in conscious disregard of an excessive risk
3  to plaintiff's health.  See *Toguchi*, 391 F.3d at 1058; *Jackson*, 90 F.3d. at 332.  Defendants are
4  entitled to summary judgment on plaintiff's deliberate indifference to serious medical needs
5  claim.  See *Celotex Corp.*, 477 U.S. at 323.

6  Not only is there no showing of deliberate indifference to serious medical need, it is the
7  uncontradicted expert medical opinion in this case that the plaintiff's medical treatment met the
8  standard of care (Sadeghi Declaration, ¶¶ 20, 21, 22.)  Plaintiff was seen 40 times in 13  months
9  by defendant doctor, other doctors, physician assistants, and nurses; prescribed appropriate
10 medication; and provided specialized evaluations when necessary.  The pro se Complaint does
11 not allege that any competent medical opinion supports plaintiff's assertion of inadequate
12 medical care or deliberate indifference.  Prison officials who respond reasonably to a risk to the
13 inmate's health or safety are not deliberately indifferent, even if the harm ultimately was not
14 averted.  *Farmer, supra,* 511 U.S. at 844.  Here, however, plaintiff was given care and
15 medication, and suffered no harm.

16 **B.  Plaintiff Received Appropriate Surgery**

17 Deliberate indifference to a prisoner's serious medical needs is cruel and unusual
18 punishment prohibited by the Eighth Amendment.  *Estelle*, supra, 429 U.S. at 104-105.  Prison
19 officials show deliberate indifference to serious medical needs if prisoners are unable to make
20 their medical problems known to medical staff.  *Hunt v. Dental Department*, 865 F.2d 198, 200
21 (9th Cir. 1989).  Plaintiff claims that Dr. Sadeghi denied treatment and additional surgery to
22 repair his vision.  However, plaintiff Cash was seen on numerous occasions by Dr. Sadeghi,
23 provided access to specialists outside the prison system, and provided appropriate elective
24 surgeries and emergency treatment when the need arose.

25 The gravamen of the complaint is that further elective surgery was not offered to plaintiff
26 after he received successful elective surgery, he re-injured his eyes after this surgery, and the re-
27 injury to his eyes was corrected; however, this is not the denial of necessary medical care or
28 deliberate indifference.  Mere allegations of delay in surgery are not sufficient to state a claim,

absent an allegation that the delay resulted in a cognizable harm. *McGuckin*, 974 F.2d 1050, 1060 (overruled on other grounds, *WMX Technologies,* 104 F.3d 1133) (citing *Shapley v. Nevada Board of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)). No allegation of actual harm is, or can truthfully be, made in the instant case. Brief delays, or delays necessitated by an evaluation process, generally fail to state a cognizable claim. *Toussaint v. McCarthy*, 801 F.2d 1080, 1112 (9th Cir. 1986), cert. denied, 481 U.S. 1069 (1987); *Franklin, supra,* 662 F.2d at 1334. Here, when plaintiff sustained a further trauma to his eyes, thus damaging the successful results of the elective surgery he was given, he demanded further surgery and treatment from Dr. Sadeghi when in reality, there was no further surgeries available or necessary.

## **CONCLUSION**

In this case, defendant Dr. Sadeghi observed the standard of care in the relevant medical community and acted reasonably. Dr. Sadeghi prescribed appropriate palliative care, and appropriately scheduled and performed plaintiff's elective, as well as emergency, surgery. Notwithstanding plaintiff's dissatisfaction with the results of his multiple elective surgeries and emergency surgeries following trauma to his eyes, Dr. Sadeghi was not deliberately indifferent to his medical needs. For these reasons, this action should be dismissed with prejudice.

Dated: August 6, 2008.

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

PAUL T. HAMMERNESS
Supervising Deputy Attorney General


*/s/ Jennifer C. Addams*

JENNIFER C. ADDAMS
Deputy Attorney General

Attorneys for Defendant Jahangir Sadeghi, M.D.

20123541.wpd
SF2008401885