EDMUND G. BROWN JR.
Attorney General of the State of California
PAUL T. HAMMERNESS
Supervising Deputy Attorney General
JENNIFER C. ADDAMS, State Bar No. 209355
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:    (415) 703-5382
 Facsimile:     (415) 703-5480
 Email:  Jennifer.Addams@doj.ca.gov

Attorneys for Defendant J. Sadeghi, M.D.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL SCOTT CASH,<br><br>                              Plaintiff,<br><br>      v.<br><br>DR. JAHANGIR SADEGHI,<br><br>                              Defendant. | Case No. C 07-6252-JF (PR)<br><br>**DECLARATION OF<br>J. SADEGHI, M.D., IN SUPPORT<br>OF MOTION FOR SUMMARY<br>JUDGMENT**<br><br>Hearing Date:<br>No Hearing By Order Of The Court<br>The Honorable Jeremy Fogel |

**COMES NOW** Jahangir Sadeghi, M.D., and declares:

1.   I am employed by the State of California, Department of Corrections and Rehabilitation, as a Physician at California State Prison, San Quentin ("San Quentin").  I graduated from University of Isfahan in July, 1973.  As a medical doctor in a State position, I am responsible for providing inmates at San Quentin with appropriate health care.

2.   I have been employed by the Department of Corrections and Rehabilitation since May of 2003 and have been employed in my current capacity since May of 2003.

3.   I am and have been licensed to practice medicine in the State of California since 2000. I have been licensed to practice in the United States since April of 1984.  My specialty is Ophthalmology.

4.   All statements made herein are based upon my personal knowledge, upon review of the custodial and medical files of inmate Randall S. Cash, No. H53400, which are maintained by the

Dec. of J. Sadeghi, M.D., in Support of Motion for Summary Judgment        *CASH, Randall Scott v. Dr. Jahangir Sadeghi*
C 07-6252-JF(PR)

1

records custodians at San Quentin, and other information provided to me by the custodians of records here at San Quentin. If called upon to do so, I could and I would testify competently to the contents of this declaration. A true, correct, and complete copy of the medical chart notes upon which I make this declaration is attached hereto as Exhibit A (documents Bates stamped 00001-00092). A true and correct copy of the custodial records upon which I make this declaration is attached hereto as Exhibit B (documents Bates stamped 00093-00315).

5. Plaintiff Randall Scott Cash alleges that he was denied proper medical care while incarcerated at San Quentin. Plaintiff underwent elective cataract surgery on his right eye on May 3, 2006 and had an implant placed. (Medical Records, pp. 24, 268-269.) He underwent elective cataract surgery on his left eye and had an implant placed on August 9, 2006. (Medical Records, p. 86.)

6. Prior to each of these surgeries, I explained the process, the risks, and also all possible results from the surgeries. Plaintiff indicated that he completely understood all that I was telling him about this elective surgery.

7. After the surgeries, I carefully explained the necessary post-operative care needed in order for his eyes to completely heal. I prescribed medicine in the form of eye drops to facilitate this healing.

8. Because of prior trauma to his right eye, the lenses in both plaintiff's eyes were not fixed in place. This makes surgery on the eye extremely difficult. It was necessary in his case to insert a capsular ring into his right eye in order to keep the lense in place while performing surgery. I inserted this ring and performed the surgery.

9. During surgery on his right eye, the capsular ring fell into his eye. Medically, it is not necessary to remove the ring and it was safe to simply monitor plaintiff's eye and leave the small ring in his eye. I explained to plaintiff that the ring had dropped into his eye and in order to remove it surgery would have to be performed on the back of his eye. I assured him it was not necessary to remove the ring and I would continue to monitor his eye for any problems that might arise. I did not expect any to arise as this is a perfectly safe practice. He stated to me that he understood. In my opinion at the time it was safe to observe and monitor this condition.

Dec. of J. Sadeghi, M.D., in Support of Motion for Summary Judgment     *CASH, Randall Scott v. Dr. Jahangir Sadeghi*
C 07-6252-JF(PR)

10. After I performed surgery in his left eye, plaintiff had very good vision in both of his eyes. He healed well and tested at 20/25 vision in his right eye. He told me he was pleased and that he could see to read for the first time. I monitored him and he had good vision and no problems from May of 2006 through August 31, 2006.

11. Shortly after the surgery on his left eye, plaintiff sustained trauma to his eyes. I examined him on August 31, 2006 and he had an open wound on his left eye. (Medical Records, p. 56.) On September 1, 2006, I performed emergency surgery on plaintiff's left eye to close the open wound. (Medical Records, pp. 56, 86.) I again informed plaintiff of all the risks of this surgery and the necessary post-operative care for his eyes.

12. On September 7, 2006, plaintiff complained that he had bad vision in his right eye. I examined plaintiff's right eye and determined that his retina had detached due to the trauma he sustained to his eyes. I referred him to a retinal specialist in order to have his retina re-attached. (Medical Records, p. 60.)

13. The retinal specialist successfully re-attached the retina and also removed the capsular ring that I had left in his eye from his first surgery. (Medical Records, pp. 12, 14, 60.)

14. Plaintiff was stable after these surgeries and was healing well. (Medical Records, pp. 84-89.)

15. From his medical records I understand that plaintiff was referred to another specialist for double vision. This was never a complaint he stated when he was examined by me.

16. Plaintiff was seen by medical personnel a total of 40 times in 13 months. Plaintiff was seen by me or other medical personnel at the eye clinic a total of 28 times in 13 months. I made sure each eye was healing properly and that he was experiencing no unusual side effects from this type of surgery. (Medical Records, pp. 5-49.)

17. When plaintiff began treating with me, he had many medical problems with his eyes. He referred to himself as "legally blind." The elective lense implant surgeries and cataract surgeries were successful in improving plaintiff's eyesight. He was healing well and his eyesight had improved dramatically until he sustained the trauma to his eyes. After I closed the open wound in his left eye and his retina was re-attached in his right eye, he was healing well.

Dec. of J. Sadeghi, M.D., in Support of Motion for Summary Judgment   *CASH, Randall Scott v. Dr. Jahangir Sadeghi*
C 07-6252-JF(PR)

3

18. The plaintiff's ongoing condition was not at any time an emergency, and it did not require immediate surgery or other treatment. After the trauma to his eyes, when he did experience an emergency, I immediately performed surgery to close the wound in his left eye and sent him to a retinal specialist for surgery on his right eye.

19. Plaintiff was given appropriate medications and care to facilitate the appropriate healing for his eyes.

20. I am familiar with the community standard of care for the treatment of cataracts. Mr. Cash's medical condition was treated with an appropriate amount of treatment and care, and in a manner that was reasonable, timely, and consistent with the knowledge and skill ordinarily possessed by members of my profession under similar circumstances.

21. Given this patient's medical condition and the other care provided for him, this type of elective cataract surgery was not a significant departure from the standard of care in this community.

22. Similarly, given this patient's medical condition, the timing and scheduling of his medical examinations and surgeries was within the standard of care in this community.

23. In my opinion, the care provided to inmate Cash for his condition meets the standard of care in this community, and there was no deliberate indifference by any personnel at San Quentin.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, except as to those matters stated on information and belief, which matters I believe to be true and correct.

Executed this 1st day of August, 2008, at San Quentin, California.

Jahangir Sadeghi, M.D.

Dec. of J. Sadeghi, M.D., in Support of Motion for Summary Judgment       CASH, Randall Scott v. Dr. Jahangir Sadeghi
                                                                                                C 07-6252-JF(PR)

4