IN PROPER

FILED
08 AUG 19 PM 12: 45
CLERK W. WIEKING
U.S. DISTRICT COURT
N. DIST. OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

1
2
3
4

No. CV076252 JF (PR)

NOTICE OF MOTION AND MOTION
IN OPPOSITION TO DEFENDANTS' REQUEST
FOR SUMMARY JUDGEMENT OR IN THE
ALTERNATIVE - SUMMARY ADJUDICATION

5  IN RE
6  RANDALL SCOTT CASH
7        PLAINTIFF
8            V
9  JAHANGIR SADEGHI M.D.

THE HONORABLE JEREMY FOGEL

10

11  NOTICE IS HEREBY GIVEN THAT PLAINTIFF RANDALL SCOTT CASH, PRO SE WILL
12  AND HEREBY DOES MOVE THE ABOVE ENTITLED COURT TO ENTER PURSUANT
13  TO FEDERAL RULES OF CIVIL PROCEDURE, RULE 56, A JUDGEMENT IN
14  HIS FAVOR DENYING DEFENDANTS' REQUEST FOR SUMMARY JUDGEMENT
15  ON THE GROUNDS THERE ARE GENUINE ISSUES OF MATERIAL FACT AND THAT
16  DEFENDANT IS NOT ENTITLED TO DISMISSAL OF THE COMPLAINT OR IN THE
17  ALTERNATIVE - SUMMARY ADJUDICATION OF THE ISSUES.

18        MOTION IN OPPOSITION OF SUMMARY JUDGEMENT

19

20  PLAINTIFF MOVES THE ABOVE ENTITLED COURT TO ENTER, PURSUANT
21  TO RULE 56, FEDERAL RULES OF CIVIL PROCEDURES, FOR JUDGEMENT IN
22  HIS FAVOR, DENYING DEFENDANTS REQUEST FOR SUMMARY JUDGEMENT
23  OR IN THE ALTERNATIVE - SUMMARY ADJUDICATION ON THE GROUNDS
24  THERE ARE GENUINE ISSUES OF MATERIAL FACT AND THAT DEFENDANT
25  IS NOT ENTITLED TO JUDGEMENT AS A MATTER OF LAW.

26  THIS MOTION IS BROUGHT UPON THIS NOTICE OF MOTION AND MOTION,
27  THE MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS
28  IN SUPPORT HEREOF; THE PLEADINGS, FILES, AND

IN PRO PER

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

No. CV 07 6252 JF (PR)

IN RE

RANDALL SCOTT CASH

    PLAINTIFF

      VS

DR. JAHANGIR SADEGHI

    DEFENDANT

NOTICE OF
MOTION IN OPPOSITION

TO DEFENDANTS REQUEST

FOR SUMMARY JUDGEMENT

(PARTS 1 AND 2) PART 3

THE HONORABLE JEREMY FOGEL

  I, RANDALL SCOTT CASH, DO HEREBY DECLARE THAT I AM PLAINTIFF TO THE ABOVE REFERENCED MATTER AND THAT I AM INCARCERATED AT SAN QUENTIN PRISON.

  THAT I SUBMIT THE ATTACHED DOCUMENTS TO PROVIDE EVIDENCE THAT THERE ARE INDEED GENUINE ISSUES OF MATERIAL FACT FOR TRIAL

  I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT AND THAT THIS DECLARATION WAS EXECUTED ON

    8/17/08

                    Randall Scott Cash

CASH V. SADEGHI                                    CV076252 JF (PR)

1  RECORDS ON FILE IN THIS ACTION; SUCH FURTHER WRITTEN
2  AND ORAL DOCUMENTATION AS MAY BE REQUESTED BY THE COURT
3  AND MATTERS OF WHICH THE COURT MAY TAKE JUDICIAL NOTICE.
4      WHEREFORE, PLAINTIFF PRAYS THAT THE DEFENDANTS' MOTION FOR
5  SUMMARY JUDGEMENT OR IN THE ALTERNATIVE - SUMMARY ADJUDICATION
6  BE DENIED.
7
8  DATED- AUGUST 17, 2008              RESPECTIVELY SUBMITTED,
9                                      Randall Scott Cash
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CASH V. SADEGHI                                    CV076252JF (PR)

# TABLE OF CONTENTS

NOTICES OF MOTION IN OPPOSITION TO DEFENDANTS                i-abc,
REQUEST FOR SUMMARY JUDGEMENT PARTS 1-3

TABLE OF CONTENTS                                             ii

TABLE OF AUTHORITIES                                         iii

MOTION IN OPPOSITION OF DECLARATION BY JENNIFER C. ADDAMS  pgs 1-14
AND REQUEST FOR SUMMARY JUDGEMENT BY DEFENDANT WITH
STATEMENT OF FACTS IN OPPOSITION TO DEFENDANTS RE-
QUEST FOR SUMMARY JUDGEMENS (PART I)

STATEMENT OF FACTS SUPPORTING OPPOSITION TO DEFENDANTS pgs 1-6
REQUEST FOR SUMMARY JUDGEMENT (PART 2)

MOTION IN OPPOSITION OF DECLARATION BY JAHANGIR SADEGHI M.D.
AND DEFENDANTS REQUEST FOR SUMMARY JUDGEMENT (PART 3)  pgs 1-7

EXHIBIT- STATEMENT OF CLAIM ATTACHMENT                   pgs 1-4

EXHIBIT- WEST COAST RETINA MEDICAL GROUP REPORTS         pgs 2-4
         9/08/06, 9/13/06, 9/25/06

EXHIBIT- SAN QUENTIN MEDICAL RECORDS  pgs- 06,07,24,26,27,34,
40,43-49,50,51,54,56,58,60-62,68,80-83,86-89,255,256,
265,266,268,269,272,273,276-79,283-86

PROOF OF SERVICE

# CASE V. SADEGHI
## TABLE OF AUTHORITIES

CASES | PAGES

1  CELOTEX CORD V. CATRETT
   477 US 317 (1976)                     PART 1: 9   PART 2: 2

2  DUNHAM
   423 F.2d 944                          PART 2: 3

3  106 S.CT.
   2548                                  PART 2: 2

4  91 L.ED
   2d 265 (1986)                         PART 2: 2

5  102 S.CT.
   2462                                  PART 1: 4,7   PART 2: 4   PART 3: 6

6  551 F.2d
   389, 392-94 (1976)                    PART 2: 1   PART 3: 7

7  GRAY V. GRUNNAGLE
   423 PA 116                            PART 1: 4,7   PART 2: 3   PART 3: 6,7

8  223 A.2d
   6 14                                  PART 1: 4,7   PART 2: 3   PART 3: 7

9  GREENE V. DALEY
   414 F.3d 645,654 (7th cir 2005)       PART 1: 13   PART 3: 7

10 HUGHES V. JOLEIT CORRECTIONAL CENTER
   931 F.2d 425,428 (7th cir 1991)       PART 1: 13   PART 3: 7

11 JACKSON
   90 F.3d 322                           PART 1: 9

12 LANDEROS V. FLOOD
   17 CAL 3d 399, 408, 410 (1976)        PART 2: 1   PART 3: 7

13 Le Marke v. Woeneski
   266 F.3d (4th cir 2001) cert denied 551 US 1056 (2002)   PART 1: 12

14 MARINO V. BALLESTAS
   749 F.2d 162 (1984) 167 (5)          PART 1: 4,7   PART 2: 3   PART 3: 6

15 RONNIE
   720 F.2d 274                          PART 1: 4,7   PART 2: 4   PART 3: 6

16 SIGMOND V. BROWN
   828 F.2d 8 (9th cir 1987) per curiam  PART 2: 2

17 TOGU (SA)
   391 F.3d 58                           PART 1: 9

18 WHITE V. NAPOLEON
   897 F.2d 103 (3rd cir 1990)           PART 1: 4,7   PART 2: 4   PART 3: 6

19 WILLARD V. HAGEMEISTER
   121 CAL. APP. 3d 406, 412, 414        PART 2: 2

20 CF YOUNGBERG V. ROMANO
   457 US 523                            PART 1: 4,7   PART 2: 4   PART 3: 6

21 131 CAL RPTR
   69, 72-74 (1976)                      PART 2: 1   PART 3: 7

22 175 CAL RPTR
   365, 369, 370 (1981)   STATUTES       PART 2: 2
OTHER                    AUTHORITIES

23 DOM   31010.3                          PART 1: 12   PART 3: 7
   DOM   33030.5.2.21                     PART 1: 12   PART 3: 7
24 DOM   33030.6                          PART 1: 12   PART 3: 4,6
   DOM   33030.6.1                        PART 1: 12   PART 3: 7
25 DOM   54100.11                         PART 1: 12

26 STATUTES

27 FEDERAL RULES OF CIVIL PROCEDURE

28    RULE 56(e)                          PART 2: 2
      RULE 56(e)                          PART 2: 2

PARTS 1,2,3
MOTIONS IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGEMENT
   "     "     "     TO DECLARATION BY J.C. ADDAMS
   "     "     "     TO DECLARATION BY J. SADEGHI M.D.

IN PRO PER

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

No. CV 07 6252 JF (PR)

1
2
3
4

5  IN RE

6  RANDALL SCOTT CASH

7        PLAINTIFF

8        VS.

9  DR. JAHANGIR SADEGHI

10       DEFENDANT

MOTION IN OPPOSITION OF

DECLARATION BY JENNIFER C. ADDAMS
AND REQUEST FOR SUMMARY
JUDGEMENT BY DEFENDANT
WITH STATEMENT OF FACTS IN
OPPOSITION TO DEFENDANTS REQUEST
FOR SUMMARY JUDGEMENT
(PART 1)

11 ( I DO APOLOGIZE FOR MY WRITING
   BUT I CAN NOT SEE WHAT I'm DOING )

12 1. I, RANDALL SCOTT CASH, DO HEREBY DECLARE THAT I AM PLAINTIFF (PRO SE) TO

13 THE ABOVE REFERENCED MATTER AND THAT I AM INCARCERATED AT SAN QUENTIN PRISON.

14 2. IN THE PRELIMINARY STATEMENT BY DEFENDANTS ATTORNEY JENNIFER C. ADDAMS

15 IT IS STATED INCORRECTLY ON PAGE 3, LINE 6 "PLAINTIFF WAS FIGHTING AND INJURED

16 HIS HEALING EYES". THERE IS NO DOCUMENTATION OF ANY FIGHTING BY THIS PLAIN-

17 TIFF OR ANY RECORD OF A CDC FORM 115 GENERATED IN PLAINTIFFS FILE

18 FOR FIGHTING. J. ADDAMS IS STATING FACTS NOT IN EVIDENCE.

19 3. IT IS STATED ON PAGE 3 THAT THESE WERE ELECTIVE SURGERIES. THESE SUR-

20 GERIES WERE AS PER DR. SADEGHI, NECESSARY PROCEDURES TO RETAIN PLAINTIFFS'

21 VISION.

22 4. PAGE 3, LINES 23-24 AND PAGE 4, LINES 1-4 STATE AGAIN INCORRECTLY THAT

23 DR. SADEGHI TOLD PLAINTIFF ABOUT CAPSULAR RING AND CORTEX THAT DEFENDANT

24 DROPPED INTO PLAINTIFFS RIGHT EYE ON 5/03/06 DURING THE INITIAL SURGERY.

25 5. PLAINTIFF HAD NO KNOWLEDGE OF CAPSULAR RING OR OTHER DETRITUS INSIDE EYE

26 UNTIL SEPTEMBER 8, 2006. PLAINTIFF COULD NOT HAVE AGREED TO LEAVE THE

27 CAPSULAR RING INSIDE THE EYE AS STATED ON PAGES 3-4 OF THE PRELIMINARY

28 STATEMENT. THIS STATEMENT OF PLAINTIFFS AGREEMENT TO LEAVE RING INSIDE HIS EYE

1  IS NOT IN FACT TRUE. HOW COULD THIS PLAINTIFF AGREE TO SOMETHING HE HAD NO
2  KNOWLEDGE OF?

3  6. MEDICAL RECORDS OF SUBSEQUENT VISITS WITH DR. SADEGHI WILL SHOW A
4  INCONSISTENTCY OF PLAINTIFFS' ABILITY TO SEE. BETWEEN MAY OF 2006 AND AUGUST
5  2006. PLAINTIFF DID HAVE COMPLAINTS OF BLURRED VISION FROM JUNE 2006 ON
6  THIS IS IN CONFLICT TO STATEMENTS ON PAGE 4, LINES 5-9 OF J. ADDAMS PRE-
7  LIMINARY STATEMENT. (MEDICAL RECORDS PAGE 07,240, 255-56, 265-66, 276-279)

8  7. ON PAGE 4, LINES 17-19 IT IS STATED IN THE PRELIMINARY STATEMENT THAT THE
9  RETINA DETACHMENT WAS CAUSED BY THE TRAUMA OF THE 8-38-06 "BUMP"
10 IN EYE OF PLAINTIFF. THERE IS NO DOCUMENTATION OF ANY INJURY TO RIGHT
11 EYE THAT WOULD CAUSE RETINAL DETACHMENT. THIS RETINA WAS IN
12 DDANGER OF DETACHING PRIOR TO 8/31/06 (MEDICAL RECORDS PGS. 26, 68)

13 8. ON PAGE 4 OF PRELIMINARY STATEMENT ON LINES 26-28 AND PAGE 5 LINE 1
14 IT IS STATED THAT PLAINTIFF NEVER TOLD DEFENDANT OF DOUBLE VISION. THIS IS
15 NOT A TRUE STATEMENT. PLAINTIFF TOLD DR SADEGHI FROM DECEMBER 2006 UNTIL
16 JUNE 7, 2007 THAT THERE WAS A PROBLEM OF DOUBLE IMAGES GHOSTING, AND
17 DISTORTION IN HIS VISION (MEDICAL RECORDS - PG 276-279; 07, 51, 06, 40, 61,
18 10, 285-296, 45-47, 56)

19 9. ON JUNE 07, 2007 DEFENDANT DID REFUSE TREATMENT WHEN PLAINTIFF ASKED
20 HIM IF HE WAS GOING TO DO ANYTHING ABOUT THE HOLE THAT WAS BURNED
21 THRU MY EYE BY THE LASER. HE SAID NO. I ASKED HIM WOULD IT CLOSE BY ITSELF
22 AND THE DOUBLE VISION AND GHOSTING, DISTORTION WOULD STOP. HE SAID NO. HE
23 AS WELL SAID NO WHEN I ASKED HIM IF HE WOULDNT FIX IT WOULD HE REFER
24 ME TO A SPECIALIST WHO COULD AT LEAST GIVE ME A SECOND OPINION OR POSSIBLY
25 REPAIR HIS ERRORS.

26 10. ON PAGE 5 OF PRELIMINARY STATEMENT LINES 4-9 AGAIN IT WAS STATED
27 INCORRECTLY THAT THESE SURGERIES WERE ELECTIVE. THE DEFENDANT TOLD
28 PLAINTIFF THESE WERE IN FACT NECESSARY TO RETAIN HIS VISION AND

1  RETAIN IT TO A STATE BETTER THAN PLAINTIFF HAD EVER SEEN WITHOUT HAVING
2  TO WEAR GLASSES. LINES 12,13 SAME ISSUE, NOT ELECTIVE, BUT NECESSARY
3  PROCEDURES AS PER DEFENDANTS RECOMMENDATION.

4  11. ON PAGE 5 OF PRELIMINARY STATEMENT, LINES 18-20 IT IS ALLUDED THAT
5  THERE IS NO EXISTENCE OF A COMPETENT MEDICAL OPINION IN SUPPORT OF
6  PLAINTIFFS CLAIMS. PLAINTIFF CAN AND WILL PRODUCE DR. J. MICHAEL
7  JUMPER OF WEST COAST RETINA MEDICAL GROUP AT TRIAL TO ATTEST TO
8  PLAINTIFFS' CLAIMS. DR JUMPER HAS FIRST HAND KNOWLEDGE OF PLAINTIFFS'
9  AND WHAT THE DEFENDANT DID TO PLAINTIFF. DR. JUMPER DID THE RETINA
10 REATTACHMENT SURGERY AND REMOVED THE CORTEX AND CAPSULAR RING
11 THAT THE DEFENDANT DROPPED INTO EYE DURING THE 5/03/06 SURGERY
12 (MEDICAL RECORDS PAGES 54 AND WEST COAST RETINA MEDICAL GROUP REPORT OF
13 THE 9/11/06 SURGERY, INITIAL EXAM PAGE 2/04; POST OP VISIT PAGE 3/04;
14 AND POST OP VISIT PAGE 4/04)

15 12. IN PAGE 6, ARGUMENT BY J. ADDAMS, SECTION B DELIBERATE INDIFFERENCE
16 IT IS STATED THAT A SERIOUS MEDICAL NEED EXISTS IF THE FAILURE TO TREAT
17 A PRISONERS' CONDITION COULD RESULT IN FURTHER SIGNIFICANT INJURY OR THE
18 UN-NECESSARY AND WANTON INFLICTION OF PAIN.

