RANDALL S. CASH H53400
SAN QUENTIN PRISON
SAN QUENTIN, CA 94974

IN PRO PER

FILED
08 AUG 19 PM 12:45

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

THE HONORABLE JEREMY FOGEL

No. CV 07 6252 JF (PR)

IN RE
RANDALL SCOTT CASH
PLAINTIFF
VS.
DR. JAHANGIR SADEGHI
DEFENDANT

MOTION IN OPPOSITION OF DECLARATION BY (pt.3) JAHANGIR SADEGHI M.D. AND DEFENDANTS' REQUEST FOR SUMMARY JUDGEMENT
(I APOLOGIZE FOR MY HANDWRITING)
(I CAN NOT SEE WHAT I AM DOING)

1. I, RANDALL SCOTT CASH, HEREBY DECLARE THAT I AM PLAINTIFF TO THE ABOVE REFERENCED MATTER AND THAT I AM INCARCERATED AT SAN QUENTIN PRISON.

2. THAT IN RESPONSE TO THE DECLARATION OF J. SADEGHI M.D. SUPPORTING DEFENDANTS MOTION FOR SUMMARY JUDGEMENT, I DECLARE THE FOLLOWING STATEMENTS BY J. SADEGHI TO BE IN CONFLICT WITH FACTS PRESENTED AS EVIDENCE BY THIS PLAINTIFF AND AS WELL IN CONFLICT WITH FACTS THAT WILL BE PRESENTED INTO EVIDENCE AT TRIAL BY THE EXPERT TESTIMONY TO BE GIVEN BY DR. J. MICHAEL JUMPER.

3. ON PAGE 2 OF DECLARATION OF J. SADEGHI, PARAGRAPH 5, IT IS STATED THAT THE SURGERY WAS OF AN ELECTIVE MANNER (MEDICAL RECORDS PAGES-24, 86 268-69) PLAINTIFF WAS TOLD BY SADEGHI SURGERY WAS NECESSARY BECAUSE THE DETACHED LENS IN BOTH EYES WERE FAILING AND TOTAL BLINDNESS WAS PROBABLE IF NOTHING WAS DONE. (VISIT IN SADEGHIS' OFFICE 1-26-06) MEDICAL RECORDS PAGE 68 PLAINTIFF WAS TOLD CATARACT REMOVAL + LENS IMPLANT WOULD GIVE PLAINTIFF VISION BETTER THAN EVER WITHOUT HAVING TO WEAR GLASSES.

4. PAGE 2, PARAGRAPH 6, SADEGHI STATES PLAINTIFF WAS TOLD ABOUT ALL THE RISKS AND POSSIBLE RESULTS OF SURGERIES AND THAT PLAINTIFF INDICATED HE COMPLETELY

UNDERSTOOD IT ALL. THIS IN ITS' ENTIRETY IS SIMPLY NOT TRUE NOR DOCUMENTED THERE WAS NO MENTION OF DANGERS OF HAVING IMPLANTS INSIDE EYES, THAT THERE WAS A POSSIBILITY OF THE IMPLANT TEARING OUT THRU THE EYE BY SIMPLY BEING BUMPED IN THE EYE ON THE EXERCISE YARD DURING ROUTINE ACTIVITY ON YARD. PRISON YARDS ARE OVERCROWDED IN A SMALL AREA. THERE ARE GROUPS OF PEOPLE IN CLOSE PROXIMITY DOING EXERCISES AND PLAYING SPORTS. PEOPLE MOVING AROUND BUMP INTO EACH OTHER ALL THE TIME. IF PLAINTIFF KNEW OF THE DANGEROUS CONSEQUENCES RELATED TO THE IMPLANT BEING LIKELY TO TEAR THRU THE IRIS BY MERELY GETTING BUMPED DURING YARD ACTIVITY HE FOR ONE, PROBABLY WOULD NOT HAVE AGREED TO HAVE THE IMPLANT SURGERY AND FOR SURE WOULD NOT HAVE BEEN PARTICIPATING ON YARD.

