IN PROPER

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

No. CV07 6252 JF (PR)

| | |
|---|---|
| IN RE | STATEMENT OF FACTS |
| RANDALL SCOTT CASH | SUPPORTING OPPOSITION TO |
| PLAINTIFF | DEFENDANTS REQUEST FOR |
| VS | SUMMARY JUDGEMENT |
| DR. JAHANGIR SADEGHI | (PART 2) |
| DEFENDANT | THE HONORABLE JEREMY FOGEL |

1. I, RANDALL SCOTT CASH, DO HEREBY DECLARE THAT I AM PLAINTIFF TO THE ABOVE REFERENCED MATTER AND THAT I AM INCARCERATED AT SAN QUENTIN PRISON.

2. IN CALIFORNIA, MEDICAL PERSONNEL ARE HELD IN BOTH DIAGNOSIS AND TREATMENT TO THE DEGREE OF KNOWLEDGE AND SKILL ORDINARILLY POSSESSED AND EXERCISED BY MEMBERS OF THEIR PROFESSION IN SIMI-LAR CIRCUMSTANCES. LANDEROS V. FLOOD 17 CAL. 3d 399, 408, 131 Cal. Rptr. 69, 72-73, 551 P. 2d 389, 392-93 (1976)

3 THIS STANDARD OF CARE WHICH IS THE BASIC ISSUE IN MALPRACTICE ACTIONS, CAN BE PROVEN ONLY BY EXPERT TESTIMONY. Id AT 410, 131 CAL RPTR. AT 74, 551 P. 2d AT 394.

4 CALIFORNIA COURTS HAVE INCORPORATED THE EXPERT EVIDENCE RE-QUIREMENT INTO THEIR STANDARD FOR SUMMARY JUDGEMENT IN MED-ICAL MALPRACTICE CASES. WHEN A DEFENDANT MOVES FOR SUMMARY JUDGEMENT AND SUPPORTS HIS MOTION WITH EXPERT DECLARATIONS THAT HIS CONDUCT FELL WITHIN THE COMMUNITY STANDARD OF CARE HE IS ENTITLED TO SUMMARY JUDGEMENT UNLESS THE PLAINTIFF COMES FORWARD WITH CONFLICTING EXPERT EVIDENCE. WILLARD V.

CASH V SADEGHI      CV 076252 JF (PR)

1  HAGEMEISTER, 121 CAL. APP. 3d 406, 412, 175 CAL. RPTR. 365,
2  369 (1981) GIVEN THE EXPERT EVIDENCE REQUIREMENTS, THE
3  PLAINTIFFS ALLEGATIONS SUPPORTED ONLY BY LAY OPINIONS
4  FAIL TO PRESENT A TRIABLE ISSUE OF FACT CONCERNING THE
5  APPLICABLE STANDARD OF CARE. Id AT 414, 175 CAL. RPTR.
6  AT 370. THIS REASONING IS EQUALLY APPLICABLE WHEN A DE-
7  FENDANT MOVES FOR SUMMARY JUDGEMENT UNDER FED. R. CIV. P. 56
8  9. ONCE THE DEFENDANT SUBMITS DECLARATIONS WHICH SUPPORT HIS
9  MOTION THE PLAINTIFF CANNOT REST ON THE PLEADINGS BUT MUST
10 COME FORWARD WITH SPECIFIC FACTS SHOWING THERE IS A
11 GENUINE ISSUE FOR TRIAL. FED. R. CIV. P. 56(e). SUMMARY JUDGE-
12 MENT IS APPROPRIATE WHEN A PARTY FAILS TO MAKE A SHOWING
13 SUFFICIENT TO ESTABLISH THE EXISTENCE OF AN ELEMENT WHICH IS
14 ESSENTIAL TO HIS CASE AND FOR WHICH HE WOULD BEAR THE BURDEN
15 OF PROOF AT TRIAL. CELOTEX CORP. V CATRETT 477 US 317, 106
16 S. CT 2548, 91 L. ED. 2d 265 (1986) SIGMOND V. BROWN 828 F.2d
17 8 (9TH CIR 1987) (PER CURIAM)
18 6. IN ACCORDANCE WITH THESE REQUIRED PROVISIONS OF FED. R.
19 CIV. P. 56 PLAINTIFF IN THIS MATTER CAN AND WILL SHOW IN
20 TRIAL WITH THE EXPERT EVIDENCE IN THE TESTIMONY OF A
21 DR. J. MICHAEL JUMPER OF WEST COAST RETINA MEDICAL GROUP
22 INC. WHO PERFORMED THE REPAIR SURGERY ON THIS PLAINTIFF TO
23 RE-ATTACH THE RETINA OF THE RIGHT EYE AND REMOVE THE
24 "DEBRIS" THAT THE DEFENDANT LEFT INSIDE THE EYE FOLLOWING
25 THE INITIAL 5/03/06 SURGERY, THAT THERE IS INDEED AN ATMO-
26 SPHERE OF DELIBERATE INDIFFERENCE ON THE PART OF THE DE-
27 FENDANT.
28

