NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL SCOTT CASH, | No. C 07-06252 JF (PR) |
| Plaintiff, | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING REQUEST FOR VOLUNTARY DISMISSAL |
| vs. | |
| DR. JAHANGIR SADEGHI, | |
| Defendant. | (Docket Nos. 11, 25 & 29) |

Plaintiff, a state prisoner proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against Defendant Dr. Jahangir Sadeghi, the ophthalmologist at San Quentin State Prison ("SQSP"). The Court found the complaint, when liberally construed, stated a cognizable claim that the Defendant Sadeghi violated Plaintiff's Eighth Amendment rights by being deliberately indifferent to his serious medical needs. Defendant filed a motion for summary judgment on the grounds that there is no genuine issue as to any material fact. Plaintiff filed opposition to Defendant's summary judgment motion, and Defendant filed a reply. After reviewing the complaint and all submitted papers, the Court concludes that Defendant is entitled to summary judgment and will GRANT Defendant's motion.

# DISCUSSION

## I. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is 'no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The court's function on a summary judgment motion is not to make credibility

determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028-29 (9th Cir. 2001).

**II.     Legal Claims and Analysis**

Plaintiff claims that Defendant Sadeghi acted with deliberate indifference to his serious medical needs when he refused to address Plaintiff's complaints of persistent double vision, blurriness and blockage of vision in his right eye after Defendant performed cataract surgery on Plaintiff's eyes. Plaintiff alleges that when he complained of blurry and double vision during subsequent followup visits, Defendant ignored Plaintiff's concerns and failed to provide adequate medical.

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. See McGuckin, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."

1  McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104).  The existence of an injury
2  that a reasonable doctor or patient would find important and worthy of comment or
3  treatment; the presence of a medical condition that significantly affects an individual's
4  daily activities; or the existence of chronic and substantial pain are examples of
5  indications that a prisoner has a "serious" need for medical treatment.  Id. at 1059-60
6  (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

7       A prison official is deliberately indifferent if he knows that a prisoner faces a
8  substantial risk of serious harm and disregards that risk by failing to take reasonable steps
9  to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not
10 only "be aware of facts from which the inference could be drawn that a substantial risk of
11 serious harm exists," but he "must also draw the inference."  Id.  If a prison official
12 should have been aware of the risk, but was not, then the official has not violated the
13 Eighth Amendment, no matter how severe the risk.  Gibson v. County of Washoe, 290
14 F.3d 1175, 1188 (9th Cir. 2002).

15      In order for deliberate indifference to be established, therefore, there must be a
16 purposeful act or failure to act on the part of the defendant and resulting harm.  See
17 McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d
18 404, 407 (9th Cir. 1985).  A finding that the defendant's activities resulted in "substantial"
19 harm to the prisoner is not necessary, however.  Neither a finding that a defendant's
20 actions are egregious nor that they resulted in significant injury to a prisoner is required to
21 establish a violation of the prisoner's federal constitutional rights, McGuckin, 974 F.2d at
22 1060, 1061 (citing Hudson v. McMillian, 503 U.S. 1, 7-10 (1992) (rejecting "significant
23 injury" requirement and noting that Constitution is violated "whether or not significant
24 injury is evident")), but the existence of serious harm tends to support an inmate's
25 deliberate indifference claims, Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing
26 McGuckin, 974 at 1060).

27      A claim of medical malpractice or negligence is insufficient to make out a
28 violation of the Eighth Amendment.  See Toguchi v. Chung, 391 F.3d 1051, 1060-61 (9th

Cir. 2004); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981); see, e.g., Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in claims stemming from alleged delays in administering pain medication, treating broken nose and providing replacement crutch, because claims did not amount to more than negligence); McGuckin, 974 F.2d at 1059 (mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's 8th Amendment rights); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain); Anthony v. Dowdle, 853 F.2d 741, 743 (9th Cir. 1988) (no more than negligence stated where prison warden and work supervisor failed to provide prompt and sufficient medical care).

The following facts are not in dispute unless otherwise indicated. Defendant Sadeghi performed cataract surgery on Plaintiff's right and left eyes on May 3, 2006 and August 9, 2006, respectively. According to Defendant, Plaintiff had prior trauma to his eyes, so the lenses were not fixed in place. (Def.'s Mot. at 3.) Defendant inserted a capsular ring into the right eye in order to keep the lense in place during the surgery. (Id.) Defendant states that the ring fell into the eye during surgery, but that it was not medically necessary to remove the ring. (Id.) Defendant asserts that he told Plaintiff about the ring, and that removing it would require surgery on the back of his eye. (Id. at 4.) Plaintiff claims that Defendant did not tell him about the ring at that time. (Compl. 5.) Shortly after the second surgery, Plaintiff injured his left eye after he was "bumped" by his cell-mate, which caused him to sustain new trauma to his eyes. (Id.) On September 1, 2006, Defendant Sadeghi performed an emergency surgery on Plaintiff's left eye to close an open wound caused by the trauma. During a followup visit on September 7, 2006, Plaintiff complained that there seemed to be something wrong with his right eye. (Compl. 6.) Plaintiff claims that it was during this followup examination

1  that he learned for the first time about the capsular ring in his eye which had dropped
2  during the first surgery.  (Id.)  Defendant Sadeghi noticed that the retina in Plaintiff's
3  right eye had become detached due to the recent trauma, and he referred Plaintiff to a
4  retinal specialist. On September 11, 2006, Plaintiff saw the specialist who re-attached the
5  retina and also removed the capsular ring.  Plaintiff claims that he continues to experience
6  blurry and double vision even after receiving prescription glasses on May 4, 2007.