19 13. FOR A DOCTOR TO KNOWINGLY LEAVE STITCHES IN A PATIENTS' EYE CAUSING PAIN
20 IRRITATION AND INFECTION FOR 3 MONTHS IN THE RIGHT EYE AND 7 MONTHS
21 IN THE LEFT EYE, SO LONG OF A TIME THE CORNEA TISSUE ACTUALLY
22 GREW AROUND THE KNOT MAKING IT EXTREMELY DIFFICULT AND PAINFUL TO
23 REMOVE. THIS DISREGARD FOR PATIENTS' BEING IN PAIN AND DISREGARDING
24 THE FACT THAT THE STITCHES LEFT IN THE EYE ARE CAUSING A DELAY
25 IN HEALING AND PREVENTING IMPROVEMENT OF VISION AND IS BLATANT
26 DELIBERATE INDIFFERENCE TO PATIENTS NEED FOR MEDICAL CARE. AFTER
27 "FORGETTING" TO BRING PROPER TOOLS IN ORDER TO REMOVE STITCHES (MEDICAL
28 RECORDS PAGES - 06,07,50,51,61)

14. THE DEFENDANT HERE WAS INDIFFERENT TO PLAINTIFFS MEDICAL NEEDS BY NOT ADDRESSING PLAINTIFFS CONCERNS ABOUT FIXED PUPILS AND THE CONSTANT EXTREME PAIN THIS CONDITION CAUSES WHEN EXPOSED TO ANY BRIGHT LIGHT AND BLURRED, DISTORTED, AND DOUBLE VISION. (MEDICAL RECORDS - 07, 40, 255-56, 265-66, 276-79)

15. WHEN THIS PLAINTIFF WAS FINALLY GIVEN A SECOND OPINION ON NOVEMBER 28, 2007 AT U.C.S.F. WHOM ARE AS WELL IN CONTRACT WITH CDCR, (MEDICAL RECORDS- PGS 34, 80-83) IT WAS FOUND CONDITION WAS PERMANENT AS FAR AS THE FIXED PUPILS AND IRREGULARITY. PLAINTIFF WAS TOLD THIS COULD HAPPEN WITH THIS TYPE OF SURGERY. PLAINTIFF WAS NOT IN POSSESSION OF INFORMED CONSENT PRIOR TO SURGERY OF THIS FACT. NOW PLAINTIFF IS PERMANENTLY UNABLE TO TOLERATE ANY BRIGHT LIGHT. EVEN WHEN WEARING TINTED GLASSES THE GLARE IS TOO PAINFUL AND CAUSES SEVERE HEADACHES. THIS IS INDIFFERENCE TO PLAINTIFFS' RIGHT TO BE INFORMED OF ALL FACTS BEFORE DECIDING TO HAVE SURGERY OR NOT TO HAVE SURGERY. MARINO V. BALLESTAS 749 F. 2d 162 (1984) 167 (5); GRAY 423 PA AT 116, 223 A.2d AT 674; WHITE V. NAPOLEON 897 F. 2d 103 (3RD CIR 1990) cf. YOUNGBERG V. ROMANO 457 US AT 323; 102 S.CT. AT 2462; RONNIE 720 F. 2d AT 274.

16. IN PAGE 7 OF J. ADAMS ARGUMENT, "C" MEDICAL MALPRACTICE; PHYSICIAN - PATIENT DIFFERENCE OF OPINION IT IS STATED," PRISON OFFICIALS VIOLATE THEIR CONSTITUTIONAL OBLIGATION ONLY BY "INTENTIONALLY DENYING OR DELAYING ACCESS TO MEDICAL CARE. EXACTLY, DR. SADEGHI, IN HIS REFUSING TO RECOMMEND A SECOND OPINION FROM ANOTHER OPHTHALMOLOGIST WHILE IT WAS STILL FEASIBLY POSSIBLE TO REMEDY THE DAMAGE THAT HE HAD INFLICTED ON PLAINTIFFS RIGHT EYE, THEN LATER LEFT EYE AS WELL; DR. SADEGHI LEAVING THE DETRITUS INSIDE PLAINTIFFS' RIGHT EYE WITH NO NOTIFICATION TO PLAINTIFF; LEAVING

1. STITCHES IN THE EYES FOR 3 MONTHS IN RIGHT EYE, 7 MONTHS IN LEFT EYE,
2. IGNORING PLAINTIFFS' CONCERNS ABOUT PAIN AND DISTORTED VISION FROM THE
3. SUTERS BEING LEFT IN EYES FOR SO LONG AND WHY VISION IS DEGRADING,
4. GOING FROM GOOD TO BAD TO GOOD TO BAD ETC... (MEDICAL RECORDS -
5. PAGES - 40, 43-49, 54, 58, 61-62) AND DR. J. MICHAEL JUMPERS' WEST COAST
6. RETINA MEDICAL GROUP REPORTS DATED 9/08/06, 9/13/06, AND 9/25/06. THESE
7. REPORTS ALL SHOW INCONSISTENCIES IN VISION STABILITY. AND ALL THESE
8. REFUSALS, ATTITUDES AND DELAYS IN PROCEDURE ACCUMULATE TO DELIBERATE
9. INDIFFERENCE ON THE PART OF THIS DEFENDANT IN REGARDS TO HOW HE WENT
10. ABOUT TREATING PLAINTIFF. BEFORE, DURING AND AFTER SURGERIES. THE INSTABILITY
11. OF PLAINTIFFS' VISION IS OBVIOUSLY EVIDENT IN MEDICAL RECORDS — (PG. 62 -
12. RIGHT EYE 20/130, LEFT EYE - ? ON 7/06/06; PAGE 61-RIGHT EYE, REMOVED FINAL
13. STITCH FROM 5/03/06 SURGERY ON 7/20/06; PAGE 58 - RIGHT EYE 20/100, LEFT EYE ?
14. ON 8/17/06; PAGE 54 - DR. J. MICHAEL JUMPER FOUND CAPSULAR RING AND OTHER
15. DETRITUS IN RIGHT EYE THAT DEFENDANT DROPPED INTO EYE AND LEFT IT THERE
16. DURING 5/03/06 SURGERY. THIS TOOK PLACE AT DR. MICHAEL'S OFFICE ON 9/08/06;
17. REPORTS FROM WEST COAST RETINA MEDICAL GROUP DATED 9/08/06, 9/13/06 AND 9/25/06
18. DESCRIBING REMOVAL OF CAPSULAR RING AND DETRITUS AND RETINA RE-ATTACHMENT ON
19. 9/11/06; STITCHES STILL IN LEFT EYE FROM 9/01/06 SURGERY ON 12/01/06;  PG 06-
20. PAGE 49 - RIGHT EYE 20/100 LEFT EYE - 20/100 ON 1/18/07; PAGE 40 - PUPILS
21. NON-REACTIVE, FIXED IN DIALATED POSITION, RIGHT EYE 20/60, LEFT EYE 20/60
22. ON 2/01/07; PAGE 48 - RIGHT EYE - 20/200, LEFT EYE - 20/100 ON 2/15/07;
23. PAGE 47 - CUT 3 STITCHES IN LEFT EYE, RIGHT EYE 20/150, LEFT EYE - 20/80;
24. PAGE 46 - REMOVED 2 STITCHES IN LEFT EYE, LEFT 1 STITCH IN, COULDN'T GET OUT
25. RIGHT EYE - 20/200, LEFT EYE - 20/200 ON 3/15/07; PAGE 45, ONE STITCH
26. FROM 9/01/06 SURGERY STILL IN LEFT EYE, FORGOT TO BRING TOOLS TO REMOVE IT.
27. RIGHT EYE - 20/200, LEFT EYE - 20/100 ON 3/29/07; PAGE 44 - LAST STITCH
28. FROM 9/01/06 SURGERY FINALLY REMOVED AFTER 7 MONTHS. RIGHT EYE 20/200, LEFT EYE 20/100
ON 4/05/07

17. THIS IS NOT MERELY A DIFFERENCE OF OPINION BETWEEN DOCTOR/PATIENT, BUT AN ONGOING CHANGE IN PLAINTIFFS' ABILITY TO SEE. THESE CONCERNS WERE BROUGHT TO DEFENDANTS ATTENTION TIME AND TIME AGAIN, WHO ONLY IGNORED PLAINTIFFS CONCERNS ABOUT THE PAIN IN EYES FROM GLARE AND SUBSEQUENT HEADACHES, AND MOST OF ALL PLAINTIFFS' CONCERNS ABOVE HOW HIS VISION IS GOOD ONE DAY AND THE NEXT DAY PLAINTIFF CAN'T SEE TO READ OR WRITE. DR SADEGHI JUST TOLD THIS PLAINTIFF "ITS FINE." HOW CAN IT BE FINE WHEN THIS PLAINTIFFS' VISION CHANGES DAILY? STILL, TO THE TIME OF THIS WRITING MY VISION IS DAILY CHANGING. I STILL HAVE FRESH BLOOD FLOATING IN MY LEFT EYE WHICH IMPAIRS THAT EYES' VISION. THE DISTORTION AND DOUBLE IMAGING (GHOSTING) IS STILL PRESENT IN RIGHT EYE AS WELL AS THE HORIZONTAL COMPRESSION THAT CAUSES WHAT I SEE WITH MY RIGHT EYE APPEAR TO BE "CRUNCHED" INWARDS LIKE AN HOURGLASS. THERE IS STILL A BLANK SPOT IN THE CENTER OF THE FOCAL POINT THAT MAKES IT IMPOSSIBLE TO SEE WHAT I AM DIRECTLY LOOKING AT, THE CENTER OF MY FOCUS IS BLANKED OUT.
18. ALL THIS WAS TOLD TO DR SADEGHI THROUGH OUT THE TIME AFTER 5/03/06 THRU 6/07/07

19. IN PART II OF THE ARGUMENT ON PAGE 7, TITLED "DEFENDANT HAS NOT VIOLATED PLAINTIFFS 8TH AMMENDMENT RIGHTS," IT IS STATED THAT THESE SURGERIES AND MEDICAL CONDITION IS/WAS NOT AN EMERGENCY. THIS WAS NEVER AN ISSUE EXCEPT FOR THE 9/01/06 SURGERY WHICH INDEED WAS AN EMERGENCY.
20. THE REASON THAT THERE WAS AND STILL IS A VIOLATION OF PLAINTIFFS' 8TH AMMENDMENT RIGHTS IS BECAUSE THE DEFENDANT KNEW HE HAD MADE ERRORS AND KEPT THEM FROM PLAINTIFF. THESE ERRORS CAUSED ANOTHER PROCEDURE TO REMOVE THE DETRITUS AND CAPSULAR RING HE DROPPED INTO THE PLAINTIFFS EYE. IF DEFENDANT HAD NOT BEEN INDIFFERENT TO PLAINTIFFS' CARE HE WOULD HAVE REMOVED THE DETRITUS AND THE CAPSULAR RING WHEN HE DROPPED IT IN THE EYE, SAVING THE PLAINTIFF FROM THE PAIN AND RISKS OF ANOTHER PROCEDURE LATER. EVEN THOUGH THE RETINA SURGERY

1. BECAME NECESSARY ANYWAY AND THE DETRITUS AND CAPSULAR RING WERE RE-
2. MOVED. HOWEVER, AT THE TIME OF THE 5/03/06 SURGERY WHEN THE CAPSULAR RING
3. AND DETRITUS WERE DROPPED INTO THE EYE, THERE WAS NO WAY OF KNOWING THE
4. RETINA SURGERY WOULD BECOME NECESSARY. THIS WAS DELIBERATE INDIFFERENCE TO
5. PLAINTIFFS' MEDICAL CARE WHEN HE KNOWINGLY DROPPED THE CAPSULAR RING AND DETRITUS
6. INTO THE EYE AND HAD NO INTENTION OF CORRECTING HIS ERROR OR EVEN TELLING
7. THE PLAINTIFF OF THE ERRORS OF DROPPING ANYTHING INTO THE EYE OR ANYTHING
8. ABOUT REMOVING THE CAPSULAR RING AND DETRITUS FROM THE EYE.
9. 21. THE DEFENDANTS' FAILURE TO OBTAIN INFORMED CONSENT FROM THIS
10. PLAINTIFF WAS DELIBERATE INDIFFERENCE TO PLAINTIFFS' 8TH AMMENDMENT
11. RIGHTS BECAUSE HE COULD NOT GIVE AN INTELLIGENT, KNOWLEDGEABLE, INFORMED DE-
12. CISION TO HAVE OR NOT HAVE THESE SURGERIES WITHOUT HAVING ALL THE
13. FACTS INVOLVED IN THESE PROCEDURES BEFOREHAND. MARINO V. BALLESTAS
14. 749 F. 2d AT 162 (1984); GRAY 423PA AT 116, 223A.2d AT 674;
15. WHITE V. NAPOLEON 897F. 2d AT 103 (3RD CIR 1990) cf YOUNGBERG
16. V. ROMANO 457US. AT 323; 102 S.CT. AT 2462; RONNIE 720 F.2d AT 274
17. 22. AGAIN IT IS INCORRECTLY STATED THAT TRAUMA CAUSED THE RETINA TO
18. DETACH. THIS IS UN-DOCUMENTED, A STATEMENT OF FACTS NOT IN EVIDENCE.
19. THERE IS NO RECORD OF ANY INJURY TO THE RIGHT EYE THAT WOULD CAUSE
20. RETINA DETACHMENT. THE 9/01/06 SURGERY WAS TO REPAIR THE TORN IRIS OF
21. THE LEFT EYE.
22. 23. LIVING WITH BAD VISION ALL HIS LIFE AS STATED ON PAGE OF J. ADDAMS
23. ARGUMENT IS IRRELEVANT HERE. THE PLAINTIFF WORE GLASSES TO CORRECT HIS
24. MYOPIA (NEAR SIGHTEDNESS) AND ASTIGMATISM. THIS PLAINTIFF COULD SEE WITH
25. GLASSES, NOW HE CAN'T WITH OR WITHOUT GLASSES SEE CORRECTLY. THE TEXT ON
26. PAGE 8 OF THE ARGUMENT GOES ON TO STATE INCORRECTLY AGAIN THAT THE
27. PLAINTIFF WAS INFORMED PRIOR TO THE SURGERY OF THERE BEING NO
28. GUARANTEE, OR OF SIDE EFFECTS AND DANGER. THIS IS PURELY IN

1  CONFLICT WITH THE TRUTH OF THE MATTER. THIS PLAINTIFF WAS
2  NOT ADVISED OF ANY POSSIBLE BAD OUTCOME, SIDE EFFECTS OR DANGERS
3  OF HAVING THIS SURGERY BEFORE THE PROCEDURES. THE PLAINTIFF WAS
4  SIMPLY ASSURED BY DEFENDANT THAT HIS VISION WOULD BE BETTER THAN IT EVER HAD
5  BEEN WITHOUT HAVING TO WEAR GLASSES.
6  24. PLAINTIFF WAS DENIED FURTHER TREATMENT ON JUNE 7, 2007 WHEN THIS
7  PLAINTIFF ASKED THE DEFENDANT THE SPECIFIC FIVE QUESTIONS AS LISTED IN
8  (PLAINTIFFS' COMPLAINT-STATEMENT OF FACTS, PARAGRAPH 5 11-15)
9  25. THE DEFENDANT HERE REFUSED TO SEEK AN OUTSIDE DOCTOR TO PROVIDE A SECOND
10  OPINION OR A CHANCE TO HAVE THE DAMAGE REPAIRED IN A TIMELY MANNER BE-
11  FORE IT WAS TOO LATE. THIS IS DELIBERATE INDIFFERENCE TO PLAINTIFFS' MEDICAL
12  NEEDS ON THE PART OF THE DEFENDANT, A DOCTOR SHOULD DO ALL HE CAN TO EN-
13  SURE A POSITIVE OUTCOME TO HIS PATIENTS CONDITION. EVEN IF IT MEANS ASKING FOR
14  HELP FROM ANOTHER SURGEON TO ATTEMPT TO HOPEFULLY REVERSE HIS OWN
15  ERRORS.
16  26. THESE ARE GENUINE ISSUES FOR TRIAL AND THE PLAINTIFF HERE IS ASKING FOR HIS
17  RIGHT TO PRESENT HIS CASE IN TRIAL, WITH EXPERT TESTIMONY TO SHOW THE
18  COURT THAT THE DEFENDANT HERE USED SUBSTANDARD TECHNIQUES IN HIS SUR-
19  GERIES ON PLAINTIFF AND WAS DELIBERATELY INDIFFERENT TO PLAINTIFFS' WELL-
20  BEING BY NOT REMOVING THE CAPSULAR RING AND OTHER DETRITUS FROM PLAINTIFFS'
21  RIGHT EYE DURING THE 5/03/07 SURGERY. BURNING A HOLE THRU PLAINTIFFS' RIGHT
22  EYE WITH THE LASER HE WAS USING SHOWS INCOMPETENCE AND HAS IN EFFECT
23  AFFECTED CRUEL AND UNUSUAL PUNISHMENT ON THIS PLAINTIFF BY CAUSING A
24  PERMANENT DISABLING CONDITION OF DOUBLE IMAGES (GHOSTING), NOT ONLY WAS
25  THIS INCOMPETENCE ON THE PART OF THE DEFENDANT TO BE DOING THESE PROCEDURES
26  BUT THE OBFUSCATION OF THE FACT HE CAUSED THIS INJURY IS ALSO
27  DELIBERATE INDIFFERENCE. THE DEFENDANT ETHICALLY SHOULD HAVE MADE
28  THE ERRONEOUS INJURY IMMEDIATELY KNOWN AND TRIED TO REPAIR IT.