5. ON PAGE 2, PARAGRAPH 8, SADEGHI SPEAKS OF A PRIOR TRAUMA TO RIGHT EYE, LENSES IN BOTH EYES NOT FIXED IN PLACE... WHERE IS THE DOCUMENTATION? OF ANY PRIOR TRAUMA BEFORE THE MAY 3, OR AUG. 9, 2006 SURGERIES

6. ON PAGE 2 PARAGRAPH 9, SADEGHI DESCRIBES DROPPING A CAPSULAR RING INTO PLAINTIFFS' RIGHT EYE DURING THE MAY 3, 2006 SURGERY. DR. SADEGHI DID NOT TELL PLAINTIFF ABOUT THE CAPSULAR RING OR THE PIECE OF CORTEX THAT HE DROPPED INTO PLAINTIFFS' RIGHT EYE DURING THE MAY 3, 2006 SURGERY.

7. THIS DID NOT BECOME EVIDENT UNTIL 9/07/06 DURING A VISIT WITH DR. SADEGHI WHEN PLAINTIFF TOLD DR. SADEGHI THERE WAS SOMETHING BLOCKING HIS VISION INSIDE HIS RIGHT EYE. THERE WAS SOME CONFUSION DURING DR. SADEGHIS' EXPLANATION TO PLAINTIFF AS TO WHAT WAS INSIDE THE EYE. THIS CONFUSION GENERATED PLAINTIFFS' FILED MOTION TITLED "DECLARATION OF TYPOGRAPHICAL ERROR IN ORIGINAL SUPPORTING DOCUMENT" HERE AS WELL PRESENTED A DEFENSE EXHIBIT B TO DECLARATION BY JENNIFER G. ADDAMS.

8. THE CONFUSION WAS THAT IN THE CONVERSATION BETWEEN DR. SADEGHI AND THE PLAINTIFF, SADEGHIS' EXPLANATION SAYING A CAPSULAR RING OR GUIDE RING WAS MIS-UNDERSTOOD AS THE WORD DEBRIS.

9. PAGE 2, PARAGRAPH 9 Cont. AGAIN DR. SADEGHI STATES THERE WAS COMMUNICATION TO PLAINTIFF ABOUT THE CAPSULAR RING AND HOW IT GOT INTO THE RIGHT EYE OF THE PLAINTIFF, THE PROS AND CONS IN LEAVING IT IN THERE OR REMOVING IT. ALL DR SADEGHI IN FACT SAID TO ME ABOUT THE RING ONCE IT BECAME KNOWN WAS "I THOUGHT YOU'D NEVER NOTICE IT," THERE WAS NO STATING OF ANY SURGERY TO REMOVE IT OR NOT. IT BECAME A MOOT POINT BECAUSE DURING THE SAME VISIT DR. SADEGHI SAW THAT THE RETINA (RIGHT EYE) HAD DETACHED AND WOULD HAVE TO BE FIXED. THIS WAS ON 9/07/06, 127 DAYS AFTER THE 5/03/06 SURGERY

10. PAGE 3, PARAGRAPH 10, SADEGHI STATES, PLAINTIFFS VISION WAS GOOD AND MONITERED FROM MAY '06 - AUGUST '06. BY FOLLOWING THE VISITS IN DR. SADEGHIS' OFFICE IT IS APPARANT THAT PLAINTIFFS' VISION WAS/IS UN-STABLE. ONE WEEK VISION IS GOOD THE NEXT BAD. (MEDICAL RECORDS - PAGES 51, 40, 46)

11. PAGE 3, PARAGRAPH 11, THERE IS MENTION OF TRAUMA TO EYES, IN A PLURAL SENSE, THERE IS NO DOCUMENTATION OF ANY TRAUMA, NO WRITE UP FOR FIGHTING, HORSEPLAY OR ANY MISCONDUCT. THERE WAS ONLY A SELF ADMITTANCE BY PLAINTIFF THAT HE GOT BUMPED IN HIS LEFT EYE ONLY DURING PLAY ON YARD ON 8/28/06 (MEDICAL RECORDS PG 56 8/31/06)