STATEMENT OF FACTS SUPPORTING OPPOSITION TO DEFENDANTS
REQUEST FOR SUMMARY JUDGEMENT (PART 2)

CASH V. SADEGHI    CV076252JF (PR)

7. DR. JUMPER STATED TO THIS PLAINTIFF DURING THE PRE-OPERA-
TIVE CONSULTATION ON 9/08/06 THAT QUOTE "I CANNOT BELIEVE
DR. SADEGHI USED THIS TECHNIQUE, NO ONE DOES IT THIS WAY," AND
FURTHER, "I CANNOT BELIEVE DR. SADEGHI LEFT THIS DEBRIS
INSIDE YOUR EYE." UNQUOTE

8. THESE STATEMENTS ALONE BY DR. JUMPER SHOW INCOMPETENCE
OF THE DEFENDANT TO BE DOING THIS SORT OF PROCEDURE USING
SUB-STANDARD TECHNIQUES NOT DEMONSTRATIVE OF THE SKILL AND
KNOWLEDGE REQUIRED TO DO SPECIALIST SURGERY

9. AS PROVIDED IN MARINO V. BALLESTAS 749 F. 2d 162 (1984) AT
167 (5) THE PENNSYLVANIA SUPREME COURT HAS DEFINED "INFORMED
CONSENT" AS CONSENT MADE WITH KNOWLEDGE AND UNDERSTANDING OF
THE NATURE OF THE UNDERTAKING, GRAY, 423 PA. AT 166, 223 A.
2d AT 674. A PATIENT CAN GIVE INFORMED CONSENT ONLY WHEN HE
OR SHE FULLY UNDERSTANDS THE NATURE OF THE PROPOSED OPERATION
AND IS APPRISED OF ALL OF ITS POSSIBLE CONSEQUENCES. Id IN DURHAM,
423 F. 2d AT 944 RELYING ON THE DECISION IN GRAY, STATED:

10. ALTHOUGH IT IS NOT CLEARLY ARTICULATED, A CAREFUL
ANALYSIS OF THE RATIONALE OF THE APPLICABLE CITATIONS
INCLUDING GRAY V. GRUNNAGLE, INDICATES THAT BEFORE
A PATIENT WILL BE DEEMED TO GIVE AN INFORMED CONSENT
IT MAY BE NECESSARY THAT HE KNOW THE ALTERNATIVE
METHODS OF TREATMENT AVAILABLE TO HIM AND THE INHERENT
DANGERS AND POSSIBILITIES OF SUCCESS OF SUCH ALTERN-
ATIVES. THE PHILOSOPHY BEHIND SUCH THEORY OF INFORMED
CONSENT IS THAT THE PATIENT HAS THE RIGHT AND RE-
SPONSIBILITY TO DETERMINE WHETHER HE WANTS TO
RISK THE SUGGESTED CORRECTIVE SURGERY.