7        Defendant argues that Plaintiff's medical condition and the treatment he was
8  provided do not state a claim for deliberate indifference.  Defendant contends that
9  Plaintiff had been living with deteriorating eyesight for many years and had been
10 provided with many accommodations for his disability of being "legally blind."  (See
11 Sadeghi Decl. at 3, Ex, A at 30, 80.)  Defendant has submitted copies of Plaintiff's
12 medical records showing that Plaintiff was seen in the SQSP eye clinic twenty-eight times
13 and had three surgeries.  Defendant argues that surgery for cataracts and lens implantation
14 were not an emergency, contrary to Plaintiff's opinion, but rather an elective treatment
15 that sometimes can provide a clearing of the vision and better eyesight.  Defendant states
16 that there is no guarantee that these surgeries will be successful, and that he informed
17 Plaintiff of this fact prior to the surgery.  (Id. at 2.)  Defendant contends that the only
18 emergency which arose was when Plaintiff sustained trauma after his cell-mate "bumped"
19 him, and that Defendant immediately performed surgery to close the open wound.   (Id. at
20 3.)  When Defendant found that Plaintiff had also suffered a retinal detachment, he
21 immediately referred him to a retinal specialist to reattach the torn retina.  (Id.)

22       Plaintiff states in opposition that he was not informed of the dangers posed by the
23 capsular ring remaining in his eye. (Oppo. at 4, 5.)  Plaintiff also repeats his assertions
24 that he told Defendant about his double vision and that Defendant disregarded his
25 complaints. (Id. at 8.)  It is clear that the facts alleged by Plaintiff, if true, do not amount
26 to deliberate indifference to serious medical needs by Defendant.  Firstly, Plaintiff has not
27 shown that his blurry and double vision was a "serious medical need" which could result
28 in further significant injury or the "unnecessary and wanton infliction of pain" if

Order Granting Motion for Summary Judgment
P:\PRO-SE\SJ.JF\CR.07\Cash252_grant-msj.wpd     6

1  untreated. McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104). The medical
2  records submitted by Defendant show that when Plaintiff sought medical care for his
3  eyes, he was seen and treated twenty-eight times. (See Sadeghi Decl., Ex. A at 84-88.)
4  Plaintiff's claims are consistent with the record in that he does not deny that Defendant
5  refused to see him. Rather, Plaintiff's claims amount to a difference in opinion in the
6  quality of care he received. However, "[a] difference of opinion between a prisoner-
7  patient and prison medical authorities regarding treatment does not give rise to a § 1983
8  claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of
9  nothing more than a difference of medical opinion as to the need to pursue one course of
10 treatment over another is insufficient, as a matter of law, to establish deliberate
11 indifference, see Toguchi, 391 F.3d at 1058, 1059-60; Sanchez v. Vild, 891 F.2d 240, 242
12 (9th Cir. 1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970). Furthermore,
13 there is no indication that Defendant knew that Plaintiff faced a substantial risk of serious
14 harm and disregarded that risk by failing to take reasonable steps to abate it. See Farmer,
15 511 US at 837. That Defendant may have discounted Plaintiff's complaints of blurry and
16 double vision may show negligence on his part, but not deliberate indifference. Cf.
17 McGuckin, 974 F.2d at 1059 (mere negligence in diagnosing or treating a medical
18 condition, without more, does not violate a prisoner's 8th Amendment rights);
19 O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (isolated occurrences of neglect
20 may constitute grounds for medical malpractice but do not rise to level of unnecessary
21 and wanton infliction of pain). Or, put differently, there is no indication that the course of
22 treatment Defendant chose was medically unacceptable under the circumstances and that
23 he chose this course in conscious disregard of an excessive risk to Plaintiff's health. See
24 Toguchi, 391 F3d at 1058; Jackson 90 F3d at 332. Defendant asserts that after the
25 surgeries, Plaintiff had very good vision in both of his eyes. (See Sadeghi Decl. at 3.)
26 According to Defendant, Plaintiff had good vision and no problems from May 2006
27 through August 31, 2006. (Id.) Even if Defendant should have been aware of the risk to
28 Plaintiff's vision, it is clear that Defendant was not aware of any such risk and therefore it

1 cannot be said that he violated the Eighth Amendment.  See Gibson, 290 F.3d at 1188.
2 When Plaintiff sustained trauma to his eye sometime after the second surgery on August
3 9, 2006, Defendant discovered the injury during an examination on August 31, 2006.
4 (Id.)  It is undisputed that Defendant immediately scheduled and performed emergency
5 surgery the next day, on September 1, 2006.  (Id.)  A week later when Plaintiff
6 complained of bad vision in his right eye, Defendant examined the eye and determined
7 that Plaintiff's retina had detached.  (Id.)  Defendant referred Plaintiff to a retinal
8 specialist for treatment.  (Id.)   In sum, Plaintiff has failed to show a purposeful act or
9 failure to act on the part of Defendant which resulted in harm.  See McGuckin, 974 F.2d
10 at 1060.

11 Having reviewed the pleadings and all submitted papers on this matter, the Court
12 finds that Plaintiff's allegations do not establish that Defendant acted with deliberate
13 indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.
14 Accordingly, Defendant is entitled to judgment on this claim as a matter of law.  See
15 Celotex Corp., 477 U.S. at 323.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment (Docket No. 11) is GRANTED.

In light of this order, Plaintiff's request for voluntary dismissal (Docket No. 29) is DENIED.  The clerk shall terminate Docket No. 25 as moot.

IT IS SO ORDERED.

DATED: 3/30/09

JEREMY FOGEL
United States District Judge