27. THERE IS ALSO THE FACT THAT THIS DEFENDANT WAS CONSCIOUS OF HIS DIS-
REGARD OF AN EXCESSIVE RISK TO PLAINTIFFS' HEALTH BY NOT APPRISING HIM OF
THE DANGERS IN HAVING IMPLANTS IN HIS EYES. THE DEFENDANT HERE, ACCORDING
TO DR. J. MICHAEL JUMPER OF WEST COAST RETINA MEDICAL GROUP, USED SUB-
STANDARD, UN-ACCEPTABLE TECHNIQUES TO ACCOMPLISH THESE PROCEDURES.

28. THIS DEFENDANT THEREFORE IS NOT PROTECTED BY TOGUCHI 391 F.3d AT 58
JACKSON 90 F.3d AT 322 AND CELOTEX CORP 477 US AT 323.

29. DEFENDANT HERE AS WELL HAS NO PROTECTION BY FARMER, SUPRA 511 US
AT 844. DEFENDANT DID CAUSE HARM TO THIS DEFENDANT BY RUINING HIS
PUPILS - THE PUPILS ARE PERMANENTLY DILATED AND IRREGULAR IN SHAPE
CAUSING THE PLAINTIFF TO BE UNABLE TO TOLERATE SUNLIGHT OR ANY BRIGHT
LIGHT AT ALL WITHOUT ENDURING PAINFUL GLARE AND SEVERE HEADACHES. THIS
WAS ALL TOLD TO DEFENDANT BY PLAINTIFF CONTINUALLY FROM EARLY MAY
2006 THRU JUNE OF 2007. THE DEFENDANT SAID IN JUNE THAT "THIS SHOULD
NOT BE A PROBLEM, JUST WEAR YOUR TINTED LENS." IT WAS ALSO TOLD TO THIS
PLAINTIFF THAT HE SHOULD HAVE EXPECTED THIS CONDITION. BY THE CASEWORKER
WHO WORKED ON MY 602 AS A QUOTE OF THIS DEFENDANT (MEDICAL RECORDS PAGE 266)

30. THERE WAS NO PRIOR NOTIFICATION OF THIS POSSIBLE CONDITION, THE DEFENDANT
DIDN'T TELL THE PLAINTIFF ANY SUCH THING COULD HAPPEN

31. IN PAGE 9 OF ARGUMENT PART B - PLAINTIFF RECEIVED APPROPRIATE SURGERY
IT IS STATED DR. SADEGHI PROVIDED ACCESS TO SPECIALISTS OUTSIDE THE PRISON
SYSTEM AND PROVIDED APPROPRIATE ELECTIVE SURGERIES AND EMERGENCY TREATMENT

32. IT GOES ON TO SAY THERE WAS NO DENIAL OF NECESSARY MEDICAL CARE OR
DELIBERATE INDIFFERENCE. IT SAYS MERE ALLEGATIONS OF DELAY IN SURGERY ARE
NOT SUFFICIENT TO STATE A CLAIM ABSENT AN ALLEGATION THAT THE DELAY
RESULTED IN A COGNIZABLE HARM. IT STATES NO ALLEGATION OF ACTUAL HARM
IS, OR CAN BE TRUTHFULLY BE MADE IN THE INSTANT CASE. BRIEF DELAYS OR
DELAYS NECESSITATED BY AN EVALUATION PROCESS GENERALLY FAIL TO

1 STATE A COGNIZABLE CLAIM. THE STATEMENT OF FURTHER TRAUMA TO EYES
2 PLURAL IS AGAIN INCORRECT. THAT THERE IS NO DOCUMENTATION OF ANY TRAUMA TO
3 THE RIGHT EYE THAT COULD HAVE CAUSED THE RETINA TO DETACH. THERE WAS NO
4 CLAIM BY PLAINTIFF OF DELAY IN TREATMENT, THE CLAIM IS THAT THE DEFENDANT
5 WOULD NOT REPAIR HIS OWN ERRORS, HE OBFUSCATED FACTS OF WHAT HE DID
6 TO PLAINTIFF IN THE 5/03/06 SURGERY, THERE WAS DOCUMENT TAMPERING (SEE
7 PARALLEL MOTION BY PLAINTIFF HERE - MOTION AND STATEMENT OF FACTS SUPPORTING OPPOSITION
8 TO DEFENDANTS' REQUEST FOR SUMMARY JUDGEMENT (PART 2) (PAGE 40F6 PARAGRAPHS
9 11-12) AND RELATED EXHIBITS - ~~8,2~~; ~~JENNIFE 2~~; ~~AND P.~~
33.          (MEDICAL REC. 283,284       88,89     87)
10 THERE IS EVIDENCE OF A COGNIZABLE HARM. THE PLAINTIFFS' RIGHT EYE IS PHYSICAL
11 EVIDENCE IN ITSELF. THERE IS A HOLE, VISIBLE IN THE LOWER PART OF THE IRIS.
12 BOTH EYES ARE PHYSICAL EVIDENCE IN THE FACT THAT THE PUPILS ARE NO LONGER
13 ROUND BUT IRREGULAR IN SHAPE AND FIXED IN A DIALATED POSITION MAKING BOTH
14 EYES EXTREMELY LIGHT SENSITIVE TO THE POINT OF PAINFUL GLARE AND SEVERE
15 HEADACHES, EVEN FROM CELL LIGHTING, LET ALONE SUN LIGHT. THE DISTORTION
16 IN PLAINTIFFS RIGHT EYE FROM THE RETINA, THE HOLE IN IRIS THAT CAUSES THE
17 FOCAL POINT TO SEEM TO BLANK OUT ALL MAKE IT NEARLY IMPOSSIBLE TO READ AND
18 WRITE. IT WAS VERY DIFFICULT AND PAINFUL TO PREPARE THIS DOCUMENT AS THE
19 PLAINTIFF HAS TO STRAIN HIS EYES TO WRITE.
20 #4 THE IRREGULARITIES AND FIXED CONDITION OF THE PUPILS IS A CONDITION THAT
21 THE PLAINTIFF WAS NOT INFORMED OF PRIOR TO THE PROCEDURES. THE DANGERS
22 OF HAVING IMPLANTS INSIDE THE PLAINTIFFS' EYE THAT COULD RESULT IN THE
23 IMPLANT TEARING THRU THE EYE BY MERELY GETTING BUMPED IN THE EYE
24 DURING YARD TIME WERE NOT TOLD TO THE PLAINTIFF PRIOR TO THE SURGERIES.
25 THE FACT THE DEFENDANT DROPPED A CAPSULAR RING INTO THE EYE, AND
26 AS WELL DROPPED A PIECE OF CORTEX INTO THE EYE WERE NOT TOLD
27 TO THE PLAINTIFF AFTER THE SURGERY. THE CLAIM BY THE DEFENDANT
28 THAT THE PLAINTIFF WOULD SEE BETTER THAN HE EVER HAD WITHOUT

1  GLASSES WAS, NOT TRUE. BEFORE THE PROCEDURES THE PLAINTIFF ONLY HAD
2  TO PUT ON GLASSES TO SEE CORRECTLY - FAR AWAY AND CLOSE UP. NOW
3  THE PLAINTIFFS' VISION IS DISTORTED IN THE RIGHT EYE - HORIZONTAL COM-
4  PRESSION OF IMAGES MAKING A RECTANGLE (BOOK) LOOK LIKE AN HOURGLASS
5  (MEDICAL RECORDS # 5)  VISION RIGHT EYE 20/400 LEFT EYE 20/100  SADEGHI
6  STATES - VISION NOT IMPROVED 12/14/06 )
7  35. IN THE CONCLUSION OF J. ADDAMS' ARGUMENT HERE FOR THE DEFENDANT IT IS
8  STATED THE DEFENDANT OBSERVED THE STANDARD OF CARE IN THE RELEVANT
9  MEDICAL COMMUNITY AND ACTED REASONABLY. THE STATEMENTS TOLD TO
10 THE PLAINTIFF FIRST HAND BY DR. J. MICHAEL JUMPER OF WEST
11 COAST RETINA MEDICAL GROUP ON 9/08/06, QUOTE "I CAN NOT BELIEVE
12 DR. SADEGHI USED THIS TECHNIQUE, NO BODY DOES IT THIS WAY," AND
13 FURTHER," I CANNOT BELIEVE DR SADEGHI LEFT THIS DEBRIS INSIDE
14 YOUR EYE." UN QUOTE, FULLY RENEGE DR. SADEGHIS' CLAIM HE USED
15 THE STANDARD OF CARE IN DOING THESE SURGERIES. A REPUTABLE
16 RETINA SURGEON WHO WORKS IN THIS COMMUNITY WAS SHOCKED TO SEE THAT
17 DR. SADEGHI HAD USED THE TECHNIQUE HE USED ON PLAINTIFF AND WITHOUT
18 HESITATING, TOLD PLAINTIFF SO. THEN ONCE DR. JUMPER HAD OPENED MY
19 RIGHT EYE TO REATTACH THE RETINA WAS AGAIN SHOCKED TO FIND
20 THE CAPSULAR RING AND OTHER DETRITUS HE HAD TO REMOVE. HE
21 AGAIN DID NOT HESITATE TO TELL PLAINTIFF OF WHAT HE HAD FOUND
22 AND THAT HE WAS SHOCKED TO FIND IT LEFT INSIDE MY EYE.
23 36. DR SADEGHIS' NOT IMMEDIATELY APPRISING PLAINTIFF OF HIS ERRORS AND
24 NO PRE-SURGERY INFORMED CONSENT AS WELL RENEGE THIS DEFENDANTS'
25 CLAIM HE TREATED PLAINTIFF APPROPRIATELY. THE FACT DR SADEGHI HID HIS
26 ACTIONS IN THE LEAVING DETRITUS AND THE CAPSULAR RING, THE BURNING OF A HOLE IN
27 THE PLAINTIFFS EYE WITH THE LASER AGAIN ARE DEMONSTRATIVE OF AN ATMOSPHERE
28 OF DELIBERATE INDIFFERENCE, INCOMPETENCE, AND NEGLIGENCE.

52.
1  PURSUANT TO THE DOM 33030.5.2.3.1 THE NEGLIGENCE, RECKLESSNESS AND
2  RESULTS HAVE BEEN DISABLING AND MENTALLY IMPAIRING (SEE PHYS & MENT. IMPAIR-
3  MENT IN DOM 31010.3) EMOTIONALLY, THE INABILITY TO SEE, WALK OR PERFORM
4  MAJOR TASKS HAVE BEEN SUBSTANTIALLY LIMITED DESPITE THE DIFFICULT EXPERIENCE
5  REASONABLE ACCOMODATIONS HAVE BEEN PROVIDED EG. BIFOCALS BUT MOST
6  INEFFECTIVELY FAIL AS A REMEDY.

38.
7  REQUEST WAS DENIED BY THE PRIMARY CARE PROVIDER TO SEND PATIENT
8  TO A SPECIALIST. I.E MARKE V. WOENESKI, 266 F. 3d (6TH CIR. 2001)
9  CERT. DENIED. 535 U.S. 1056 (2002).

39.
10 (MEDICAL RECORDS PAGES 88-89) HERE DATED 5/03/06 DICTATES DIFFICULTY TO
11 BE EXTREME. HAVING 40% OF THE CIRCUMFERENCE OF THE LENS GONE IN-
12 DICATIVE TO PROCEDURES PERFORMED THERE IS MENTION OF A PIECE OF
13 CORTEX FALLING DOWN INTO THE VITREOUS. DESCRIPTIVE OF SUB-STANDARD
14 PERFORMANCES SPECIFIED IN (DOM-33030.6.1)

40.
15 (MEDICAL RECORDS-PAGES 272-73) HERE DATED JUNE 12, 2007 IDENTIFIES THE SUR-
16 GERY TO HAVE BEEN PERFORMED ON 9 AUG 06 AND DURING THE 31 AUG 06 POST
17 OPERATIVE FOLLOW UP VISIT THE INJURY TO THE EYE I.e. A HEMORRHAGE
18 ON THE LATTER SIDE OF THE RIGHT EYE. HOWEVER THE FOCUS IS DIRECTED
19 TO THAT WHICH SURGERY WAS ENACTED. THE LEFT EYE WAS NOT SERIOUS
20 ENOUGH TO DETACH OR CAUSE REPEATED PROCEDURES. THE EXPECTATION
21 WAS CORRECT VISION IN LIEU OF OPACITY REMOVAL. THE INITIALLY
22 AND COUNTLESS PROCEDURES ARE NOT ACCURATELY PERFORMED, DID NOT
23 PRODUCE THE EFFECTS IN THE QUALITY OF WORK AS EXPECTED
24 (SEE EMPLOYEE PERFORMANCE STANDARDS DOM 33030.6)

25 41. THIS BEGAN AS AN EFFORT TO INFORMALLY SOLVE A DILEMMA IN-
26 VOLVING MEDICAL PERSONNEL UNDER THE JURISDICTION OF THE
27 DEPARTMENT (SEE DOM 54100.11) THE PROBLEM IS NECESS-
28 ITATING CLARITY WHERE AS IN THE MEMORANDUM DATED JUNE

1  12.2007 (MEDICAL RECORDS PAGES 272-73) HERE THE ISSUE IS NOT SPECIAL
2  (PLEASE ISSUE MEDICAL RECORDS-PG 252) THE MATTER IS: CORRECTIVE OPTICAL
3  SURGERY WAS PERFORMED. PRIOR TO THE SURGERIES THIS INMATE WAS
4  MERELY NEARSIGHTED. HOWEVER THE AFFECTATIONS ARE SEVERELY NECESS-
5  ITATING CORRECTION. PRESENTLY THE DEGREE HAS AMMOUNTED TO A
6  BLINDING STATE. CONTRARY TO THE ISSUE STATED WITHIN (MEDICAL
7  RECORDS PAGE 272), THE IMPRESSION WAS NOT TO SEE, BUT THE ABILITY TO
8  HAVE THE OPACITY OF THE LENS OR CAPSULE OF THE EYE, WHICH
9  WAS CAUSING PARTIAL BLINDNESS, REMOVED.
10  "2" IN ACCORDANCE WITH GREENE V. DALEY, 414 F. 3d. AT 645, 654
11  (7TH CIR 2005) THE TREATMENT WAS SO BLATANTLY INAPPROPRIATE
12  AS TO EVIDENCE (MEDICAL RECORDS PAGES 54, 80-83) HEALTH CARE SERVICE
13  PROVIDER REQUEST FOR SPECIALTY CARE SERVICES DENOTES WITHIN THE
14  FINDINGS AND DIAGNOSIS, THAT THE LENS WAS DISLOCATED AND DIPLORIA
15  i.e. GHOSTING OF IMAGES, APPEARING TO BE DOUBLE VISION. THIS EXHIBIT
16  FURTHER INDICATES THE REQUEST TO BE A SECOND OPINION BY UCSF. THE
17  CONDITION OF THE TREATMENT SERIOUSLY AGGRAVATED THE STATE
18  TO IMPAIRMENT.
19  "3" THE CONCERN, SEVERITY OF THE MEDICAL TREATMENT IS SO GROSSLY IN-
20  COMPETENT, INADEQUATE IN ADDITION AS EXCESSIVE AS TO A SHOCK
21  CONSCIENCELY CONSTITUTING DELIBERATE INDIFFERENCE. THIS
22  IS SUPPORTED BY HUGHES V. JOLIET CORRECTIONAL CENTER 931 F. 2d
23  425, 428 (7TH CIR. 1991) APPEALING THIS ISSUE AND ITS COMPLEXITY THROUGH
24  THE PROCEDURES ESTABLISHED BY CSP (SQ) IT IS VIEWED THAT TREATMENT
25  IS NOT IN CONSIDERATION WITH PATIENT CARE BUT IN THE ASPECT OF
26  STAFF UNDER THE JURISDICTION OF CSP (SQ) ARE TREATING
27  THE INMATE LIKE A NUISANCE. THIS IS IN AS WELL SUPPORTED
28  BY I.D. 931 F. 2d 425, 428 (7TH CIR 1991)

CASH V. SADEGHI   CV0762525F(PR)      PAGE 14 OF 14

1  I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING
2  IS TRUE AND CORRECT AND THAT THIS DECLARATION WAS
3  EXECUTED ON ___8/17/08_____

5          X _Randall Scott Cash_____

INTENTIONAL TORT / MEDICAL NEGLIGENCE MALPRACTICE
CV08 1189

6.a SUPPORTING FACTS (ATTACHMENTS PAGE 2)

iris and close the wound. This surgery was done at Novato Community Hospital. (see EXHIBIT D)

4. On September 7, 2006 during a follow up visit for the August 31 surgery I told Dr. Sadeghi I could not see well in my right eye now at all and there seemed to be something in my eye. Dr. Sadeghi looked into my right eye and told me that something he had dropped inside my eye during the first surgery on May 3 had risen up inside my eye and was lodged in my line of sight. Dr. Sadeghi then stated "I thought you would not ever notice it." He looked into my right eye again and observed the retina was as well detached.