12. IN PARAGRAPH 12 OF PAGE 3 DR SADEGHI INCORRECTLY ATTRIBUTES AN UN-DOCUMENTED TRAUMA TO EYES, PLURAL. (SEE MEDICAL RECORDS PGS. 27, 68) DATED 12/23/05 AND 1/26/06 RESPECTIVELY. BOTH MENTION RETINA DAMAGE IS IMMINENT AS TOLD TO PLAINTIFF IN 2005. THIS HAD NOTHING TO DO WITH ANY UN-DOCUMENTED TRAUMA PLAINTIFF SUPPOSEDLY SUFFERED ON 8/28/06.

13. PAGE 3, PARAGRAPH 15, DR. SADEGHI STATES PLAINTIFF NEVER COMPLAINED OF DOUBLE VISION IN RIGHT EYE DUE TO HOLE BURNED THRU HIS EYE (IRIS) BY THE LASER. THIS IS INCORRECT, DR SADEGHI WAS QUITE AWARE OF THE DOUBLE VISION (MEDICAL RECORDS PAGES 7, 50, 51) 235256  285286

14. ON 6/07/07 PLAINTIFF ASKED DR. SADEGHI A SET OF FIVE (5) SPECIFIC QUESTIONS DURING A VISIT IN HIS OFFICE. (PLAINTIFFS' COMPLAINT-STATEMENT OF CLAIM ATTACHMENT- PARAGRAPHS 11-15) AND (MEDICAL RECORDS PAGE 266) SHOW DR. SADEGHI REFUSED A SECOND OPINION.

15. ON PAGE 3, PARAGRAPH 17, OF SADEGHIS' DECLARATION, DR. SADEGHI STATES THE SURGERIES WERE A SUCCESS, AND AGAIN STATES WRONGLY THAT MY VISION WAS GOOD UNTIL TRAUMA TO BOTH EYES. DR. SADEGHI IS ATTRIBUTING THE RETINAL DETACHMENT TO TRAUMA. MEDICAL RECORDS (Pg 27, 68) SHOW THIS RETINA WAS IN DANGER OF DETACHING LONG BEFORE 9/07/06.

16. THE DEFENDANT FAILS HERE TO MENTION HOW AND WHY THE HOLE GOT BURNED THRU THE IRIS OF RIGHT EYE BY A LASER. THIS HOLE IS STILL PRESENT IN PLAINTIFFS' RIGHT EYE, STILL CAUSING DOUBLE VISION.

17. PLAINTIFFS' SECOND OPINION BY UCSF DR. STEWART ON 11/28/07 SHOWS THAT A FINDING OF A PERMANENT NON-REVERSIBLE DAMAGE TO BOTH EYES IS PRESENT. THE PUPILS ARE BOTH FIXED IN A DIALATED POSITION, IRREGULAR IN SHAPE. THE HOLE IS IN RIGHT IRIS (MEDICAL RECORDS - PAGES 34, 80-83) BUT CAN BE CLOSED SURGICALLY AS PER VERBAL COMMUNICATION BY DR. STEWART TO PLAINTIFF ON 11/28/07 AT UCSF. THE ACTUAL CAUSE OF THE DISTORTION AND DOUBLE IMAGING- DIPLOPIA IS UNCLEAR (MEDICAL RECORDS PAGE 34)

18. PAGE 4, PARAGRAPH 20 OF SADEGHIS' DECLARATION STATES HIS KNOWLEDGE AND SKILL IS CONSISTENT WITH THE COMMUNITY STANDARD FOR THIS KIND OF PROCEDURE. THIS IN INCORRECT (DOM 33030.6)

19. THE TESTIMONY OF DR. J. MICHAEL JUMPER WILL RE-ITTERATE THE STATEMENTS HE MADE TO THIS PROCEDURE ON 9-08-06 DURING THE PRE-OPERATIVE CONSULTATION AT HIS OFFICE. THESE STATEMENTS ARE LISTED IN EVIDENCE IN PLAINTIFFS' COMPLAINT ON PAGE 2 OF STATEMENT OF FACTS PARAGRAPHS 5-6.