11. IF A PATIENTS DECISION IS TO BE A KNOWING INTELLIGENT ONE, HE MUST UNDERSTAND IN ADDITION TO THE RISKS OF THE SUGGESTED SURGERY THE POSSIBLE RESULTS OF THE FAILURE TO CHANGE IT. A COMPLETE UNDERSTANDING OF THE CONSEQUENCES OF FOREGOING THE OPERATION WOULD SEEM NECESSARY TO INCLUDE A CONSIDERATION OF THE ALTERNATIVE TREATMENT FOR THE PATIENTS' DISEASE OR CONDITION.

12. AS WELL UNDER PROVISIONS UNDER WHITE V. NAPOLEON 899 F.2d 103 (3RD CIR. 1990) cf. YOUNGBERG V. ROMANO 457 U.S. AT 323. 102 S.CT. AT 2462, RONNIE 720 F.2d AT 274, THE DEFENDANT IN THE INSTANT MATTER DID NOT HAVE INFORMED CONSENT FROM THIS PLAINTIFF. IN THE COURSE OF THE INITIAL SURGERY OF 5/03/06, SUBSEQUENT EXHAUSTION OF ADMINISTRATIVE REMEDIES, OUTSIDE SURGEONS AND CONSULTATIONS IT WAS APPARENT THAT THE DEFENDANT ATTEMPTED TO OBSCURE FROM THIS PLAINTIFF THE DIFFICULTIES HE HAD PERFORMING SAID SURGERY AND THE GRIEVIOUS ERRORS HE MADE DURING THE PROCEDURES.

13. THIS OBFUSCATION OF FACT WENT TO THE POINT OF OMITTING TEXT IN THE SURGICAL REPORT OF THE 5/03/06 PROCEDURE. THIS IS SHOWN IN THE DISCREPANCIES BETWEEN THE INITIAL DOCUMENT PROVIDED TO THIS PLAINTIFF AND THE SUBSEQUENT COPY PROVIDED BY THE SAN QUENTIN RECORDS DEPARTMENT AS REQUESTED BY PLAINTIFF. THESE ARE RESPECTIVELY (MEDICAL RECORDS PAGES 283-284; PAGES 88,89 AND PAGE 87)

14. IN THE TRUE COPY ON PAGES 88-89 THE DIFFICULTY THE DEFENDANT HAD IN PERFORMING THE PROCEDURE IS STATED. THIS LINE OF TEXT WAS DELETED FROM PAGES 283-284, THE INITIAL COPY PROVIDED TO PLAINTIFF WHEN THE 602 INITIATED AT THE DIRECTORS' LEVEL ON 6/16/07. THERE IS NO MENTION OF REMOVING THE DROPPED PIECE OF CORTEX, OR THE DROPPED CAPSULAR RING AS IS MENTIONED IN THE 8/09/06 SURGERY (MEDICAL RECORDS PAGE 87)

CASH V. SADEGHI    CV07 6252 JF (PR)