5. On September 8, 2006 I was taken to the office of Dr. Michael Jumper in San Francisco for presurgery evaluation. Dr. Jumper upon examining my Right Eye stated he could not believe Dr. Sadeghi had used the technique he'd used to do the cataract removal / lens implant surgery

6. Dr. Jumper stated "Nobody does it this way." and went on to say he was shocked to see the debris/material that Dr. Sadeghi had dropped into my Right Eye and left inside my eye after the surgery

On September 11, 2006 Dr. Jumper re-attached the retina and removed the debris/material Dr. Sadeghi left inside my eye (see EXHIBIT D)

7. I was seen post-op by Dr. Jumper's colleagues at West Coast Retina Center in Greenbrae monthly for 3 visits. The staff there told me my retina was re-attached and healing.

8. Since December of 2006 I was seen by Dr. Sadeghi sporadically scheduled - sometimes every 2 weeks or a month in between. After my requesting Dr. Sadeghi to do something about the double vision in Right Eye and blurred vision in both eyes he just said

COMPLAINT

III. Statement Of Claim (Attachment Page 3)

"It's doing fine." I filed a 1824 ADA medical appeal on March 8, 2007 to begin my administrative appeal and subsequently filed a Government Claims Board complaint on April 5, 2007. (EXHIBIT B, C D + E)

10. Even after receiving prescription glasses on May 4, 2007 my vision is still the same with or without glasses ~ blurred and double vision in Right Eye, blurred vision in Left Eye. (EXHIBIT G)

11. The last visit with Dr. Sadeghi was on 6/07/07. I again asked Dr. Sadeghi about the hole in my right iris he had burned with the laser into my eye and would it close up on its own. Dr. Sadeghi stated "No."

12. I asked Dr. Sadeghi would he do anything to fix the hole in my right iris he had burned with the laser into my eye. Dr. Sadeghi stated "No."

13. I asked Dr. Sadeghi would the double vision, blurriness and blockage of my center of vision caused by the hole in my right iris he had burned with the laser into my eye go away on its own. Dr. Sadeghi stated "No, but you'll get used to it."

14. I asked Dr. Sadeghi would he treat the double vision, blurriness and blockage of my center of vision caused by the hole in my right iris he had burned with the laser into my eye. Dr. Sadeghi stated "No, in my opinion it's fine."

15. Finally, I asked Dr. Sadeghi, if he would not fix the hole in my right iris he had burned with the laser into my eye, and he would not treat the double vision, blurriness and blockage of my center of vision caused by the hole in my right iris he had burned with the laser into my eye; would he at least refer me to a specialist who could

COMPLAINT

III. Statement Of Claim   (Attachment Page 4)

3. fix it, if in fact it can be fixed. Dr. Sadeghi stated, "No, in my opinion your eyes are fine and a second opinion is not medically necessary.

16. Dr. Sadeghi now states I should have expected this kind of damage as it is common to have this sort of iris damage and pupil irregularity with this type of surgery.

17. Dr. Sadeghi did not relay to me prior to the surgery any fore-knowledge of post-surgery damage or irregularity of any sort. Nor did Dr. Sadeghi relay to me prior to the surgery any danger of the lens implant tearing thru my iris by merely getting bumped in the eye as happened with my Left Eye.

18. I am left with blurred, dialated, double and partially blocked vision in my Right Eye, and blurred vision in my Left Eye. More so as time passes. I still have blood and debris in my Left Eye more than a year after the August 31, 2006 surgery. I still have some debris in my Right Eye from the May 03, 2006 surgery.

19. My pupils are irregular in shape and fixed in a dialated position, I can not tolerate any bright light as my pupils no longer constrict. This causes pain in both eyes and severe head-aches if I am exposed to sunlight even with tinted lenses.

20. The outcome of my exhausted administrative appeal is a partially granted result — giving me the right to a second opinion at my cost. I can not pay for the service as I am indigent and have no family or outside interested parties who can pay for the service. The injury to my left eye - 8/30/06 had nothing to do with the preoperatory damage to right eye from 5/03/06 surgery.

COMPLAINT                                    (EXHIBIT A)

## INITIAL EXAMINATION

056072-00
09/08/06    09:27AM
Jahangir   Sadeghi
Lic #                    MD
                    MJ SF

Pt Came with (full name): _____

Wears: _____    Relationship: _____

RE:_____ add:_____    *VA(w or w/o): PH(w or w/o); J(w or w/o): *IOP:

LE:_____ add:_____    CF _____; _____; _____; 12

20/40 _____; _____; _____; 11

Dilated with Phenylephrine, Homatropine, Tropicacyl at _____;  BP: _____

| NR! | ABNRL |
|---|---|
| *Fields | |
| *Motil | |
| *Conj | |
| *Ext | |
| *Iris | |
| *Cornea | |
| *AC | |
| *Lens | |
| *Disc | |
| *N/Psych | |
| IO | |
| Fundus lens | |
| SD | |

47 WM San Quentin prisoner

s/p CF/IOL { 4/06 / 5/06 → IOL reposits 7/06.

Pt involved in fight w/ Iran ago ε blunt trauma to eye OD

started noting floaters shadows, curtains

Note: patient has retained capsular tensioning ring OD per ophtho notes.

unable to see tension ring

**Tests**
Fundus Photos
Unilateral FA
Bilateral FA
ICG
U/S

**DX/Rx**

Hx 4 myopia
s/p c/ IOL OU
retained IOFB OD by report
    not seen on exam today
macula off pseudophakic RO OD
plan 20g VTX ε possible IOFB removal / endolaser / FGX
perform laser retinopexy OS at the same time

? vit opacities
? old inflamm

Other(s) present _____ Lengthy discussion _____
____ Explained disease (model eye), natural course, prognosis
____ Gave education booklet
____ Discussed Rx alternatives, prognosis, risks, complications, recurrence
____ Reviewed today's Photos/Ultrasound with patient
____ Patient understood, decided to accept risks
____ Notified Ref MD/Decision to Treat

MD SIGNATURE: _____

## POST-OP VISIT

Date of Procedure: _9-11-06_
Laser LE 9-11-06

Eye: (RE) LE

Type of Procedure: Laser    Pneumatic Scleral Buckle Vitrectomy
Retinopexy, IV inj for endoph.    Other Tx, Mem/L

Dash+++, Randall
056072-00
09/13/06   08:37AM
Jahangir Sadeghi    MD
Lic #    RM LP

Endo

VA: RE 2/200 PH NP, NOJ    No infection

LE 20/70 PH 20/40 4

Dilated at: 8:25    ACTOL

IOP: RE 16 LE 18

BP: 120/70

Exam: Attached

3

Plan: Ret. 1 week

Meds:  Polytrim    4
       Pred Forte    4
       Betoptic    2
       Scopolamine    2
       Neptazane
       Alphagan
       Trusopt
       No change
       D/C drops

H. RICHARD MCDONALD, MD
ROBERT N. JOHNSON, MD
EVERETT AI, MD
J. MICHAEL JUMPER, MD
ARTHUR D. FU, MD

185 Berry Street, Lobby 5, Suite 130, San Francisco, CA 94107-1739, (415) 972-4600 • Fax (415) 975-0999
400 - 29th Street, Suite 508, Oakland, CA 94609, (510) 268-8277
101 South San Mateo Drive, Suite 306, San Mateo, CA 94401, (650) 342-7157
1981 North Broadway, Suite 435, Walnut Creek, CA 94596, (925) 295-1727
5 Bon Air Road, Suite 127, Larkspur, CA 94989, (415) 927-6600
1800 Sullivan Avenue, Suite 507, Daly City, CA 94015, (650) 994-9030

Send_____

04/03/2008 17:00 4158750065 WEST COAST RETINA MD PAGE 04/04

# WEST COAST RETINA MEDICAL GROUP, INC.

## POST-OP VISIT

Cash+++,Randall
056072-00
09/25/06  09:00AM
Jahangir Sadeghi        MD
Lic #        AF LF

**Date of Procedure:** 9-11-06

**Eye:** RE   (LE)

**Type of Procedure:** Laser   Pneumatic  Scleral Buckle  (Vitrectomy)  afx, memb
Retinopexy, IV inj for endophth      Other  endo

**VA:** RE ~~dat~~  PH ___  J ___

LE 20/100  PH 20/70  J 18

**Dilated at:** 8:45

**IOP:** RE 04   LE 12

**BP:** 136/80

**Exam:**

**Plan:**

**Meds:**  Polytrim ____
Pred Forte ____
Betoptic ____
Scopolamine ____
Neptazane ____
Alphagan ____
Trusopt ____
No change ____
D/C drops ____

H. RICHARD MCDONALD, MD
ROBERT N. JOHNSON, MD
EVERETT AI, MD
J. MICHAEL JUMPER, MD
ARTHUR D. FU, MD

185 Berry Street, Lobby 5, Suite 130, San Francisco, CA 94107-1739, (415) 972-4600 • Fax (415) 975-0999
400 - 29th Street, Suite 508, Oakland, CA 94609, (510) 268-8277
101 South San Mateo Drive, Suite 306, San Mateo, CA 94401, (650) 342-7137
1981 North Broadway, Suite 435, Walnut Creek, CA 94596, (925) 295-1727
5 Bon Air Road, Suite 127, Larkspur, CA 94939, (415) 927-6600
1800 Sullivan Avenue, Suite 507, Daly City, CA 94015, (650) 994-9030

OCT 03 2006

Send_____

List Chronic Diseases:

(1) HTN | Sciatica

**HISTORY:** (Attach a progress note form, if needed, to provide a more complete history.)
Current medications (*if no pharmacy profile attached*) and adherence since last visit: _____
Tramadol - 100 mg BID
TMP-HCTZ 37/25

_____ RN SIGNATURE

**Complaints/Problems:** (Discuss in space provided)
CV / Hypertension: Chest Pain:☐Yes ☒No   SOB:☐Yes ☒No   Diabetes Mellitus: # of hypoglycemic reactions since last visit: _____
Asthma: # attacks since last visit?   Seizure Disorder: # seizures since last visit: _____
  # short acting beta agonist canisters in last month: _____   Discussion: _____
  # visits to ETA for asthma since last visit: _____
  # times awakening with asthma symptoms per week: _____
Additional History: Referred to Neuro for Back Surgery
s/p Eye Surgery "Sutures Still in Place" - since 9/11/06

CCP compliance (*e.g. diet, exercise, medications*):

**EXAM:** HEENT/Neck:         Rectal:
Heart:                        Neurological: MRI ⊕ DJD/Disk Protrusion
Lungs: ① Eye c̄              Other (specify): L 1-2-3-4-[5] 1
Abdomen: Sutures
Extremities/Pulses:

Comments on BP or Glucose Monitoring:
152/88, 153/84, 128/72

| ASSESSMENT: Diagnoses | Degree of Control | | | | Clinical Status | | | |
|---|---|---|---|---|---|---|---|---|
| | G | F | P | NA | I | S | W | NA |
| 1. Sciatica | ☐ | ☒ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| 2. HTN - High 2/3 readings re ↓i - ↑ MO | ☐ | ☒ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| 3. | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**PLAN:**
Medications: ↑ Tramadol to 250 QD   Add Flexeril 10 QD
Diagnostics:
Labs:
Monitoring: ☒ BP / Frequency: ___ X day / week /(month)   ☐ Glucose / Frequency: ___ X day / week / month   ☐ Peak flow   ☐ Other:
Education provided: ☒ Nutrition   ☒ Exercise   ☒ Smoking   ☐ Test Results   ☐ Medication Management
  ☐ Other (specify):
Referral: ☒ Specialist (indicate type): Ophthal   ☐ Other Chronic Care Program
Interval to next visit: ☒ 90 Days   ☒ 30 Days   ☐ Other ___ Days   ☐ Discharge from CCP (specify):

PROVIDER SIGNATURE (W)   DATE 12/1/06
INSTITUTION 52

CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH

Cash, Randall

# 53400

**CHRONIC CARE
FOLLOW-UP VISIT**

(2/03)          DEPARTMENT OF CORRECTIONS

829756

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

# HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

## PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

REQUEST FOR: MEDICAL ☑  MENTAL HEALTH ☐  DENTAL ☐  MEDICATION REFILL ☐

| NAME | CDC NUMBER | HOUSING |
|---|---|---|
| RANDALL S. CASH | H 53400 | 1B40L |

| PATIENT SIGNATURE | DATE |
|---|---|
| Randall S. Cash | 11/29/06 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) NEED TO SEE EYE DOCTOR ASAP. I saw Dr. Sandigan in the Specialty Clinic on 10-12-06 for Retina Surgery follow-up. He wanted to see me again on 10-26-06 to remove stitches from my left cornea that have been in my eye since surgery on 9-7-06. Was not ducated or seen on 10-26 or since then. Stitches still in my eye. There is no follow and vision is more blurred daily.

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

## PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

## PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

| Date / Time Received: 12/1/06 | Received by: Rollo CMA |
|---|---|
| Date / Time Reviewed by RN: 12/4/06 @ 0714 | Reviewed by: mmClaughlin RN |

S:  Pain Scale: 1 2 ③ 4 5 6 7 8 9 10

O:  T:  P:  R:  BP:  WEIGHT:

note sent to rrm via envelope stating he will get a ducat when his appt becomes available. mmClaughlin RN

A:

P:

☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐ |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION | |

| PRINT / STAMP NAME | SIGNATURE / TITLE | DATE/TIME COMPLETED |
|---|---|---|
| | | |

CDC 7362 (Rev. 03/04)  Original - Unit Health Record  Yellow - Inmate (if copayment applicable)  Pink - Inmate Trust Office (if copayment applicable)  Gold - Inmate

| DATE | TIME | |
|------|------|---|
| 4/27/06 | | Badge/carson sick call |
| | | —see pre-op H&P |
| 5-3-06 | 0800 | Bridge/VB lis: Chemo Cear Cl — Inmate not seen. Went to Outside Hospital for Surgery N 5-3-06 _____ Nielson Chileos |
| MAY 04 2006 | | EYE CLINIC RTC 1WK — Shirloff MD? |
| MAY 1 2006 | | EYE CLINIC RTC 1WK — Shirloff MD?? |
| 5-17-06 | 0830 | Badge MD Clic: F/U _____ Nielson Chileos |

Here for Fu S/P Rt intraocular lens implt.
5/3/06. Pt states doing well. has been followed
by Dr Sadechin. Has recived all eye gtts
as orderd & eye pain. vision significally improved
in Rt eye p trabmt. Pt should be seen in thr
true week by opthamlgy.
BP = 136/79  RR = 84  P = 66  T= 97.8  wt = 199
PERRLA  sound smile  lady and cornel clear
& erythm & injctn
A/P 1) S/P contact sug Rt eye doing well on eyedps
2) HTN — controlled + see up notes _____ Nielson

| INSTITUTION | PHYSICIAN | ROOM NO. | CDC NUMBER, NAME LAST, FIRST, MD |
|-------------|-----------|----------|----------------------------------|
| JJ | David | 13-140 | Cash, Randall  H53400 |

**PHYSICIAN'S PROGRESS NOTES**

CDC 7230 (7/90)
STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS

| DATE | TIME | PROB # | |
|------|------|--------|---|
| 12/29/2005 | | | **S:** (history includes details pertinent to the patient's medical complaint) |
| | | | *EB-MB LINO - C/O VISION △ X 5 mos - 3mos worsening* |
| | | | *Seen by eye clinic & received new glasses 9/04.* |
| | | | *Opht. did not report macular or retinal problems per* |
| | | | *chart, but pt states he was instructed he had retinal* |
| | | | *damage + to report vision △s. Cloudy vision Ⓡ eye.* |
| | | | **O:** (physical assessment) **T:** **P:** **R:** **B/P:** 131/82 **Wt:** 215 |
| | | | *Ⓒ min labs ī chart   thick glasses* |
| | | | *Fundoscopic exm - only red reflex visually ⊖ bilateral* |
| | | | *Peripheral vision - poor both eyes* |
| | | | *Unable to identify object ī Ⓡ eye - ī glasses on* |
| | | | *Ⓒ* |
| | | | **A:** (medical/nsg diagnosis. MTAs may not independently analyze or interpret data.) |
| | | | *Vision △'s* |
| | | | **P:** (MTA – referral to a higher licensure for prioritization and evaluation.) (RN -action to be taken by the RN so that the patient receives appropriate medical care.) |
| | | | *Refer to Ophthalmologist - urgent* |
| | | | **E:** (education provided)   *Dr. J. McKnett* |

| INSTITUTION  CSP, San Quentin | ROOM / WING   EY1 00000000006S |
|---|---|
| OUTPATIENT INTERDISCIPLINARY PROGRESS NOTES | CDC NUMBER, NAME, (LAST, FIRST, MI) H53400 CASH, RANDALL 12/23/1959 |
| CDC 7254 (8/89) STATE OF CALIFORNIA    DEPARTMENT OF CORRECTIONS | |

| DATE | TIME | |
|------|------|---|
| 2-23 05 | 15 | (S) "I have a blown retina, I cant see anything but a grey cloud" "have had it for 2 week") |
| | | (O) Eye appears normal |
| | | (A) TC to TTA MD, 1/m discussed |
| | | (P) Will send to TTA 12-24-05 AM    C— |

INSTITUTION: SQ

PHYSICIAN:

ROOM NO.:

CDC NUMBER, NAME (LAST, FIRST, MD):
H 53400
Cash R

**PHYSICIAN'S PROGRESS NOTES**

CDC 7230 (7/90)
STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

00027

CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION

HEALTH CARE SERVICES
PROVIDER REQUEST FOR SPECIALTY CARE SERVICES

| PATIENT NAME (LAST, FIRST, MI) Cash, Randall | CDCR NUMBER H53400 | INSTITUTION SQ |
|---|---|---|
| DATE OF BIRTH 12-23-59 | EPRD DATE life | GENDER M | HOUSING LOCATION A |