20. THE QUESTION IS, DID DR. SADEGHI CONDUCT HIMSELF IN AN ATMOSPHERE OF DELIBERATE INDIFFERENCE TOWARDS THE PLAINTIFFS' MEDICAL NEEDS IN HIS TREATING OF PLAINTIFF? THE DOCTOR KNEW HE BURNED A HOLE THRU THE IRIS OF PLAINTIFFS' RIGHT EYE. HE KNEW HE DROPPED A PIECE OF CORTEX AND A CAPSULAR RING INSIDE OF PLAINTIFFS' EYE AND KNOWINGLY LEFT THESE DETRITUS INSIDE AND SUTERED EYE SHUT. DR SADEGHI KNEW THESE THREE THINGS HE'D DONE TO PLAINTIFFS' RIGHT EYE YET NEVER TOLD PLAINTIFF ABOUT WHAT HE'D DONE UNTIL PLAINTIFF BECAME SELF KNOWING WHEN THE DETRITUS MOVED INTO VIEW.

21. THERE IS A VERY REAL POSSIBILITY THAT THE DEBRIS, THE CAPSULAR RING ITSELF CAUSED THE RETINAL DETACHMENT, IF NOT THE LASER THAT THAT BURNED A HOLE THRU THE IRIS. THIS WILL BE INVESTIGATED THRU DISCOVERY WITH DR. J. MICHAEL JUMPER.

22. THIS OBFUSCATION OF PERTINENT DETAILS OF THE INITIAL SURGERY SHOWS AN INDIFFERENCE TO PLAINTIFFS' WELFARE BY NOT TELLING HIM WHAT THE DEFENDANT HAD DONE TO HIS EYE. THE DEFENDANT SHOULD HAVE IMMEDIATELY SAID HE HAD MADE SEVERAL ERRORS AND NEEDED SOMEONE TO ASSIST IN REPAIRING THE EYE.

23. HIS INDIFFERENCE TO PLAINTIFFS' RIGHT TO KNOW ALL DETAILS OF HIS MEDICAL CARE WAS EVIDENT IN THE DEFENDANTS NOT ADDRESSING THE PLAINTIFF WHAT HAD HAPPENED AND WHAT COULD BE DONE TO FIX IT OR NOT. IF IN FACT THE DAMAGE THE LASER CAUSED IS PERMANENT, THE PLAINTIFF STILL HAD THE RIGHT TO KNOW ESPECIALLY IF DONE IN A TIMELY MANNER. (INSTEAD OF A YEAR AND A HALF LATER), HE COULD OBTAIN A SECOND OPINION AND HOPEFULLY TREATMENT TO REVERSE THE DAMAGE. THIS DEFENDANT WOULD NOT RECOMMEND ANOTHER OPHTHALMOLOGIST TO GIVE ADVICE/TREATMENT. PLAINTIFF HAD TO EXHAUST HIS ADMINISTRATIVE REMEDIES THRU THE DIRECTORS LEVEL (MEDICAL RECORDS PAGES-255-56, 272-73, 285-88)

24. BEFORE A SECOND OPINION WAS FINALLY OBTAINED FROM A DR. STEWART AT UCSF ON 11/28/07, SIX MONTHS AFTER THE FINAL VISIT WITH DEFENDANT ON 6/07/07, A FULL 19 MONTHS AFTER THE 5/03/06 SURGERY, WHEN ALL ADMINISTRATIVE REMEDIES, AN APPOINTMENT AS CO-PLAINTIFF IN PLATA V. SCHWARZENEGGER AND THE ARMSTRONG CLASS ACTIONS HAD TO TRANSPIRE BEFORE PLAINTIFF GOT THIS SECOND OPINION BY UCSF

25. DR. STEWART TOLD THIS PLAINTIFF ON 11/28/07 THAT NOTHING COULD BE DONE NOW. THE QUESTION IS COULD THERE HAVE BEEN A BETTER OUTCOME HAD A SECOND OPINION BEEN GIVEN IN A TIMELY FASHION?