1 &. THE OBFUSCATION OF DIFFICULTIES AND ERRORS WERE AS WELL APPARENT
2 IN THE DEFENDANTS NOT ACKNOWLEDGING TO THIS PATIENT, THIS PLAINTIFF
3 OF HIS DROPPING DEBRIS INTO THE EYE AND LEAVING IT IN THERE AND
4 SUTERING THE EYE SHUT. NOR WAS THERE NOTIFICATION TO PLAINTIFF
5 OF HOW AND WHY A HOLE GOT BURNED THRU THE IRIS OF HIS RIGHT
6 EYE. THESE FACTS WERE KEPT FROM PLAINTIFF UNTIL THE DEBRIS
7 MOVED INSIDE THE EYE BLOCKING HIS VISION, AND THE HOLE OPENED UP
8 IN THE RIGHT IRIS, RESULTING IN THE NEEDING 9/11/06 REPAIR SURGERY. AFTER RETINA DET INJURD
9 &. THE DEFENDANT HERE DID NOT HAVE INFORMED CONSENT FROM THE
10 PLAINTIFF BECAUSE THE PLAINTIFF WAS NOT INFORMED OF THE POSSIBLE
11 NEGATIVE OUTCOME AND INHERENT DANGER OF BOTH LASER CATARACT
12 SURGERY AND HAVING LENS IMPLANTS INSIDE HIS EYES. THE DEFEND-
13 ANT MERELY ASSURED THE PLAINTIFF HE WOULD SEE BETTER THAN HE
14 EVER HAD IN HIS LIFE, WITHOUT GLASSES. THERE WAS NO MENTION OF PUPIL
15 IRREGULARITY AND BEING FIXED IN A DIALATED POSITION MAKING EXPOSURE
16 TO SUNLIGHT UNBEARABLY PAINFUL WITHOUT DARK GLASSES AND UN COMFORT-
17 ABLY GLARING EVEN WITH THE DARK GLASSES CAUSING HEADACHES.
18 &. THERE WAS NO MENTION OF DEGRADATION OF VISION OVER TIME BACK
19 TO A LEGAL BLINDNESS STATE, AND NO MENTION OF THE DISTORTION, DOUBLE
20 VISION CAUSED BY THE HOLE BURNED THRU THE IRIS. THERE WAS NO MEN-
21 TION OF THE DANGERS OF HAVING LENS IMPLANTS INSIDE THE EYE THAT
22 COULD RESULT IN THE IMPLANT BEING TORN THRU THE IRIS CAUSING PERMANENT
23 DAMAGE AND LOSS OF VISION BY MERELY GETTING BUMPED IN THE EYE DURING
24 PLAY ON EXERCISE YARD. (LEFT EYE, RESULTING IN 9/01/06 SURGERY)
25 &. ALL OF THIS IN CONJUNCTION WITH THE DEFENDANTS ATTEMPTS AT
26 BLOCKING THE PLAINTIFFS ACCESS TO A SECOND OPINION BY A SPECIALIST
27 UNTIL NOV. 28, 2007, A YEAR AND A HALF AFTER THE INITIAL SURGERY
28 ON RIGHT EYE, WHICH ULTIMATELY RESULTED IN THE PLAINTIFF FINDING

STATEMENT OF FACTS SUPPORTING OPPOSITION TO DEFENDANTS
REQUEST FOR SUMMARY JUDGEMENT (PART 2)

CASH V. SADEGHI    CV076252 JF (PR)

1 OUT FROM A DR. STEWART AT UCSF THAT THE CONDITION IS NOW
2 PERMANENT AND NOTHING CAN BE DONE TO REVERSE IT., LENDS TO THIS
3 PLAINTIFFS' ALLEGATIONS OF DELIBERATE INDIFFERENCE . THE
4 DEFENDANT COULD HAVE, SHOULD HAVE REQUESTED ANOTHER SPECIAL-
5 IST TO ACTUALLY PERFORM THE SURGERIES IF HE WAS IN FACT
6 INCOMPETENT TO SUCCESSFULLY DO THEM HIMSELF, OR AT LEAST
7 ACKNOWLEDGE THE ERRORS HE DID COMMIT IN THE COURSE OF
8 TREATMENT AND REQUEST OUTSIDE HELP TO HOPEFULLY SALVAGE
9 THE PLAINTIFFS' VISION IF POSSIBLE .
10 19. THE DEFENDANT DIDN'T EVEN TRY TO REPAIR HIS ERRORS BUT
11 IN FACT BLOCKED THE PLAINTIFFS ATTEMPTS TO GET A SECOND
12 OPINION UNTIL IT BECAME TOO LATE TO MAKE A DIFFERENCE.
13 20. I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS
14 TRUE AND CORRECT AND THAT THIS DECLARATION WAS EXECUTED ON
15    8/17/08
16               X Randall Scott Cash
17
18
19
20
21
22
23
24
25
26
27
28

STATEMENT OF FACTS SUPPORTING OPPOSITION TO DEFENDANTS
REQUEST FOR SUMMARY JUDGEMENT (PART 2)