REQUESTED SERVICE:
- ☐ Cardio
- ☐ Derma
- ☐ ENT Proc
- ☐ Lump & Bump
- ☑ Opthal
- ☐ Pulmonary
- ☐ Gen Surg Consult
- ☐ Neuro Surg
- ☐ Other Radiology
- ☐ Urology Consult
- ☐ Cardiovasc Surg
- ☐ Echo
- ☐ GI Cons
- ☐ MRI
- ☐ Other Vasc
- ☐ PT
- ☐ Gen Surg Proc
- ☐ Ortho Consult
- ☐ Podiatry Surg
- ☐ Other
- ☐ CID
- ☐ EMG/NCV
- ☐ GI Proc
- ☐ Oncology
- ☐ Plastic Surg
- ☐ Ultrasound
- ☐ CT Scan
- ☐ ENT Consult
- ☐ Liver Biopsy
- ☐ Optometry
- ☐ Podiatry Surg
- ☐ Telemed
- ☐ Neuro Consult
- ☐ Ortho Proc
- ☐ Urology Proc
- ☐ Other

PROPOSED SPECIALTY PROVIDER:

UCSF –

(not with Sadeghi)

CLINICAL PRIORITY DESIGNATION AND TIMEFRAME
- ☐ 1 (7 Days)
- ☑ 2 (30 Days)
- ☐ 3 (90 Days)
- ☐ 4 (Other) Indicate timeframe: _____
(Justify) PLO following case

PRIMARY CARE PROVIDER NAME/DATE (PRINT or STAMP)
Danny Wu
Wu    10-29-7

Pertinent clinical information and reason for consultation:
Include pertinent past treatments and responses, physical exam, laboratory and other imaging results, and relevant medications, etc.

requests second opinion, dissatisfied with ophthalmologist who comes here
s/p surgeries cataracts ou, retina detachment od last year

| Specialty Care Coordinator Name/Signature/Date | ☐ Authorized/Date: _____ Data Forwarded to Specialty Care OT: _____ |
|---|---|
| | ☑ Referred to Physician Manager or Care Management Committee  Date: _____ |
| Physician Manager Name/Signature/Date (Print or Stamp) | ☐ Approved and Referred to Specialty Care Coordinator /Date _____ |
| | ☐ Referred to Care Management Committee/Date _____ |
| Care Management Committee Chair | ☐ Approved/Date: _____  ☐ Denied/Date: _____  ☐ PCP Notified _____ |
| | ☐ Deferred Until: _____  By: _____ |

TO BE COMPLETED BY CONSULTANT: Please send final report to Specialty Care Coordinator via fax at (415) 454-5097.
For questions, please contact the Specialty Care Coordinator at (415) 454-1460 Ext. 5589.

Findings and Diagnosis:
47 yo ♂ c h/o childhood blindness, dislocated lenses, s/p phaco/AC IOL ou
in 2006 & RD in 2006. Now with diplopia & "ghost images," appear to
be monocular (Reye).

Recommendations to Primary Care Provider:
Cause of monocular diplopia unclear. Inferior iridectomy
unlikely to make pos symptomatic. Well placed lens & ul retina.
— would refer to optometry for refraction — if ⊖ improvement in
diplopia, consider
referral to strabismus
pediatric ophthalmologist
for eval of exophoria.

Instructions Provided to Patient:
See above

| Print Name of Consultant / Signature/Date  Stewart    11/28/07 | Telephone Number: (415) 353-2597 | Facsimile Number: |
|---|---|---|

| Print Name of TTA RN or Designee / Signature / Date / Time    RN    4/28/52 1905 | Print Name of Specialty Care Onsite RN / Signature / Date / Time |
|---|---|

DISTRIBUTION:
Original - File in UHR; Yellow - Consultant; Pink - Specialty Care Coordinator; Golden Rod -- Specialty Care Scheduler
CDCR 7243 (Rev. 4/11/07 San Quentin Pilot)

STATE OF CALIFORNIA                    HEALTH CARE SERVICES                    DEPARTMENT OF CORRECTIONS
                                  PHYSICIAN REQUEST FOR SERVICES
                        (To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME CASH | CDC NUMBER H53400 | INSTITUTION SOSP |
|---|---|---|

| DATE OF BIRTH 12/23/59 | EPRD DATE | GENDER |
|---|---|---|

| PRINCIPLE DIAGNOSIS | ICD - 9 CODE | CPT CODE(S) |
|---|---|---|

| REQUESTED SERVICE(S) OPTOMETRY OPTHALMOLOGY | # OF DAYS RECOMMENDED |
|---|---|

*Please circle all that apply:* Diagnostic Procedure/Consultation    Outpatient/Inpatient    Initial/Follow-up

Requested Treatment/Service is **EMERGENT**    URGENT    ROUTINE

*For the purpose of retrospective review, if emergent or urgent, please justify:* Pupils not accomodating normally

Proposed Provider: Drs.                    Anticipated Length of Stay:

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity *(briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):* Hx LENS IMPLANTS, CATARACT SURGERY, Detached Retina

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME PO NP LEE | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE 1/4/ |
|---|---|---|

| REQUESTING PHYSICIAN SIGNATURE | DATE | Utilization management tracking #: |
|---|---|---|

DATE OF CONSULTATION: 2/1/ Eye Exam done today by Dr. Sudegha

FINDINGS: [handwritten notes, largely illegible]

RECOMMENDATIONS: Cont Acular 4ct    Flu 2 weeks if not better
                 Pred Forte qid         d= IVF4

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE Sudegha | DATE 2.1.07 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | CASH |
| PCP SIGNATURE | DATE | H53400 |

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN    - TO UHR PENDING ORIGINAL
CANARY   - CONSULTANT
PINK     - UM
GOLD     - SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)        CDC 7243 (Rev. 11/02)

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA

EYE CLINIC

**Reason for Consultation**

**Signature of Referring Doctor**

Date

**Consultant's Report**

Had cat. surgery ou

Colneal AC normal ou.

iris normal, irregular pupil ou   AC IOL ou

normal disc vessels macula ou

Impression stable ou

FLU 6 months!

CC   R — 20/100
     L — 20/20

Iop 12
    10

**Signature of Consultant**   Sulfyhn

Date  JUN 0 7 2007

**Name of Patient**   Cath

Number   H 53406

Hospital

**CONSULTANT'S RECORD**

CDC 7243 (Rev. 9/77)

00043

DEPARTMENT OF CORRECTIONS                                                    STATE OF CALIFORNIA

## EYE CLINIC

Reason for Consultation

Signature of Referring Doctor                                              Date

Consultant's Report

Scratch os, red + epivol                                SC    v. A    2.1200
                                                                       2 o/10o

Corneal min. 1 on exposed suture or 1 g brought colneal
forceps from offic and removed suture               I of 100 G

normal discs vessels and maculd

F/u 2 months

Signature of Consultant    Schlephyll                          Date  4/5/07

Name of Patient     Cash, Randal                               Number  H53400

Hospital

DEPARTMENT OF CORRECTIONS                                    STATE OF CALIFORNIA

EYE CLINIC

**Reason for Consultation**

20/200
20/200

**Signature of Referring Doctor**                                    Date

**Consultant's Report**

My ~~eft~~ left eye ~~mothers~~ Acular q3oy
PXN-FL/eqd

One 10-0 nylon suture remainders exposed
I tried to remove but we do not have fine forceps
I will bring one from office to remove it next week
Ac iris nml ou, irregular pupil ou
retinal vessels, macula, disc nl

exposed suture
DC Acular prnt-Forte
Pru | week

V.A 20/200
SC 20/100

Iop 10 OU

**Signature of Consultant**    Salish W                    Date  3/29/07

**Name of Patient**    Cash,  Randal                  Number  H53406

**Hospital**

00045

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA

## EYE CLINIC

Reason for Consultation

| Signature of Referring Doctor | Date 3-15-07 |

Consultant's Report

Here to remove sutures

V. A 20/200
SC    20/200

Colneel(Aciiis) pupil surg.

Fiu 2weeks

pulled Two sutures, one still partial 1 y in

Fiu 2weeks

| Signature of Consultant  Sdteshn | Date 3/15/07 |
| Name of Patient  Cash | Number 4 53400 |

Hospital

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA

## EYE CLINIC

Reason for Consultation

Signature of Referring Doctor

Date

Consultant's Report

pred Forte qid ou
Acular qid ou

SC V.A 2o/15c
2.18c

Iop 12a

Cornea, A Chriiss nml vy.
IoL good position oy
Nml disc, vessels and macula
cut 3 stitches oi
Flu / Welsh
cont drops sughm
Jg.

Signature of Consultant __sulephin__    Date 3/8/07

Name of Patient  Cash    Number H 53400

Hospital

00047

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA

## EYE CLINIC

Reason for Consultation

2/15/07 eye exam done by Dr
Sadaghi eye drops
ordered. F/u 3 weeks

Signature of Referring Doctor                    Date

Consultant's Report

I work out it his eye drops vision same.

corned, AC, iris n.l
IuL good position v.n

Sc V A 20/20₀₀
2-1/00

Jup 15 oy

C/no.2 reticular disll
vessels are normal oy

-1·00 -1.25 × 15   2·140
-1·25 -2·25 × 60   2·/40·2

Prod - Forte / TJd × 1 week
Acular / bid × 1 week
qd × 1 week

Add + 2.25

F/u 3 weeks
will rc N-p6 th
give above correction

Signature of Consultant   Sadeghin        Date  2·15·07

Name of Patient   Cush               Number

Hospital

00048

DEPARTMENT OF CORRECTIONS                                          STATE OF CALIFORNIA

**EYE CLINIC**

Reason for Consultation

Signature of Referring Doctor                                      | Date

Consultant's Report

Run out of his eye drops few weeks ago

Corneas AC n-y          He can see better now                SC V-A  20/100

His nml  I-L good position cu                                              20/10D

Iol good position cu· stitches os not apposed                    Iop 16 ou

Fundus: Normal disc vessels, CMEcy

retinais attached                        -0.75 -1.75 +155  20/40

-1.25 -2.75 +45  20/80

Add +2.50

Give d have correction-

Acular qid

Pred Forte qid

F/u 2 weeks

Signature of Consultant       SGD[illegible]         Date  01 / 18 /07

Name of Patient  Cash, Randall              Number  H - 53400

Hospital

CONSULTANT'S RECORD

CDC 7243 (Rev. 9/77)

00049

DEPARTMENT OF CORRECTIONS                                                    STATE OF CALIFORNIA

## EYE CLINIC

Reason for Consultation

Signature of Referring Doctor                                              Date

Consultant's Report

13-21-06          1 week F/U        Acular qid ou                    v. A 20/100
                                    Pred-Forte 6 times ou                    20/400

Corneal normal ou, AC quiet now deposits on the LS on 70/       I-P 14 og
Retinal attached ou                                                      21 ØS

                              Ref  -0.5 -1.50x15, 20/70
                                   +0.75 -5.00x90 20/100

Removed 3 sutures left (s) emphasized against Trauma

Cont  Acular qid ou
      Pred-Forte 6 times ou
      Tobradex os tid x 4 days
      F/U 2 weeks

Signature of Consultant     SaLeshw                              Date

Name of Patient     Cash, R.                          Number  H 53400
Hospital

STATE OF CALIFORNIA                                                      DEPARTMENT OF CORRECTIONS

**HEALTH CARE SERVICES**
**PHYSICIAN REQUEST FOR SERVICES**
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

PATIENT NAME CASH, RANDALL    CDC NUMBER H53400    INSTITUTION 5?

DATE OF BIRTH 12-23-59    EPRD DATE Lifer    GENDER M

PRINCIPLE DIAGNOSIS Sutures in (L) Eye since 9/11    ICD-9 CODE    CPT CODE(S)

REQUESTED SERVICE(S) Ophthalmology    # OF DAYS RECOMMENDED

*Please circle all that apply:* Diagnostic Procedure/Consultation    Outpatient/Inpatient    Initial/Follow-up

Requested Treatment/Service is:    EMERGENT    (URGENT)    ROUTINE

*For the purpose of retrospective review, if emergent or urgent, please justify:* Has Had Sutures in Eye over 2 months

Proposed Provider: _____    Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity (*briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant*): No Sutures from (L) Eye Surgery 9/11/06  Need
removal ?

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

REQUESTING PHYSICIAN PRINTED NAME _____    APPROVED / AUTHORIZED / DENIED / DEFERRED BY _____ DATE 11-4-06

REQUESTING PHYSICIAN SIGNATURE _____    DATE 12-1-06    Utilization management tracking #:

DATE OF CONSULTATION 12-14-06    PRINTED NAME OF CONSULTANT

FINDINGS: Left eye hurts when blinks 9 Sep hour glass shape coy    Sc V.A 20/40.
Covered prior day sutures or papillia conjuctdr    2x/100
3 cells ACon 1+ Dt Kp deposition The Tab on 70s enth post-cap sub cap 80s    Sup 74
CHE on Nakal dsy perfect ou retina attached  ref did not improve vision    15

RECOMMENDATIONS: 1- CHE OD due to uveitis OD 70s    Fll one week
Acular gtd oy
Pred Forte q2h while awake

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

CONSULTANT SIGNATURE _____    DATE 12-14-06    CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH

ETA RN SIGNATURE _____    DATE    CASH, RANDALL
H53400
PCP SIGNATURE _____    DATE    12-23-59

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN  - TO UHR PENDING ORIGINAL
CANARY - CONSULTANT
PINK   - UM
GOLD   - SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)    CDC 7243 (Rev. 11/02)

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## HEALTH CARE SERVIC.
## PHYSICIAN REQUEST FOR SERVICES
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME Cash Randall | CDC NUMBER H53400 | INSTITUTION SQ |
|---|---|---|

| DATE OF BIRTH 12-23-59 | EPRD DATE | | GENDER |
|---|---|---|---|

| PRINCIPLE DIAGNOSIS Retinal detachment | ICD-9 CODE | CPT CODE(S) |
|---|---|---|

| REQUESTED SERVICE(S) Retinal Surgery | | # OF DAYS RECOMMENDED |
|---|---|---|

*Please circle all that apply.* Diagnostic Procedure/Consultation     Outpatient/Inpatient     Initial/Follow-up

Requested Treatment/Service is: (EMERGENT)     URGENT     ROUTINE   tomorrow

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider: Dr. Aie or Mc Donell     Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity *(briefly describe the clinical situation: the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):* Had cataract surgery dislocated cataract both eye Had at capsule ring one of the times of surgery, had due to very poor vision function in the vitrous. Had trauma 2 weeks ago, his wound opened + was prolapse left eye lost vision, replaced. capsular ring ___ could ___

Estimated time for service delivery, recovery, rehabilitation and follow-up: at the time of surgery of

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME Schezhi | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE |
|---|---|---|
| REQUESTING PHYSICIAN SIGNATURE Schezhi | DATE 9-7-06 | Utilization management tracking #: |

| DATE OF CONSULTATION 9/8/06 | PRINTED NAME OF CONSULTANT |
|---|---|

FINDINGS: ① Retinal detachment right eye
② Retained intraocular foreign body right eye
③ Lattice degeneration at high risk of retinal detachment left eye

RECOMMENDATIONS: Rt - Plan surgical repair
Vitrectomy, removal of IOFB and fluid gas exchange
left - laser retinopexy

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE Juniper | DATE 9/8/06 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE W. Roberts RN | DATE 9/8/06 | CASH, RANDALL |
| PCP SIGNATURE | DATE | H53400 |
| | | 12/23/59 |

Attach Progress Note page for additional information.
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN - TO UHR PENDING ORIGINAL
CANARY - CONSULTANT
PINK - UM
GOLD - SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)     CDC 7243 (Rev. 11/02)

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA

## EYE CLINIC

**Reason for Consultation**

**Signature of Referring Doctor**                    Date 8/31/06

**Consultant's Report**

8/31/06                                    Acular qid os
3 weeks post cat os        pred-Forti qid os        SC  V.A 20/25⁻²os
on sees a bubb when moves the eye.                  SC    20/30  od
3 days ago had trauma( Horse play)                          Iop 14 od
there is echymosis la Herd Conths dried on                        21 os
iris is prolapsed in the wound
AC seeps quiet, Id good positioncy
Retina attached, disc r vessel(s) mecula dr nv l

cont  Acular qid os
      pred-Fort qd os
start  Ciloxn qid os
      Take him to or to reposition iris

**Signature of Consultant**    Sdeeghn          Date 8/31/06

**Name of Patient**   Josh. Randll             Number A53400

**Hospital**

CONSULTANT'S RECORD

00056

DEPARTMENT OF CORRECTIONS
STATE OF CALIFORNIA

## EYE CLINIC

Reason for Consultation

Signature of Referring Doctor                                    Date 8/17/06

Consultant's Report
8/17/06

1 week S/P phaco OS

No pain or discomfort

Pred-Forte qid
Acular qid
Ciloxan qid
Atropine 1% Tid   /OS

VASC 20/100
Iop 15 OD
20 OS

Cornea/Acisis normal, pupil round. Iol good position
Normal disc vessels and macula

Stable

DC Ciloxan
Pred-Forte qid OS
Acular qid OS
Atropine qd OS
F/u 1 week

Signature of Consultant    Schlesinger         Date 8/17/06

Name of Patient    Cash, Randall               Number    H53400

Hospital

CONSULTANT'S RECORD

00058

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA

## EYE CLINIC

Reason for Consultation

Signature of Referring Doctor

Date 9/7/06

Consultant's Report

9/7/06   3 days that s can not see good with on

Acular qid os
pred-forte qid os

on V.A C.F 6F
os 20/4.