26. IF DOCTOR SADEGHI WAS NOT DELIBERATELY BLOCKING A SECOND OPINION BY REFUSING A CONSULTATION AFTER PLAINTIFF TOLD HIM OF THE VISION DISTORTION AND DOUBLE IMAGING (MEDICAL RECORDS PAGE 51) 12/14/06 WHAT WAS HE DOING? IF HE WAS NOT INDIFFERENT TO THE PLAINTIFFS' NEEDS AND RIGHT TO PROPER MEDICAL CARE WHY WAS THERE NO PRE-OPERATIVE NOTIFICATION OF RISKS AND DANGERS OF HAVING THIS SURGERY VERSUS THE POSSIBLE NEGATIVE OUTCOME OF NOT HAVING IT. THE DEFENDANT CLAIMS IN HIS DECLARATION, PAGE 2, PARAGRAPH 6 THAT HE DID. THIS IS SIMPLY NOT TRUE. IF THIS PLAINTIFF HAD BEEN APPRISED OF THESE RISKS AND ALL THE DANGERS AND SIDE EFFECTS OF HAVING IMPLANTS IN HIS EYES THERE WOULD HAVE NOT BEEN ANY SURGERIES.

27. PRIOR TO THE SURGERY I WAS MERELY NEARSIGHTED, LEGALLY BLIND, BUT I COULD PUT GLASSES ON AND SEE. NOW THIS PLAINTIFFS' VISION IS BLURRY, DISTORTED WITH OR WITHOUT GLASSES

28. NOW THIS PLAINTIFF CAN'T TOLERATE ANY BRIGHT LIGHT DUE TO THE CONDITION OF HIS PUPILS AS A RESULT OF THESE SURGERIES. (DOM 33030.6)

29. NONE OF THIS WAS TOLD TO THE PLAINTIFF, THERE WAS NO INFORMED CONSENT. MARINO V. BALLESTAS 749 F. 2d 162 (1984) 167(5); GRAY 423 PA AT 116, 223 A. 2d AT 674; WHITE V. NAPOLEON 897 F. 2d 103 (3RD CIR. 1990) cf. YOUNGBERG V. ROMANO 457 US AT 323; 102 S.CT. AT 2462 RONNIE 726 F. 2d AT 274

CASH V. SADEGHI        CV07 6252 JF (PR)

30. THIS IS ACCUMULATIVELY, DELIBERATE INDIFFERENCE ON PART OF THE DEFENDANT BY USING SUBSTANDARD TECHNIQUES, (DOM 33030.5.2.21; AND 93030.6.1; 31010.3) GREENE V. DALEY 414 F. 3d AT 645, 654 (7TH CIR 2005) HUGHES V. JOLIET CORRECTIONAL CENTER 931 F. 2d 425, 428 (7TH CIR 1991)

31. BY NOT DOING ALL THE DEFENDANT SHOULD DO TO PROPERLY INFORM PATIENT OF ALL FACTORS INVOLVED IN PROCEDURES IS SHOWING DELIBERATE INDIFFERENCE UNDER GRAY V. GRUNNAGLE 423 PA

32. BY NOT INFORMING PATIENT OF ALL ERRORS IN DEFENDANTS' EXECUTING SAID PROCEDURES AND FAILING TO PROPERLY ALLEVE PATIENTS DISTRESS BY DOING ALL THAT IS POSSIBLE TO FIX ERRORS OR ASK FOR HELP IN REPAIRING HIS ERRORS IS DELIBERATE INDIFFERENCE AND NOT DEMONSTRATIVE OF MEDICAL PERSONNEL IN THE COMMUNITY. LANDEROS V. FLOOD 17 CAL. 3d 399, 408, 131 Cal. Rptr. 69, 72-73, 551 P. 2d 389, 392-93 (1976)

33. I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT, AND THAT THIS DECLARATION WAS EXECUTED ON   8/17/08

x Randall Scott Cash

MOTION IN OPPOSITION OF DECLARATION OF JAHANGIR SADEGHI M.D. AND DEFENDANTS REQUEST FOR SUMMARY JUDGEMENT (PART 3)