Corned) Acritis nonl, Iol good positioning
Tobaco dust in th vitreous in. Tepnl retinal detached cy
Macula off.  os Nonl disc, vessels macula.

$I_{op}$ 14
12

Impression: Rd os
Plan  Ref. fo Retinal surgeon fidday

cont Acular qid os
pred-forte qid os

Signature of Consultant   Soderhill

Date 9/7/06

Name of Patient   Cooh Randall Scott

Number   A753486

Hospital

CONSULTANTS RECORD

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**HEALTH CARE SERVICES**
**PHYSICIAN REQUEST FOR SERVICES**
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME CASH RANDALL | CDC NUMBER H5 3400 | INSTITUTION SQ |
|---|---|---|

| DATE OF BIRTH 12/23/59 | EPRD DATE | | GENDER | |
|---|---|---|---|---|

PRINCIPLE DIAGNOSIS   Cateract C/R Sup (R) eye — ICD - 9 CODE 102    CPT CODE(S)

REQUESTED SERVICE(S)   Ophthal.    # OF DAYS RECOMMENDED

*Please circle all that apply:* Diagnostic Procedure/Consultation    Outpatient/Inpatient    Initial/Follow-up

Requested Treatment/Service is:    **EMERGENT    URGENT    ROUTINE**

*For the purpose of retrospective review, if emergent or urgent, please justify:* _____

Proposed Provider: _____    Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity *(briefly describe the clinical situation: the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):* Pt had stitches removed 7/6/06, was supposed to remove remaining stitches 7/17/06, but not collected in.

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE 7/18/06 |
|---|---|---|

| REQUESTING PHYSICIAN SIGNATURE   7/14/06 | DATE | Utilization management tracking #: |
|---|---|---|

| DATE OF CONSULTATION  7-20-06 | PRINTED NAME OF CONSULTANT |
|---|---|

FINDINGS: 2 weeks s/p phacoem with IOL in    SLv A 2-14.5?
corneal Activis nmt, AC IOL good position ok    Exp 12
Pupil dil, retina vessels and macula    OD -1.50 + 0.50 × 79 20/30

RECOMMENDATIONS: Remove 10-0 nylon sutures
no photos ok   give new glasses

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE   Scldehid | DATE 7-20-06 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | CASH, RANDALL |
| PCP SIGNATURE | DATE | H5 3400 |

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN    - TO UHR PENDING ORIGINAL
CANARY   - CONSULTANT
PINK     - UM
GOLD     - SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)    CDC 7243 (Rev. 11/02).

00061

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA

## EYE CLINIC

**Reason for Consultation**

**Signature of Referring Doctor**                    Date 7/06/06

**Consultant's Report**    Eye Sensitive t. light      xalatan #1

Cornea, A.C. normal, pupil pinched at 8 oclock      on  v·A sc 20/35-2

Iol AC) good position                                          C.Fos

norml disc) vessels → macula                            Ixp 20 on
                                                                                18 05

Fundus: Nrml disc) vessels and macula norml    on  -3.00+2.00x60  20/25

Cut 3 stitches on

    Cont xalatan H5 on

        F/u 2 weeks

Seen [signature] 7/14/06

**Signature of Consultant**    Saleghi hd          Date 7/6/06

**Name of Patient**    Cash, Randall              **Number**  N53400

**Hospital**

CONSULTANT'S RECORD

CDC 7243 [Rev. 9/77]

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**HEALTH CARE SERVICES**
**PHYSICIAN REQUEST FOR SERVICES**
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME Cash, Randall | CDC NUMBER H53400 | INSTITUTION SQ |
|---|---|---|

| DATE OF BIRTH 12/23/59 | EPRD DATE Life term | GENDER Male | CYF CODE(S) |
|---|---|---|---|

| PRINCIPLE DIAGNOSIS Vision Changes - ® Eye R/O retinal damage | ICD-9 CODE | # OF DAYS RECOMMENDED |
|---|---|---|

REQUESTED SERVICE(S) Ophthalmology

*Please circle all that apply:* (Diagnostic Procedure/Consultation)    Outpatient/Inpatient    (Initial/Follow-up)

Requested Treatment/Service is:    EMERGENT    (URGENT)    ROUTINE

*For the purpose of retrospective review, if emergent or urgent, please justify:* Cloudy vision -

Proposed Provider: _____    Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity *(briefly describe the clinical situation: the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):* 20/400 vision history. New onset white cloudy vision ® eye. Poor peripheral vision. Unable to ID # finger(s) to acuttie, etc available. Slight bursting. Fundoscopic (red reflex only + vascular visual, cup or macula.

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work-up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): doing BMP R/O DM

Comments (diagrams, risk factors, prognosis, alternative management, etc.): Pt told by opt previously - retina'l damage impending. Nothing in chart.

| REQUESTING PHYSICIAN PRINTED NAME L. Linn-Makua FNP | APPROVED / AUTHORIZED / DENIED / DEFERRED BY Lynann R.N. um | DATE 12-30-05 |
|---|---|---|
| REQUESTING PHYSICIAN SIGNATURE [signature] Makua PM | DATE 12/29/05 | Utilization management tracking #: 05106-11-0P-3683 |

| DATE OF CONSULTATION 1-26-06 | PRINTED NAME OF CONSULTANT |
|---|---|

FINDINGS: Citract, AC/4/5/5 Pupils Normal ot 5.7OP    CC V.19 20/200
3 + opacity P cat sub on 1.5 + os dis totat tr Iot on inferiorly    20/80
Fundus: No d disc vessel c macula d periphon on  lattic c holes leg    Iop 200u
RECOMMENDATIONS: inferiorly    Ret on nf p.55 hot    A-Scan ou 23.9
Phaco04 2.4    K on 46.00/47.00
OD u    os 45.5 146.0

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE [signature] | DATE 1.26.06 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | Cash, Randall |
| PCP SIGNATURE | DATE | H53400  12/23/59 |

Attach Progress Note page for additional information.
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN - TO UHR PENDING ORIGINAL
CANARY - CONSULTANT
PINK - UM
GOLD - SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)    CDC 7243 (Rev. 11/02)

00068

# UCSF

**OUTPATIENT OFFICE VISIT OR CONSULT SERVICE
DEPARTMENT OF OPHTHALMOLOGY
RETINA EXAMINATION**

| NAME | 47850738 NAME: CASH,RANDALL |
| DOB | DOB: 12/23/1959  M  COPAY: 0 |
| | FSC: 321   PLAN: CALIF ST PRISON-SAN  2MJK |
| | ATTG MD: STEWART,JAY M MD 40105 |
| MRN | REF MD: NO,REFERRING 99997 |
| | AUTH#        STOP: EYE1 LOC: A71 |
| PCP | VISIT: 13738440        DOS: 11/28/2007 |

**Patient Type** ☒New  ☐ Established  ☐ Consult
**Consulting Service**        **Referring MD**
    Patient Completed Survey  ☐ Yes ☐No   Reviewed and Confirmed   ☐ Yes ☐ No
    Significant For (noted below)

**HPI:** (Focused 1-3, Expanded 1-3, Detailed 4+, Comprehensive 4+/ e.g. location, duration, timing, severity, quality, context, modifying factors, assoc. signs/symptoms)

Problem_____ Duration_____ Severity_____
Location_____ Context_____ Modifying Factors_____
Quality_____ Timing_____
Assoc. signs/symptom_____

47 y.o. O♂      Pt states he has been legally blind since age 3.
He was premature by 1½ months but does
not remember being told he had ROP.
Involved in MVA 9/84 & believes this may
have caused lens dislocations

**Past Ophthalmologic History:** pseudophakia au for cat. + dislocated
lenses —   OS  2ND procedure for iris to wound
+ dehis.   OD  RD last year 2° to dropped cat♀

**Review of Systems:** (Focused 0, Expanded 1 sys. pert. to problem, detailed 2-9, comprehensive 10+ or some systems w/ statement "all others negative

| NL | Abal | | NL | Abal | | NL | Abal | |
|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | Constitutional | ☐ | ☐ | GI | ☐ | ☐ | Psychiatric |
| ☐ | ☐ | Ears, Nose, Mouth, Throat | ☐ | ☐ | GU | ☐ | ☐ | Endocrine |
| ☐ | ☐ | Cardiovascular | ☐ | ☐ | Musculoskeletal | ☐ | ☐ | Hematologic/Lymphatic |
| ☐ | ☐ | Respiratory | ☐ | ☐ | Integumentary | ☐ | ☐ | Allergic/Immunologic |
| ☐ | ☐ | Neurological | ☐ | ☐ | | | | All others negative (when 2 or more are documented) Initial: |

☐ Unobtainable, reason_____
**ROS Notes:** (Supporting documentation required for positive findings)

PMH: HTN    mg

Meds: NORVASC  mg

Phaco/IOL  AC OD  5/06
Phaco/AC IOL  OS  8/06
Iris reposition'g & wound repair  OS  7/06
Retinal detachment  9/06 → "had bubble in eye" OD

**PFSH:** (Focused 0, Expanded 0, Detailed 1 pert., Comprehensive 2-3)

| Y | N | Social History | Y | N | Past Medical History | NL | Abal | Family History |
|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | Smoking | ☐ | ☐ | Illness | ☐ | ☐ | Health status of parents |
| ☐ | ☐ | ETOH | ☐ | ☐ | Surgery | ☐ | ☐ | Hereditary Diseases |
| ☐ | ☐ | Drug Use | ☐ | ☐ | Allergies | ☐ | ☐ | |
| | | | ☐ | ☐ | Medications | ☐ | ☐ | |

☐ Unobtainable, reason_____
**PFSH Notes:** (Supporting documentation required for pertinent positive findings)

Eye drops
none      mg.

Pt most bothered
by "hole in iris" OD
which causes
"ghosting" of images

pred. gtts. x 6 mo♀
cat. SX stopped
6-07

149030 | DMM | 03/06

*UCSF DEPARTMENT OF OPHTHALMOLOGY*

47850738 NAME: CASH,RANDALL
DOB: 12/23/1959  M  COPAY: 0
FSC: 021    PLAN: CALIF ST PRISON-SAN  2MJK
ATTG MD: STEWART,JAY M MD 40105
REF MD: NO,REFERRING 99997
AUTH#
VISIT: 13738440           STOR: EYE1  LOC: A71
                          DOS: 11/28/2007

**Mental Status**
- ☑ Alert and Oriented X 3
- ☑ Mood Normal

**Ophthalmic Pain Assessment:** Pain Present ___Yes ✓ No *If yes, complete below*
Description_____
Pain Scale (1-10)_____
Aggravating factors_____Alleviating Factors_____
Effectiveness of previous pain treatment modalities_____
Effectiveness/side effects of current treatment modalities_____

J

cc V: $\frac{20/200 \ \bar{o} \ ph \ 20/100+1}{20/200 \ \bar{o} \ ph \ 20/70 \, ^{-1}_{+3}}$    Pupil surgical non reactive ou

W $\frac{-2.50+1.25 \times 60 \ +2.50}{-3.50+2.25 \times 178}$    EOM intact ou

M $-2.00+0.75 \times 60 \rightarrow 20/80^{-1}$  $\begin{array}{c} 2\overline{38} \\ T \ 19 \\ P\overline{16} \ 21 \end{array}$

**CVF**

OD                    OS

Amsler

OS          OD

148630 | DMM | 05/08

UCSF MEDICATION LIST (STDH)

| COMMENTS | UNIT #: 478 50 73-8 | Visit: 13738440 |
| | NAME: CASH, RANDALL | |
| | DOB: 12-23-1959 AGE: 47   SEX: M | |
| | FINANCIAL CLASS: 321, OTHER AGENCIES-CONTRACT | |
| | CLINIC: EYE1   PROV: Stewart, Jay M., MD (40185) | |
| | DATE: 11-28-2007 2:15 | |

## MEDICATION LIST

**\*\*\*\* Dear Patient-Please bring your medication list or bottles to all of your appointments \*\*\*\***

| Medication | Dose/Strength | New Dose/Strength | Route | Frequency | Last Update |
|---|---|---|---|---|---|
| Norvasc | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Allergy | Reaction | Last Updated | Allergy | Reaction | Last Updated |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

I have reviewed the patient's list and have provided a copy to the patient/guardian/parent.

Provider Signature  _LDay_____  ID# _57479____  Date _4/28/08_

PINK - PATIENT COPY

YELLOW - CLINIC COPY

ORIGINAL - MEDICAL RECORD COPY

© (Rev. 8307) WorkformOne

634-001H

UCSF VISIT FORM (STOR)

| VITAL SIGNS | |
|---|---|
| QUAD DISTANCE VISUAL ACUITY: | NVAD NEAR VISUAL ACUITY: |
| | OD |
| QUAS DISTANCE VISUAL ACUITY: | NVAS NEAR VISUAL ACUITY: |
| | OS |
| IOP INTRAOCULAR PRESSURE: | OD/OS |

UNIT #: 478 50 73-8    Visit: 13738440
NAME: CASH, RANDALL
DOB: 12-23-1959  AGE: 47   SEX: M
FINANCIAL CLASS: 321, OTHER AGENCIES-CONTRACT
CLINIC: EYE1    PROV: Stewart, Jay M., MD (40105)
DATE: 11-28-2007 2:15

## PROBLEM LIST

| Problem Description | Last Updated | Problem Description | Last Updated |
|---|---|---|---|
| pseudophakia OU | | | |
| w/o RD OD | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

PROGRESS NOTE:    (Use additional history sheets as required)

Is the patient having pain? (circle one)  Y / N
Does the patient have an Advance Directive? (circle one)  Y / N

Provider Signature _____    ID# _57127_    Date _11/28/07_

PINK - PATIENT COPY    YELLOW - CLINIC COPY    (Rev. 03/07) WordsforOne    ORIGINAL - MEDICAL RECORD COPY

834-001N

Nov-05-2007  12:10pm   From-NCH HEALTH INFORMATION MANAGEMENT       +415 209 1451       T-438  P.003/008  F-215



*Marin General Hospital*
*Novato Community Hospital*
A Sutter Health Affiliate

| | | | |
|---|---|---|---|
| **Admit Date** | 09/01/2006 | **Patient** | CDCH53400CASH, RANDALL |
| **Dsch Date** | 09/01/2006 | **Med Rec** | 2157380 |
| **Date of Birth** | 12/23/1959 | **Dictating Phys** | SADEGHI, JAHANGIR |
| **Account** | 1002408829 | **Signing Phys** | SADEGHI, JAHANGIR |
| **Service Date** | 09/01/2006 | **Dictated** | 09/06/2006 09:06:39 |
| **Job #** | 7434026 | **Transcribed** | 09/07/2006 08:20:03 |

CC: Medical Records San Quentin Prison

## OPERATIVE REPORTS

PREOPERATIVE DIAGNOSIS:  Dehiscence of wound and prolapse of the iris in the wound after cataract surgery

POSTOPERATIVE DIAGNOSIS:  Same

PROCEDURE:  Repositioning of iris and repairing of the wound

ANESTHESIA: General

SURGEON:  J. Sadeghi, M.D.

DESCRIPTION OF PROCEDURE:  After prep and drape in the usual fashion and microscope in position, lid speculum was put inside of the eye. Two of the 10-0 nylon sutures that were previously put in were removed. With the iris spatula, I tried to put the iris back into the eye. The cornea was sutured with 10-0 nylon. Made sure the wound was water tight sealed.  20 mg of gentamicin was injected subconjunctivally.  The wound was dressed with Cyclogel 1% and Maxitrol ointment as well as a patch. He tolerated the procedure well and left the operating room in satisfactory condition.

Electronically signed by JAHANGIR SADEGHI MD on 09/18/2006 16:39

---

Marin General Hospital / Novato Community Hospital

Nov-06-2007 12:10pm  From-NCH HEALTH INFORMATION MANAGEMENT     +415 208 1451      T-438  P.004/008  F-215



*Marin General Hospital*
*Novato Community Hospital*
A Sutter Health Affiliate

| Admit Date | 08/09/2006 | Patient | CDCHS3400CASH, RANDALL |
|---|---|---|---|
| DschDate | 08/09/2006 | Med Rec | 2157380 |
| Date of Birth | 12/23/1959 | Dictating Phys | SADEGHI, JAHANGIR |
| Account | 1002346722 | Signing Phys | SADEGHI, JAHANGIR |
| Service Date | 08/09/2006 | Dictated | 08/09/2006 11:50:58 |
| Job # | 7424571 | Transcribed | 08/10/2006 11:16:18 |

CC: Medical Records San Quentin Prison

## OPERATIVE REPORTS

**PREOPERATIVE DIAGNOSIS:** Cataract and dislocated lens left eye

**POSTOPERATIVE DIAGNOSIS:** Same

**PROCEDURE:** Phacoemulsification with intraocular lens implantation anterior chamber left eye

**ANESTHESIA:** General

**DESCRIPTION OF PROCEDURE:** After preparation in the usual fashion and microscope in position, the lid speculum was put inside the eye. A side incision with a sharp knife was made inferotemporally. The diamond knife was used to make a 3 mm clear corneal incision. Healon 5 was injected into the anterior chamber. The cystotome was used to make a cut on the anterior capsule and with the capsulorrhexis forceps I made a ring anterior capsulotomy. A Mercer capsular tension ring was put inside of the capsule under the anterior capsule. Hydrodissection was done by using a PSS with a 27 gauge cannula. Phacoemulsification was started by doing a phaco cross section and using the micro finger. At the time of phacoemulsification, I noticed that the lens was coming completely into the anterior chamber. Very cautiously I could finish removing the nucleus but the whole lens was dislocated from the anterior chamber and I had to remove the whole lens by phaco. After completing the removal of the lens, I removed the capsular tension ring which was in the anterior chamber out of the eye. Miochol was injected into the eye. Healon was injected into the anterior chamber and deep into the chamber. The clear corneal incision was extended to 5 mm by diamond knife. An anterior chamber IOL MTA-4U0 from Alcon Company was inserted into the anterior chamber. The power was 14 diameters. Extra Healon was irrigated out. The cornea was sutured together with separated 10-0 nylon. 20 mg of gentamicin and 2 mg of Decadron was injected subconjunctivally in the temporal side. The eye was dressed with atropine 1% as well as Maxitrol ointment and a patch. He tolerated the procedure well and left the operating room in satisfactory condition.

I will see him tomorrow at San Quentin Prison postoperatively.

Electronically signed by JAHANGIR SADEGHI MD on 08/14/2006 09:39

---

Marin General Hospital / Novato Community Hospital

00087

Nov-06-2007 12:10pm  From-NCH HEALTH INFORMATION MANAGEMENT    +415 209 1451 ;    T-438  P.005/008  F-216



**Marin General Hospital**
**Novato Community Hospital**
A Sutter Health Affiliate

| | | | |
|---|---|---|---|
| **Admit Date** | 05/03/2006 | **Patient** | CDCH53400CASH, RANDALL |
| **Dsch Date** | 05/03/2006 | **Med Rec** | 2157380 |
| **Date of Birth** | 12/23/1959 | **Dictating Phys** | SADEGHI, JAHANGIR |
| **Account** | 1002080636 | **Signing Phys** | SADEGHI, JAHANGIR |
| **Service Date** | 05/03/2006 | **Dictated** | 05/03/2006 13:09:05 |
| **Job #** | 7391134 | **Transcribed** | 05/04/2006 11:55:22 |

CC: Medical Records San Quentin Prison

## OPERATIVE REPORTS

SURGEON: Jahangir Sadeghi, M.D.

PREOPERATIVE DIAGNOSIS: Cataract and dislocated lens right eye

POSTOPERATIVE DIAGNOSIS: Same.

PROCEDURE PERFORMED: Phacoemulsification with intraocular lens implantation in the anterior chamber in the right eye.

ANESTHESIA: Topical, monitored.

DESCRIPTION OF PROCEDURE: The patient was dilated in the preoperative area with 3 sets of Neo-Synephrine 2.5% Cyclogyl 1%, 3 minutes apart, started 30 minutes before surgery. Ocufen 1 drop every 15 minutes was used to his eye for 1 hour. The patient was brought to the operating room. After prep and drape in the usual fashion and microscope in position, a lid speculum was put in the eye. Three drops of Xylocaine 4% were put in the eye. A sharp knife was used to make a side incision at the 11 o'clock position. Viscoelastic solution was injected into the anterior chamber. A diamond knife was used to make a 2.8 mm clear corneal incision in the temporal side. A cystotome was used to do an anterior capsulotomy it was very hard to do cystotomy because the lens was dancing around. Capsulorrhexis forceps was used to do a small circular capsulorrhexis. A capsular ring was inserted in the capsule with the inserter.

Phacoemulsification was started by sculpting the nucleus in a cross shape. It was extremely difficult to do because in the nasal side almost 40% of the circumference of the zonules was gone. I could manage to remove the lens. A piece of cortex fell down into the vitreous. Miochol was injected to the eye to make the pupil small. The clear corneal wound was extended to 5 mm with the diamond knife. An anterior chamber lens from Alcon Company 13.5 diopters was inserted into the anterior chamber. Before putting the lens in, I injected viscoelastic to deepen the anterior chamber. The lens was centered by using a Sinskey hook. A peripheral iridectomy was done in the temporal side. The clear cornea was sutured with three separated 10-0 nylon. 20 mg of gentamicin was injected subconjunctivally inferiorly. The eye was dressed with atropine and Maxitrol ointment. Viscoelastic solution was aspirated at this time. I made sure the wound was watertight. The patient tolerated the procedure well and left the operating room in satisfactory condition.

00088

Electronically signed by JAHANGIR SADEGHI MD on 05/08/2006 14:18

Marin General Hospital / Novato Community Hospital

00089

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

### DIRECTOR'S LEVEL APPEAL DECISION

AUG 2 4 2007

Date:

In re: Randall Cash, H53400
California State Prison, San Quentin
San Quentin, CA 94964

IAB Case No.:          Local Log No.: SQ-07-00992
0701195

This matter was reviewed on behalf of the Director of the California
Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner
A. F. Caton, Facility Captain. All submitted documentation and supporting
arguments of the parties have been considered.

**I APPELLANT'S ARGUMENT:** It is the appellant's position that an
ophthalmologist at San Quentin State Prison (SQ) performed cataract surgery
and lens implant on his eyes and he cannot see very well and his visual acuity
is degrading. He states that the vision in his right eye is distorted and he has
no depth of perception and that there is blood blocking his vision. The
appellant requests another surgery by another ophthalmologist to correct
errors from the previous surgery

**II SECOND LEVEL'S DECISION:** The reviewer found that Ophthalmologist
Dr. Sadighi performed surgery on May 3, 2006, and the appellant developed
retinal detachment about four months later. The appellant was referred to a
retinal specialist who operated on it successfully. On August 9, 2006,
Dr. Sadighi performed cataract surgery on the appellant's left eye; the post
operation course was fine and the appellant's vision was 20/40 in the left eye.
On August 31, 2006, Dr. Sadighi performed additional surgery because the
appellant's iris was prolapsed through the corneal incision, his pupil was
irregular, and he had hemorrhage on the lid of his right eye. According to
Dr. Sadighi, the appellant claimed to have injured his left eye horse playing
sometime before August 31, 2006. Dr. Sadighi evaluated the appellant on
April 5, 2007, and his condition was stable. Health care providers informed
the appellant that pursuant to California Code of Regulations, Title 15,
Section (CCR) 3354(c), he has the option of selecting a private consultant to
treat his condition at his own expense.

**III DIRECTOR'S LEVEL DECISION:** Appeal is denied.

RANDALL CASH, H53400
CASE NO. 0701195
PAGE 2

**A. FINDINGS:**   In elevating the appeal to the Director's Level, the appellant states that Dr. Sadighi dropped a ring from the laser tool into his eye during the May 3, 2006, surgery and the laser burned a hole into the iris.  The appellant also attributes the retinal detachment to the accident with the laser tool.  According to the appellant, the outside specialist who performed the retina surgery removed the ring from the laser instrument from his eye and was critical of Dr. Sadighi for using the technique he used and for leaving the ring in his eye.

During a phone call SQ Health Care Appeals Coordinator (HCAC) Oliver reported that the appellant received eyeglasses and still complained of double vision in his right eye and blurry vision in his left eye.   On August 22, 2007, HCAC Oliver reported that Health Care Manager (HCM) Dr. Kanan will instruct the appellant's primary care physician to schedule him for consultation with another ophthalmologist.

This review finds that the HCM's decision provides relief to the appellant's concern; therefore, there is no need for relief at the Director's Level of Review.

**B. BASIS FOR THE DECISION:**
CCR: 3350, 3350.1, 3354

**C. ORDER:**  No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:   Warden, SQ
        Health Care Manager, SQ
        Appeals Coordinator, SQ
        Medical Appeals Analyst, SQ

STATE OF CALIFORNIA  **TREAT AS ORIGINAL**  DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region _SQSP_    Log No. _702130_ _CSQSP-07-0062_  Category _8_ _60_

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

A 5 0436

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| CASH, RANDALL B. | H53400 | RECEPTION | |

A. Describe Problem: I submitted a completed ADA 1824 form to the Appeals Coordinators Office on 3-08-07 and received a response with a log number from the Appeals Coordinator telling me that the Assigned Staff Review - HCM had 15 days to respond to me on First Level. That deadline ran out today 4-02-07 (see attached notice)

If you need more space, attach one additional sheet.

B. Action Requested: Assigned Staff Review HCM review this appeal and interview me. This is a medical matter my eyesight is at stake and the reason it has dragged out is this my eye is slowly getting worse due to _____ my vision.

Inmate/Parolee Signature: _Randall J Cash_    APR 05 RECD    Date Submitted: 4-02-07

APR 05 RECD    partially

C. INFORMAL LEVEL (Date Received: _____ )
Staff Response: I reviewed your appeal and medical record. Your appeal was assigned to me and therefore your request to have it reviewed by the Health Care Manager is Denied. Your request for an interview is denied because informal level appeals do not require an interview. I spoke with the nurse in the eye Clinic and records show that you were seen by the ophthalmologist as noted date **SEE ATTACHED** Doctors notes indicate that the

Staff Signature: _B Hamann MD 5/10/07 / A Smeira RN_    Date Returned to Inmate: **MAY 14 2007**

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Prescription glasses do not remedy the damage to my right eye done by the laser that Dr. Sadeghi caused during cataract surgery. He is also the one 6-07 first follow up he told me he is not fixing the damage. I still need a different surgeon and due to it being a CDCR employees malpractice it should in no way have to pay.

Signature: _Randall J Cash_    Date Submitted: 5-20-07

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim    CDC Appeal Number: _____

**MAY 2 3 RECD**

**MAY 2 5 RECD**

00265

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____    Due Date: _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____

Interviewed by SRN II GROVE

Upon review of your chart and review by your doctor, your appeal is denied. Iris/pupil irregularities are a possible expected outcome of cataract surgery. Therefore, your doctor has determined a second opinion is not medically necessary.

JUL 16 2007

Staff Signature: _____ 7/17/7    Title: SRN II    Date Completed: _____
Division Head Approved: _____    Title: DW 7/18/07    Return: JUL 18 RECD
Signature: _____    Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

The notes supplied here by Dr Sadeghi are in-complete and do not show where he stopped a few weeks from the time he used to ensure the cataracts the was removed in taking it to my eye. I filled the 1st appeal notice on 9-03-06 in his inquest. See the surgery notes of Dr Michael Jumper 8-31-06 that I many differ the removal to office.

Randall S Ezell    H-53440    AUG 1 RECD    Date Submitted: 7/30/07

Signature: _____

Second Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____    AUG 0 1 2007    Due Date: AUG 2 9 2007

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____
☐ See Attached Letter

Date Completed: _____

Signature: _____    Date Returned to Inmate: _____
Warden/Superintendent Signature: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

Signature: _____    Date Submitted: _____

For the Director's Review, submit all documents to:  Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

Novato Community . .pital
Novato, CA 94945
(415) 209-1300

SERVICE DATE:          05/03/2006

SURGEON: Jahangir Sadeghi, M.D.

PREOPERATIVE DIAGNOSIS: Cataract and dislocated lens right eye

POSTOPERATIVE DIAGNOSIS: Same.

PROCEDURE PERFORMED: Phacoemulsification with intraocular lens implantation in
the anterior chamber in the right eye.

ANESTHESIA: Topical, monitored.

DESCRIPTION OF PROCEDURE: The patient was dilated in the preoperative area with
3 sets of Neo-Synephrine 2.55 minutes apart, started 30 minutes before surgery. Ocufen
1 drop every 15 minutes was used to her eye for 1 hour. The patient was brought to the
operating room. After prep and drape in the usual fashion and microscope in position, a
lid speculum was put in the eye. Three drops of Xylocaine 4% were put in the eye. A
sharp knife was used to make a side incision at the 11 o'clock position. Viscoelastic
solution was injected into the anterior chamber. A diamond knife was used to make a 2.8
mm clear corneal incision in the temporal side. A cystotome was used to do an anterior
capsulotomy. Capsulorrhexis forceps was used to do a circular capsulorrhexis. A
capsular ring was inserted in the capsule with the inserter.

Phacoemulsification was started by sculpting the nucleus in a cross shape. It was
extremely difficult to do because in the nasal side almost 40% of the circumference of the
lens was gone. I could manage to remove the lens. A piece of cortex fell down into the
vitreous. Miochol was injected to the eye to make the pupil small. The clear corneal
wound was extended to 5 mm with the diamond knife. An anterior chamber lens from
Alcon Company 13.5 diopters was inserted into the anterior chamber. Before putting the
lens in, I injected viscoelastic to deepen the anterior chamber. The lens was centered by
using a Sinskey hook. A peripheral iridectomy was done in the temporal side. The clear
cornea was sutured with three separated 10-0 nylon. 20 mg of gentamicin was injected
subconjunctivally inferiorly. The eye was dressed with atropine and Maxitrol ointment.
Viscoelastic solution was aspirated at this time. I made sure the wound was watertight.

| OPERATIVE REPORTS | Patient Name: CDCH53400CASH, RANDALL MR#: 02-15-73-80 Account #: 01002080636 |
|---|---|
| JAHANGIR SADEGHI, MD | |

Novato Community Hospital
Novato, CA 94945
(415) 209-1300

The patient tolerated the procedure well and left the operating room in satisfactory
condition.

Pending Electronic Signature by JAHANGIR SADEGHI, MD

D: 05/03/2006 13:09:05
T: 05/04/2006 11:55:22
Job #: 7391134/rp
cc:    Medical Records San Quentin Prison

| OPERATIVE REPORTS | Patient Name: CDCH53400CASH, |
| --- | --- |
| | RANDALL |
| JAHANGIR SADEGHI, MD | MR#: 02-15-73-80 |
| - 2 - | Account #: 01002080636 |

00269

SQ-PCA

State of California

Department of Corrections and Rehabilitation

# Memorandum

Date:    June 12, 2007

To:    CASH, H53400

From:    San Quentin State Prison (SQ)

Subject:    SECOND LEVEL APPEAL RESPONSE
LOG NO. CSQ-4-07-00992

### ISSUE:

You state that you are legally blind and you have had 5 (five) eye surgeries on both eyes since May 06. You add that you allowed Dr. Sadighi SQ Ophthamologist, to perform cataract and lens implant surgery on both eyes with the impression that you would be able to see after surgery. You claim you cannot see now and your vision is degrading not improving.

You request another eye surgeon/ophthalmologist to treat you and hopefully fix what Dr. Sadeghi has done to your eyes.

### INTERVIEWED BY:    C. Oliver, Registered Nurse, on April 4, 2007

Your Unit Health Record (UHR) and all submitted documentation and supporting information has been considered, including the interview at the First Level of Review (FLR).

*Your appeal was denied at the FLR and the response at the FLR is as follows: "I spoke with you on 4/4/07. You stated that you would like to be seen by another ophthalmologist aside from Dr. Sadighi. I informed you that you can request for an outside consultation or a private physician not employed by SQSP, however the cost of such service shall be paid by you. Title 15 Section 3354 (c) states that an inmate may request a consultation from health care personnel not employed by SQSP. Costs of such private examinations shall be paid by the inmate or the person requesting the service. Based on this your request is denied.*

In requesting a Second Level Review you state, " A CDCR employed physician did surgery on me and ruined my eyesight with an act of malpractice and negligence. Why should I be further disabled and have to pay to have the CDCR's doctors' mistake and incompetence fixed, if in fact it can be repaired. It is a moot point- I am indigent and have no one to pay anyway."

### SECOND LEVEL RESPONSE:

Dr. Sadighi was contacted on May 24, 2007, who states that you had cataract surgery on your right eye on May 3, 2006, which was coming along well, but on September 7, 2006, you developed retinal detachment, and you were referred to the retinal specialsit. You were operated successfully. Dr. Sadighi states he last saw you on April 5, 2007, and he

00272

San Quentin State Prison
Appeal CSQ-4-07-00992
Cash, H53400
Page 2

reported your condition as stable and that he had also given you a prescription for glasses on February 15, 2007. Communication with the eye specialty nurse reveals that you initially received your glasses on March 29, 2007; however, you decided to add transitional lenses and the glasses were sent back to the Prison Industry Authority (PIA). PIA returned your glasses with the transitional lenses as requested and your received them on May 4, 2007.

Dr. Sadighi also stated the following:  you had cataract surgery on your left eye on August 9, 2006, and your post op course was fine.  In the second week of post op your vision in your left eye was 20/40. On August 31, 2006, you were examined by Dr. Sadighi who determined that your iris was prolapsed through the corneal incision and the pupil was irregular; therefore, he took you to the Operating Room and repositioned your iris and sutured your wound.  Dr. Sadighi also states and noted in your medical record that you told him that three days prior to August 31, 2006, you injured your left eye while horse playing. Dr. Sadighi added that on August 31, 2006, you also had a hemorrhage on the latter side of the lid areas of your right eye.

You are encouraged to use the sick call process by completing a Request for Health Services (CDC 7362) to request an appointment with a clinician to address your concerns. These forms are available from medical staff.  If you are not satisfied with the medical care you are provided at California State Prison – San Quentin, you are encouraged to utilize the inmate appeals process, which is described in the California Code of Regulations, Title 15.  This process is an integral part of the administrative remedies available for the inmates to resolve issues concerning any departmental decision, action, condition, or policy that they can demonstrate has had an adverse effect upon their welfare.

**DECISION:**  For the reasons cited above, your appeal is partially granted, in that you are permitted, as indicated at the FLR, to be seen by another specialist.  California Code of Regulations, Title 15, 3354(c), states in part... Private Consultants. An inmate or an inmate's responsible guardian or relative, or an attorney or other interested person wanting the inmate examined by a private physician, shall submit a written request to the institution head.  The institution head shall, after consulting with the facility's chief medical officer grant the request unless convinced that specific case factors warrant denial. Costs of such private consultations or examinations shall be paid by the inmate or the person requesting the service. It should be noted that the cost associated with an outside consultation also includes custodial supervision, transportation, tests/appliances, etc.

You are advised that this issue may be submitted for a Director's Level of Review if desired.

R. KANAN, M.D.
Chief Medical Officer (A)
San Quentin State Prison

RK:pv

cc:  Appeal File
      Central File

00273

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS

**REASONABLE MODIFICATION OR ACCOMMODATION REQUEST**
CDC 1824 (1/95)

INSTITUTION/PAROLE REGION: SAN QUENTIN

LOG NUMBER: 07-00992

CATEGORY: 18. ADA

NOTE: THIS FORM IS TO BE USED ONLY BY INMATES/PAROLEES WITH DISABILITIES

In processing this request, it will be verified that the inmate/parolee has a disability which is covered under the Americans With Disabilities Act.

| INMATE/PAROLEE'S NAME (PRINT) | CDC NUMBER | ASSIGNMENT | HOURS/WATCH | HOUSING |
|---|---|---|---|---|
| RANDALL S. CASH | 153400 | | | 1B09T |

In accordance with the provisions of the Americans With Disabilities Act (ADA), no qualified individuals with a disability shall, on the basis of disability, be excluded from participation in, or be denied the benefits of the services, activities, or programs of a public entity, or be subjected to discrimination.

You may use this form to request specific reasonable modification or accommodation which, if granted, would enable you to participate in a service, activity or program offered by the Department/institution/facility, for which you are otherwise qualified/eligible to participate.

Submit this completed form to the institution or facility's Appeals Coordinator's Office. A decision will be rendered within 15 working days of receipt at the Appeals Coordinator's Office and the completed form will be returned to you.

If you do not agree with the decision on this form, you may pursue further review. The decision rendered on this form constitutes a decision at the FIRST LEVEL of review.

To proceed to SECOND LEVEL, attach this form to an Inmate/Parolee Appeal Form (CDC 602) and complete section "F" of the appeal form.

Submit the appeal with attachment to the Appeals Coordinator's Office within 15 days of your receipt of the decision rendered on this request form.

If you are not satisfied with the SECOND LEVEL review decision, you may request THIRD LEVEL review as instructed on the CDC 602.

## MODIFICATION OR ACCOMMODATION REQUESTED

DESCRIPTION OF DISABILITY:
VISION IMPAIRED - LEGALLY BLIND

WHAT VERIFICATION DO YOU HAVE OF YOUR DISABILITY?
MEDICAL FILE - HAD 5 EYE SURGERIES (BOTH EYES) SINCE MAY '06.

DESCRIBE THE PROBLEM:
IN GOOD FAITH I ALLOWED DR. SADEGHI (S.Q. OPTHAMOLOGIST) TO PERFORM CATARACT AND LENS IMPLANT SURGERY ON BOTH OF MY EYES WITH THE IMPRESSION I WOULD BE ABLE TO SEE AFTER SURGERY. I CAN NOT SEE NOW AND MY VISION IS DEGRADING NOT IMPROVING. MY RIGHT EYE MORE SO. I HAVE DISTORTION (HORIZONTAL COMPRESSION) AND NO DEPTH PERCEPTION. MY MEDICAL HOLD RUNS OUT ON 5-19-07 AND DR. SADEGHI IS NOT DOING ANY FURTHER TREATMENT

WHAT SPECIFIC MODIFICATION OR ACCOMMODATION IS REQUESTED?
I WANT ANOTHER EYE SURGEON/OPTHALMOLOGIST TO TREAT ME AND HOPEFULLY FIX WHAT DR. SADEGHI HAS DONE TO MY EYES. I HAVE A HOLE IN MY RIGHT RETINA THIS NOW AND THERE IS A BLOOD FLOODING MY VISION IN THAT EYE AS WELL. LEFT EYE IS MARGINAL. I AM A PC/SNY PRISONER GOING TO 180-TERM 9 AND I CAN'T SEE TO PROTECT MYSELF OR SEE AROUND. I AM ISU/AG

P.1100 P.
B-08-07

00276

REASONABLE MODIFICATION OR ACCOMMODATION REQUEST     MAR 1 - REC'D
CDC 1624 (1/95)

REVIEWER'S ACTION

DATE ASSIGNED TO REVIEWER: MAR 1 2 2007
DATE DUE: APR 0 2 2007

TYPE OF ADA ISSUE

[X] PROGRAM, SERVICE, OR ACTIVITY ACCESS (Not requiring structural modification)

    [ ] Auxiliary Aid or Device Requested
    [X] Other  To see another eye surgeon / ophthalmologist.

[ ] PHYSICAL ACCESS (requiring structural modification)

DISCUSSION OF FINDINGS: I spoke with you on 4/4/07. You state that you _____ Saugus. I informed you that you can _____ _____ should shall be paid by you.

_____
_____
_____

4/4/07                                                          [signature]
DATE INMATE/PAROLEE WAS INTERVIEWED                    PERSON WHO CONDUCTED INTERVIEW

DISPOSITION

[ ] GRANTED    [X] DENIED    [ ] PARTIALLY GRANTED

BASIS OF DECISION: Title 15 section 3354 (C) states that an inmate may request a consultation from a health care personnel not employed by SQSP & Costa of such private examination shall be paid by the inmate or the person requesting the service. Based on this your request is denied.

_____
_____

NOTE: If disposition is based upon information provided by other staff or other resources, specify the resource and the information provided. If the request is granted, specify the process by which the modification or accommodation will be provided, with time frames if appropriate.

DISPOSITION RENDERED BY: (NAME)          TITLE          INSTITUTION/FACILITY
[signature] /C. [signature] RN          RN          SQSP

APPROVAL

ASSOCIATE WARDEN'S SIGNATURE          DATE SIGNED          APR 0 5 REC'D
[signature]                            [date]

00277

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## INMATE/PAROLEE APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region

1. SAN QUENTIN

2.

Log No.

1. CSQ-4-07-06992

2.

Category

18. ADA

You may appeal any policy, action or decision which has a significant adverse effect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| RANDALL S. CASH | H53400 | RECEPTION | BADGER 16 |

A. Describe Problem: SEE (F.)

If you need more space, attach one additional sheet.

B. Action Requested:

Inmate/Parolee Signature:                                                      Date Submitted:

C. INFORMAL LEVEL (Date Received:

Staff Response:

Staff Signature:                                                      Date Returned to Inmate:

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature:                                                      Date Submitted:

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

00278

First Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____    Due Date: _____

Interviewed by: _____

Staff Signature: _____    Title: _____    Date Completed: _____

Division Head Approved: _____    Returned

Signature: _____    Title: _____    Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

A CDCR EMPLOYER PHYSICIAN DID SURGERY ON ME AND RUINED MY EYESIGHT WITH AN
ACT OF MALPRACTICE AND NEGLIGENCE. WHY SHOULD I BE FARTHER DI-ABLED
AND HAVE TO PAY TO HAVE THE CDCR'S DOCTORS' MISTAKE AND INCONTEFENCE FIXED IF
IN FACT IT CAN BE REPAIRED. AT THE POINT I AM INDIGENT AND HAVE NO ONE TO PAY. ANY W

Signature: _____ S Cuth  J 53400    APR 11 2007  Date Submitted:  4/18/07

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other    APR 11 2007    Due Date:  APR 25 2007

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____

☒ See Attached Letter

Signature: _____ C. OConnor  6/12/07    Date Completed: _____

Warden/Superintendent Signature: _____ G. Lewis for R. Kanak 6/14/07    Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Signature: _____    Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other

☐ See Attached Letter.    Date: _____

CDC 602 (12/87)

00279

Novato Community Hospital
Novato, CA 94945
(415) 209-1300

SERVICE DATE:        05/03/2006

SURGEON: Jahangir Sadeghi, M.D.

PREOPERATIVE DIAGNOSIS: Cataract and dislocated lens right eye

POSTOPERATIVE DIAGNOSIS: Same.

PROCEDURE PERFORMED: Phacoemulsification with intraocular lens implantation in the anterior chamber in the right eye.

ANESTHESIA: Topical, monitored.

DESCRIPTION OF PROCEDURE: The patient was dilated in the preoperative area with 3 sets of Neo-Synephrine 2.5 5 minutes apart, started 30 minutes before surgery. Ocufen 1 drop every 15 minutes was used to her eye for 1 hour. The patient was brought to the operating room. After prep and drape in the usual fashion and microscope in position, a lid speculum was put in the eye. Three drops of Xylocaine 4% were put in the eye. A sharp knife was used to make a side incision at the 11 o'clock position. Viscoelastic solution was injected into the anterior chamber. A diamond knife was used to make a 2.8 mm clear corneal incision in the temporal side. A cystotome was used to do an anterior capsulotomy. Capsulorrhexis forceps was used to do a circular capsulorrhexis. A capsular ring was inserted in the capsule with the inserter.

Phacoemulsification was started by sculpting the nucleus in a cross shape. It was extremely difficult to do because in the nasal side almost 40% of the circumference of the lens was gone. I could manage to remove the lens. A piece of cortex fell down into the vitreous. Miochol was injected to the eye to make the pupil small. The clear corneal wound was extended to 5 mm with the diamond knife. An anterior chamber lens from Alcon Company 13.5 diopters was inserted into the anterior chamber. Before putting the lens in, I injected viscoelastic to deepen the anterior chamber. The lens was centered by using a Sinskey hook. A peripheral iridectomy was done in the temporal side. The clear cornea was sutured with three separated 10-0 nylon. 20 mg of gentamicin was injected subconjunctivally inferiorly. The eye was dressed with atropine and Maxitrol ointment. Viscoelastic solution was aspirated at this time. I made sure the wound was watertight.

| OPERATIVE REPORTS | Patient Name: CDCH53400CASH, RANDALL MR#: 02-15-73-80 Account #: 01002080636 |
|---|---|
| JAHANGIR SADEGHI, MD | |

Novato Community Hospital
Novato, CA 94945
(415) 209-1300

The patient tolerated the procedure well and left the operating room in satisfactory
condition.

Pending Electronic Signature by JAHANGIR SADEGHI, MD

D: 05/03/2006 13:09:05
T: 05/04/2006 11:55:22
Job #: 7391134/rp
cc:      Medical Records San Quentin Prison

---

| OPERATIVE REPORTS | Patient Name: CDCH53400CASH, RANDALL |
|---|---|
| JAHANGIR SADEGHI, MD | MR#: 02-15-73-80 |
| - 2 - | Account #: 01002080636 |

00284

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS

**REASONABLE MODIFICATION OR ACCOMMODATION REQUEST**
CDC 1824 (1/95)

| INSTITUTION/PAROLE REGION: | LOG NUMBER: | CATEGORY: |
|---|---|---|
| SAN QUENTIN | 07-00992 | 18. ADA |

*NOTE:* THIS FORM IS TO BE USED ONLY BY INMATES/PAROLEES WITH DISABILITIES

*In processing this request, it will be verified that the inmate/parolee has a disability which is covered under the Americans With Disabilities Act.*

| INMATE/PAROLEE'S NAME (PRINT) | CDC NUMBER | ASSIGNMENT | HOURS/WATCH | HOUSING |
|---|---|---|---|---|
| RANDALL B. CASH | H 53400 | | | 1B091 |

In accordance with the provisions of the Americans With Disabilities Act (ADA), no qualified individuals with a disability shall, on the basis of disability, be excluded from participation in, or be denied the benefits of the services, activities, or programs of a public entity, or be subjected to discrimination.

You may use this form to request specific reasonable modification or accommodation which, if granted, would enable you to participate in a service, activity or program offered by the Department/institution/facility, for which you are otherwise qualified/eligible to participate.

Submit this completed form to the institution or facility's Appeals Coordinator's Office. A decision will be rendered within 15 working days of receipt at the Appeals Coordinator's Office and the completed form will be returned to you.

If you do not agree with the decision on this form, you may pursue further review. The decision rendered on this form constitutes a decision at the FIRST LEVEL of review.

To proceed to SECOND LEVEL, attach this form to an inmate/Parolee Appeal Form (CDC 602) and complete section "F" of the appeal form.

Submit the appeal with attachment to the Appeals Coordinator's Office within 15 days of your receipt of the decision rendered on this request form.

If you are not satisfied with the SECOND LEVEL review decision, you may request THIRD LEVEL review as instructed on the CDC 602.

## MODIFICATION OR ACCOMMODATION REQUESTED

DESCRIPTION OF DISABILITY:

VISION IMPAIRED - LEGALLY BLIND

WHAT VERIFICATION DO YOU HAVE OF YOUR DISABILITY?

MEDICAL FILE - HAD 5 EYE SURGERIES (BOTH EYES) SINCE MAY '06.

DESCRIBE THE PROBLEM:

IN GOOD FAITH I ALLOWED DR. SADEGHI (S.Q. OPTHALMOLOGIST) TO PERFORM CATARACT AND LENS IMPLANT SURGERY ON BOTH OF MY EYES WITH THE IMPRESSION I WOULD BE ABLE TO SEE AFTER SURGERY. I CAN NOT SEE NOW AND MY VISION IS DEGRADING NOT IMPROVING. MY RIGHT EYE MORE SO. I HAVE DISTORTION (HORIZONTAL COMPRESSION) AND NO DEPTH PERCEPTION. MY MEDICAL HOLD RUNS OUT ON 3-19-07 AND DR. SADEGHI IS NOT DOING ANY FURTHER TREATMENT

WHAT SPECIFIC MODIFICATION OR ACCOMMODATION IS REQUESTED?

I WANT ANOTHER EYE SURGEON/OPTHALMOLOGIST TO TREAT ME AND SURGICALLY FIX WHAT DR. SADEGHI HAS DONE TO MY EYES. I HAVE A HOLE IN MY RIGHT RETINA THIS NOW AND THERE IS A BLOOD BLOCKING MY VISION IN THAT EYE AS WELL. LEFT EYE IS WORSENING. I AM A LWOP INMATE GOING TO A 180-LEVEL 4 AND I CANS SEE TO PROTECT MYSELF OR SEE WHERE I AM GOING

*Randall B. Cash*                                                          3-08-07
INMATE/PAROLEE'S SIGNATURE                                    DATE SIGNED

00285

MAR 12 REC'D

**REASONABLE MODIFICATION OR ACCOMMODATION REQUEST**
CDC 1824 (1/95)

MAR 12 REC'D

**REVIEWER'S ACTION**

DATE ASSIGNED TO REVIEWER: MAR 12 2007
DATE DUE: APR 02 2007

**TYPE OF ADA ISSUE**

[X] PROGRAM, SERVICE, OR ACTIVITY ACCESS (Not requiring structural modification)

  [ ] Auxiliary Aid or Device Requested

  [X] Other _To see another eye surgeon / ophthalmologist_

[ ] PHYSICAL ACCESS (requiring structural modification)

**DISCUSSION OF FINDINGS:** _I spoke with you on 4/4/07, you stated that you would like to be seen by another ophthalmologist as you question the treatment ... or a private physician not employed by SQSP, however the cost of this surgery should be provided by yourself ..._

_1/4/07_
**DATE INMATE/PAROLEE WAS INTERVIEWED**

_C. Oliver RN_
**PERSON WHO CONDUCTED INTERVIEW**

**DISPOSITION**
  [ ] GRANTED    [X] DENIED    [ ] PARTIALLY GRANTED

**BASIS OF DECISION:** _Title 15 section 3354 (c) states that an inmate may request a consultation from a health care personnel not employed by SQSP. Costs re: such private consultations shall be paid by the inmate or the person requesting the service. Based on this, your request is denied._

**NOTE:** If disposition is based upon information provided by other staff or other resources, specify the resource and the information provided. If the request is granted, specify the process by which the modification or accommodation will be provided, with time frames if appropriate.

**DISPOSITION RENDERED BY: (NAME)** _C. Oliver RN / C. Swiney RN_    **TITLE** _RN_    **INSTITUTION/FACILITY** _SQSP_

**APPROVAL**

**ASSOCIATE WARDEN'S SIGNATURE**    **DATE SIGNED** _4/4/07_    APR 05 REC'D

00286



ALL SCOTT CASH
HE3____
QUENTIN PRISON
QUENTIN, CA
94974
07 6252 JF (PR)

RECEIVED
AUG 19 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVE
BOX 36060
SAN FRANCISCO, CA.
94102

LEGAL
MAIL

LEGAL · MAIL